**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 1 4 2020

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**SHUNDA WILKINS, on behalf of herself and all others similarly situated,**

**Plaintiff,**

**vs.**

**SIMMONS BANK,**

**Defendant.**

Case No. _3:20-cv-00116 BSM_

**JURY TRIAL DEMANDED**

This case assigned to District Judge _MILLER_
and to Magistrate Judge _DEERE_

## CLASS ACTION COMPLAINT

Plaintiff Shunda Wilkins, on behalf of herself and all persons similarly situated, files this Class Action Complaint. Plaintiff alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1.     Plaintiff brings this action on behalf of herself and class of all similarly situated consumers against Defendant Simmons Bank ("Simmons" or "Bank") arising from the Bank's routine practice of assessing more than one fee based on a customer's lack of funds to pay an item.

2.     This practice breaches contractual promises; violates the covenant of good faith and fair dealing; and/or results in the Bank being unjustly enriched.

3.     Simmons's customers have been injured by the Bank's improper practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with Simmons.

4.     On behalf of herself and the Class, Plaintiff seeks damages, restitution, and injunctive relief as set forth more fully below.

## PARTIES

5.      Shunda Wilkins is a citizen of the state of Tennessee, residing in Covington, and held a Simmons checking account.

6.      Defendant Simmons is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Class.  Simmons' main office and headquarters is located in Pine Bluff, Arkansas.  Simmons has $16.5 billion in assets and provides banking services to customers through 230 bank branches in the states of Arkansas (84 branches), Colorado (3 branches), Illinois (4 branches), Kansas (6 branches), Missouri (45 branches), Oklahoma (18 branches), Tennessee (48 branches), and Texas (22 branches). Simmons is the third largest bank in Arkansas based on total deposits.  Simmons operates banking centers, and thus conducts business, throughout the state of Arkansas, including three branches in Jonesboro.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed class is comprised of at least 100 members; (2) plaintiff is a citizen of a Tennessee, making at least one member of the proposed class a citizen of a different state than Defendant; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Simmons is subject to personal jurisdiction here and regularly conducts business in this district.  Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this district.

## PROCEDURAL BACKGROUND

9.      On May 13, 2019, Donald Tannehill filed a substantially similar action against Simmons in this Court. *See Tannehill v. Simmons Bank*, Case No. 3:19-cv-00140-DPM (E.D. Ark.).

10.     On October 21, 2019, this Court denied in part and granted in part the Bank's motion to dismiss, finding that all of Mr. Tannehill's claims survived, but that his breach of the implied covenant could not be pursued a separate claim. *See* ECF No. 23 in Case No. 3:19-cv-00140-DPM.

11.     Subsequently, Mr. Tannehill died and Simmons Bank filed a Suggestion of Death with the Court. *See* ECF No. 31 in Case No. 3:19-cv-00140-DPM.

12.     Pursuant to Federal Rule of Civil Procedure 25, the deadline for the filing of a motion to substitute parties is May 5, 2020. *See* ECF No. 32 in Case No. 3:19-cv-00140-DPM.[1]

13.     On February 28, 2020, Mr. Tannehill's counsel filed a motion to amend for the purpose of adding Ms. Wilkins as an additional plaintiff in *Tannehill*. *See* ECF No. 36 in Case No. 3:19-cv-00140-DPM.

14.     On March 10, 2020, the Court denied the motion to amend as premature, suspending the Final Scheduling Order, staying the case; indicating that the request could be renewed at the time the motion to substitute parties was filed. *See* ECF No. 39 in Case No. 3:19-cv-00140-DPM. The stay remains in effect until July 10, 2020. *See* ECF No. 41.

15.     Mr. Tannehill's counsel has every intention of moving to substitute the Estate of Donald Tannehill as the proper party in *Tannehill*. However, given the complexity of Mr.

---

[1] On April 3, 2020, Plaintiff filed an unopposed motion to extend time to file motion to substitute with the Court. *See* ECF No. 40 in Case No. 3:19-cv-00140-DPM. The Court granted this extension. *See* ECF No. 41 in Case No. 3:19-cv-00140-DPM.

Tannehill's family tree and the impact of the COVID-19 pandemic on the Missouri state court system, it could be several months before an administrator is appointed for the Tannehill estate.

16.     Should substitution in *Tannehill* ultimately be granted as expected, it is anticipated that a stipulation will be submitted to the Court to consolidate or at least coordinate Ms. Wilkins's claims with those in *Tannehill.*

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.     SIMMONS CHARGES MORE THAN ONE FEE ON THE SAME ITEM

17.     As alleged more fully herein, Simmons's "TERMS AND CONDITIONS OF YOUR ACCOUNT" ("Deposit Agreement"), in concert with its Fee Schedule, allows it to charge a *single* $35 Insufficient Funds Fee or a *single* $35 Overdraft Fee when an item is returned for insufficient funds or paid into insufficient funds.

18.     Simmons breaches its contractual documents when it charges more than one $35 fee on the same item, since the document explicitly states—and reasonable consumers understand—that the same item can only incur a single fee.

19.     This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if an item is resubmitted for payment multiple times.

20.     Simmons's contractual documents never disclose this practice. To the contrary, the Fee Schedule indicates the Bank will only charge a single fee (whether it be an Insufficient Funds Fee or an Overdraft Fee) on an item for which the account holds insufficient funds.

#### A.     Plaintiff Wilkins's Experience.

21.      In support of her claims, Plaintiff Wilkins offers an example of fees that should not have been assessed against her checking account. As alleged below, Simmons: (a)

4

reprocessed a previously declined item an additional time; and (b) charged an additional fee upon reprocessing,

22.     On December 6, 2017, Plaintiff Wilkins attempted an electronic payment to Liberty National for her insurance premium in the amount of $72.93.

23.     Simmons rejected payment of the item due to insufficient funds in Plaintiff's account and charged her a $35 fee for doing so.  Plaintiff does not dispute the initial fee, as it is allowed by Simmons's Deposit Agreement.

24.     Unbeknownst to Plaintiff, and without her request to Simmons to reprocess the item, however, twelve days later, on December 18, 2017, Simmons processed the same item yet again, and again Simmons rejected the item due to insufficient funds and charged Plaintiff *another* $35 fee.

25.     *In sum, Simmons assessed Plaintiff $70 in fees in its effort to process a single payment of $72.93.*

26.     Plaintiff Wilkins understood the payment to be a single item pursuant to the terms of Simmons's contract, capable at most of receiving a single Insufficient Funds Fee (if Simmons returned it) or a single Overdraft Fee (if Simmons paid it).

**B.      The Imposition of Multiple Fees on a Single Transaction Violates Simmons's Express Promises and Representations.**

27.     Simmons's Deposit Agreement and Fee Schedule state that a singular fee can be assessed on checks, ACH debits, and electronic payments.

28.     Simmons's Fee Schedule states that it will charge *$35 per item* that is returned due to insufficient funds or paid into overdraft.

29.     According to the Fee Schedule, at most a *single* fee will be assessed when an "item" is returned or paid into overdraft:

A fee may be imposed if you overdraw your account. When you write a check, withdraw money in person or from an ATM, use your debit card to make a purchase, or make an automatic bill payment or other electronic payment for more than the amount in your account; you overdraw your account. Simmons Bank has the choice to either pay the item or not. If we pay even though you don't have the money in your account; you may be charged a Paid Item Fee (Overdraft Fee). If we return your item without paying it you may be charged a Return Item Fee (Insufficient Funds (NSF) Fee [sic]. (Exceptions: Paid Item/Overdraft and Return Item/Insufficient Funds Fees are not charged on Affordable Advantage Checking accounts.)

[…]

Paid Item/Overdraft Fees on consumer accounts will not exceed $210.00 on any one given day.

| Paid Item/Overdraft Fee | Non-Customer | Customer |
|---|---|---|
| Per Item | Not offered | $35.00 |

[…]

| Return Item/Insufficient Funds (NSF) Fee | Non-Customer | Customer |
|---|---|---|
| Per Item | Not offered | $35.00 |

Fee Schedule, p. 5 (Exh. A hereto).

30.     The same "check…automatic bill payment or other electronic payment" on an account cannot conceivably become a new item each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

31.     There is zero indication anywhere in the Deposit Agreement or Fee Schedule that the same "check…automatic bill payment or other electronic payment" is eligible to incur multiple fees.

32.     Even if Simmons reprocesses an instruction for payment, it is still the same "check…automatic bill payment or other electronic payment." The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

33.     Indeed, the language quoted above makes clear that it is the action of the accountholder, and only the accountholder, that creates an item: "When *you write a check*,

6

*withdraw money* in person or from an ATM, *use your debit card* to make a purchase, *or make an automatic bill payment* or other electronic payment . . . ." As alleged herein, Plaintiff took only a single action to make a single payment; she may therefore be charged only a single fee.

34.     Moreover, by expressly linking Overdraft Fees and Insufficient Funds Fees in the disclosure, Simmons bolsters the reasonable assumption that only a single fee can be assessed on an item. Here's why: For an item charged an "overdraft fee" and thus paid into overdraft, there is no chance it can be subject to reprocessing and thus no chance it could be subject to a second or third fee, since it has already been paid. No reasonable contract reading could allow the *other* fee mentioned in the disclosure—the Insufficient Funds Fee—to be treated so differently and assessed two or three times on the same item.

35.     The disclosures described above never discuss a circumstance in which Simmons may assess multiple fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again (incurring an Insufficient Funds Fee) or paid (incurring an Overdraft Fee).

36.     In sum, Simmons promises that one $35 Insufficient Funds Fee or one $35 Overdraft Fee will be assessed per "check, . . . Automatic bill payment or other electronic payment", and these terms must mean all iterations of the same instruction for *payment*. As such, Simmons breached the contract when it charged more than one fee per item.

37.     Reasonable consumers understand any given authorization for payment to be one, singular "check…automatic bill payment or other electronic payment," as those terms are used in Simmons's Fee Schedule.

38.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same

"item," which the Bank will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Simmons disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Simmons customers ever agree to such fees.

39.     Customers reasonably understand, based on the language of the Fee Schedule and Simmons's other account documents, that the Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional fees. In other words, it is always the same item.

40.     Banks like Simmons that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant here has never done.

41.     For example, First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

42.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to

8

us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

43.   First Citizens Bank, which, like Simmons has branches in Missouri, Oklahoma,

Tennessee, and Texas, engages in the same practice as Simmons, but at least expressly states:

**FEES FOR NSF ITEMS**

Consumer/Personal Accounts: We charge a service fee for each NSF item greater than $5.00 that is presented for payment against your account up to a maximum of four NSF items per day. A service fee may be charged **each time an item is presented for payment against your account** (up to four service fee charges per day).

Business Accounts: We charge a service fee **for each NSF item each time it is presented for payment** against your account.

[…]

Because we may charge a service fee for an NSF item **each time it is presented**, **we may charge you <u>more than one service fee for any given item</u>**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

44.   Andrews Federal Credit Union states:

You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, **because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item**. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

45.   Community Bank, N.A. states:

You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

46.     RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

47.     Simmons provides no such disclosure and, in so doing, deceives its accountholders.

**C.     The Imposition of Multiple Fees on a Single Transaction Breaches Simmons's Duty of Good Faith and Fair Dealing.**

48.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party.   In such circumstances, the party with discretion is required to exercise that power and discretion in good faith.   This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers.   Indeed, the Bank has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties.   Here—in the adhesion agreements Simmons foisted on Plaintiff and its other customers—Simmons has provided itself numerous discretionary powers affecting customers' accounts.   But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Bank abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

49.     Simmons exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines "item" in a way that directly leads to more

fees.  Further, Simmons abuses the power it has over customers and their bank accounts and acts

contrary to their reasonable expectations under the Fee Schedule and Deposit Agreement.  This

is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

50.     Simmons states only that it "may" assess these fees: "If we pay even though you

don't have the money in your account; you may be charged a Paid Item Fee (Overdraft Fee).  If

we return your item without paying it you may be charged a Return Item Fee (Insufficient Funds

(NSF) Fee [sic]."  But it is its standard policy to always do so, multiple times on the same item.

This is an abuse of discretion.

51.     By interpreting this discretion in its own favor—and to the prejudice of Plaintiff

and other customers—to allow the Bank to charge more than one fee on a single item, Simmons

breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the

implied covenant to act in good faith.

52.     It was bad faith and totally outside Plaintiff's reasonable expectations for

Simmons to use its discretion to assess two fees for a single attempted payment.

53.     The multiple fees on the same item practice used by Simmons has one purpose:

to maximize fee revenue for the Bank.

54.     In addition to the discretion as to whether to pay or reject a transaction, Simmons

also provides itself significant discretion as to whether or not to charge fees on a given

transaction.

55.     By exercising its discretion in its own favor—and to the prejudice of Plaintiff and

other customers—by engaging in its multiple fee conduct, Simmons Bank abuses the power it

has over Plaintiff and her bank account and acts contrary to customers' reasonable expectations

11

under the Deposit Agreement.  This is a breach of the Bank's implied covenant to engage in fair

dealing and act in good faith.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action on behalf of herself and on behalf of all others similarly

situated pursuant to Federal Rule 23.  The Class includes:

> All persons who, within the applicable statute of limitations period, were charged
> multiple fees for the same debit item in a Simmons checking account.

57.     Excluded from the Class is Defendant, Defendant's subsidiaries and affiliates,

their officers, directors, and the members of their immediate families, and any entity in which

Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any

such excluded party, the judicial officer(s) to whom this action is assigned, and the members of

their immediate families.

58.     Plaintiff reserves the right to modify or amend the definition of the proposed

Class and/or to add a subclass or subclasses if necessary before the Court determines whether

certification is appropriate.

59.     The Class will face common questions such that there is a well-defined

community of interest among the members of the Class. These questions predominate over

questions that may affect only individual class members because Simmons has acted on grounds

generally applicable to the Class.  Such common legal or factual questions include, but are not

limited to:

a)     Whether Simmons improperly charged more than one fee on the same item;

b)     Whether any of the conduct described above violates the applicable contracts;

c)     Whether any of the conduct described above violates the covenant of good faith
       and fair dealing;

d)     Whether any of the conduct described above constitutes unjust enrichment;

e)      The appropriate measure of damages.

60.      The parties are numerous such that joinder of them all is impracticable. Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to Simmons's records. Simmons has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

61.      It is impracticable to bring the Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

62.      Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Simmons, as described herein.

63.      Plaintiff is more than an adequate representative of the Class in that Plaintiff has or had a Simmons checking account and has suffered damages as a result of Simmons's contract violations, Simmons's violations of the covenant of good faith and fair dealing, and Simmons's unjust enrichment. In addition:

a)      Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

13

b)      There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c)      Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d)      Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

64.      Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

65.      Simmons has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

66.      All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT AND BREACH OF THE
### COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Class)

67.      Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Petition as if fully set forth herein.

68.      Plaintiff and Simmons contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

69.      Simmons breached the terms of the Deposit Agreement and Fee Schedule.

70.      Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to the Bank's Deposit Agreement and Fee Schedule.

71.      Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches.

14

72.     All of the relevant states (with the possible exception of Texas) mandate that an implied covenant of good faith and fair dealing govern every contract.  For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state.  The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

73.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

74.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit— not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

75.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.   Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

76.     Simmons breached the covenant of good faith and fair dealing as explained herein.

77.     Defendant acted without good faith, did not deal fairly, and acted in a manner that was arbitrary and capricious.

15

78.     Plaintiff and members of the putative Class have performed all of the obligations imposed on them pursuant to the Deposit Agreement.

79.     Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

## COUNT II
## UNJUST ENRICHMENT
### (In the Alternative to COUNT I)
### (On Behalf of Plaintiff and the Class)

80.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Petition as if fully set forth herein.

81.     This Count is brought solely in the alternative.  Plaintiff acknowledges that her breach of contract claim cannot be tried along with unjust enrichment.

82.     To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

83.     Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant the fees that were not disclosed or allowed for in the in the Deposit Agreement and Fee Schedule.

84.     Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

85.     Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

1.     Certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Class, and appointing counsel for Plaintiff as counsel for the respective Class;

2.     Declaring that Defendant's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

3.     Enjoining Defendant from the wrongful conduct as described herein;

4.     Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

5.     Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

6.     Awarding actual and/or compensatory damages in an amount according to proof;

7.     Awarding pre-judgment interest at the maximum rate permitted by applicable law;

8.     Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

9.     Awarding such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  April 10, 2020.

                    Respectfully submitted,

BY:   WATSON BURNS, PLLC

William F. Burns (Ark. Bar No. 2008019)
253 Adams Avenue
Memphis, Tennessee 38103
(901) 529-7996
bburns@watsonburns.com

Jeffrey Kaliel*
KALIEL PLLC
1875 Connecticut Avenue NW
10th Floor
Washington, DC 20009
(202) 350-4783
jkaliel@kalielpllc.com

E. Adam Webb*
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-0773
Adam@WebbLLC.com

Tiffany M. Yiatras*
Francis J. "Casey" Flynn, Jr.*
CONSUMER PROTECTION LEGAL, LLC
308 Hutchinson Road
Ellisville, Missouri 63011
tiffany@consumerprotectionlegal.com
casey@consumerprotectionlegal.com

J. Gerard Stranch, IV*
Martin F. Schubert*
BRANSTETTER, STRANCH
& JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gerards@bsjfirm.com

Lynn A. Toops*
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com

*Attorneys for Plaintiff*

* *Pro Hac Vice* Forthcoming

Exhibit "A"





home    schedule of fees and charges

## Simmons Bank Schedule of Fees & Charges

## Member FDIC

| 1. Funds Transfers: | Non-Customer | Customer |
|---|---|---|
| Wire Transfer - Incoming | Not offered | $3.00 |
| Wire Transfer - Outgoing Domestic | Not offered | $15.00 |
| Wire Transfer - Outgoing International | Not offered | $75.00 |
| **Transfer between Simmons Bank Accounts:** | **Non-Customer** | **Customer** |

| | | |
|---|---|---|
| ATM, Voice Response or Internet Banking | Not offered | No Charge |
| Automated OD Protection Sweep Transfer | Not offered | $5.00 |
| Telephone Transfer Request (not applicable to Affordable Advantage Checking accounts) | Not offered | $2.00 |
| One-Way Sweep (Monthly Fee) | Not offered | $25.00 |
| **2. Negotiable Instruments:** | **Non-Customer** | **Customer** |
| Cashier's Check/Official Checks (each) | Not offered | $5.00 |
| Foreign Currency Purchase (plus processing charges) | Not offered | $5.00 |
| Foreign Currency Buy Back | Not offered | $20.00 |
| **3. Check Fees:** | **Non-Customer** | **Customer** |
| Cashing Simmons Bank Checks | No Charge | No Charge |
| Return of Deposited Item | Not offered | $3.00 |
| **4. Collection Fees: (per item plus all other expenses):** | **Non-Customer** | **Customer** |
| Checks, Drafts, Bonds, Coupons, Oil & Gas Leases | Not offered | $10.00 |
| International Items | Not offered | $25.00 |
| **5. Signature Guarantees:** | **Non-Customer** | **Customer** |

| | Non-Customer | Customer |
|---|---|---|
| Per Item | Not offered | $20.00 |
| **6. Statements:** | **Non-Customer** | **Customer** |
| Interim, Temporary, Reprint or Duplicate | Not offered | $3.00 |
| **7. Returned Mail Fee:** | **Non-Customer** | **Customer** |
| Monthly Fee | Not offered | $10.00 |
| **8. Research/Account Reconciliation:** | **Non-Customer** | **Customer** |
| Per Hour Fee (one hour minimum) | Not offered | $20.00 |
| Copies (per page) | Not offered | $2.00 |
| **9. Safe Deposit Box Services:** | **Non-Customer** | **Customer** |
| Annual Fee | Not offered | Varies by Size |
| Late Fee (fee applied if 30 days past due) | Not offered | $10.00 |
| Drill Fee (plus all other expenses) | Not offered | $75.00 |
| Lost Key Fee | Not offered | $15.00 |
| **10. ATM Fees/Debit Card Fees:** | **Non-Customer** | **Customer** |
| Withdrawal at a Simmons Bank ATM | $3.00 | No Charge |

| Withdrawal at a non-Simmons Bank ATM | Not offered | $1.00 |
|---|---|---|
| Balance Inquiry at a non-Simmons Bank ATM | Not offered | $1.00 |
| ATM Card/Debit Card Replacement Fee | Not offered | $5.00 |
| Manual Cash Advance using Debit Card | Not offered | $1.00 |

| **11. Night Deposit Services:** | **Non-Customer** | **Customer** |
|---|---|---|
| Lock Bag (each) | Not offered | $35.00 |
| Key (each) | Not offered | $6.00 |
| Zip Bag (each) | Not offered | $3.00 |

| **12. Miscellaneous Fees:** | **Non-Customer** | **Customer** |
|---|---|---|
| Temporary Checks: New Account Package | Not offered | No Charge |
| Temporary Checks: Additional Package of 12 Checks | Not offered | $2.00 |
| Notary Charge (per item) (Subject to state law. Not to exceed $3.00) | Not offered | No Charge |
| Loan Coupon Book Replacement Fee (per occurrence) | Not offered | $7.00 |
| Levies/Garnishments (per occurrence) | Not offered | Varies |

Administrative Fees for garnishments are established by State Statute.

| **13. Stop Payment Fee** | **Non-Customer** | **Customer** |
| --- | --- | --- |
| Per Item | Not offered | $35.00 |

A fee may be imposed if you overdraw your account. When you write a check, withdraw money in person or from an ATM, use your debit card to make a purchase, or make an automatic bill payment or other electronic payment for more than the amount in your account; you overdraw your account. Simmons Bank has the choice to either pay the item or not. If we pay even though you don't have the money in your account; you may be charged a Paid Item Fee (Overdraft Fee). If we return your item without paying it you may be charged a Return Item Fee (Insufficient Funds (NSF) Fee. (Exceptions: Paid Item/Overdraft and Return Item/Insufficient Funds Fees are not charged on Affordable Advantage Checking accounts.)

De Minimis Account: If the insufficient balance in your account on any given day is $5.00 or less, a paid Item Fee (Overdraft Fee) will not be charged.

Paid Item/Overdraft Fees on consumer accounts will not exceed $210.00 on any one given day.

Paid Item/Overdraft Fees on business accounts will not exceed $280.00 on any one given day.

| **14. Paid Item/Overdraft Fee** | **Non-Customer** | **Customer** |
| --- | --- | --- |
| Per Item | Not offered | $35.00 |
| **15. Return Item/Insufficient Funds (NSF) Fee** | **Non-Customer** | **Customer** |
| Per Item | Not offered | $35.00 |

**16. Dormant Accounts** will be charged a monthly dormant account fee of $5.00 in addition to the monthly service charge, if the balance in the account falls below $100. Dormant accounts are accounts with no activity by the customer or contact from the customer for more than 24 months (Exceptions: Simply Checking and Simply Student Checking is 180 days of inactivity; No Dormant Fee assessed on Affordable Advantage Checking). Interest crediting and service charges are not considered activity by the customer. Dormant accounts with balances of $100 or greater, which are considered unclaimed or abandoned property, will be charged an annual dormant fee of $60.00 (12 months x $5.00).



**Posting Sequence:** Transactions are grouped into categories prior to posting. Categories for electronic transactions, such as debit card purchases and ATM withdrawals will post prior to checks and other paper items and will generally post in the order you made them. Check categories include: Checks cashed at a Simmons Bank location, which will post first; Checks deposited at a Simmons Bank location; and Checks cashed or deposited through other financial institutions. Checks and paper items written on your account will post each day in check number order within each check category. Miscellaneous debits or items with no check number will post first each day within each check category.

This site is directed at, and intended to be used by, persons in the United States of America only.