# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

| | |
|---|---|
| SHUNDA WILKINS, on behalf of herself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 3:20-cv-00116-DPM<br>)<br>) Hon. D.P. Marshall Jr. |
| vs. | )<br>) |
| SIMMONS BANK, | )<br>) |
| Defendant. | )<br>)<br>) |

## DEFENDANT SIMMONS BANK'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY,
## TO STRIKE CLASS ACTION ALLEGATIONS

**INTRODUCTION**

Plaintiff Shunda Wilkins challenges a single $35 insufficient funds fee that she never paid. Indeed, before the assessment of the challenged fee in December 2017, Ms. Wilkins was already overdrawn on her checking account by over $500. Ms. Wilkins never paid back Simmons Bank ("Simmons") for the hundreds of dollars of insurance premiums it covered on her behalf in late 2017. Ultimately, Simmons was forced to incur losses of over $500 on Ms. Wilkins's checking account following the charge-off of her account. If this case proceeds past the motion to dismiss, Simmons will be filing a counterclaim against Ms. Wilkins for this unpaid amount.

Yet, here, Ms. Wilkins claims that *she* is the aggrieved party. She attempts to assert the same putative class action claims at issue in *Tannehill v. Simmons Bank*, Case No. 3:19-cv-00140-DPM (E.D. Ark.). In each case, the named plaintiffs—represented by the same counsel—challenge Simmons's assessment of overdraft or insufficient funds fees where a merchant resubmits a previously-rejected payment request. *Tannehill* is stayed, following Simmons's learning of the death of Mr. Tannehill through its own independent investigation and then filing a Suggestion of Death. Mr. Tannehill's claims against Simmons therefore abated and can be revived only through the substitution of his estate as a party. *Tannehill*, Dkt. 39. Ms. Wilkins now seeks to proceed separately while Mr. Tannehill's estate is addressed (Compl. ¶¶ 9-16), but Ms. Wilkins cannot sustain a claim seeking restitution of a fee *she did not pay*.

Ms. Wilkins's two-count complaint fails to state a claim for breach of contract or unjust enrichment. First, Ms. Wilkins's breach of contract claim fails because the complaint does not—and cannot—allege that Ms. Wilkins performed her end of the bargain. Simmons advanced Ms. Wilkins hundreds of dollars that she never repaid. Second, Ms. Wilkins's unjust enrichment claim fails because the complaint does not—and cannot—allege that she conferred a benefit that

Simmons should return.  Ms. Wilkins never paid the challenged $35 insufficient funds fee, and Simmons lost hundreds of dollars on her checking account.  Simmons has not been enriched at all.  Accordingly, Ms. Wilkins's complaint should be dismissed with prejudice.

Alternatively, even if the Court finds that Ms. Wilkins states a claim, the Court should strike the Complaint's class action allegations because Ms. Wilkins is not a suitable putative class representative.  Ms. Wilkins did not pay a single fee where a merchant resubmits a previously-rejected payment request and therefore cannot represent a putative class asserting breach of contract and unjust enrichment claims challenging the fees.

## BACKGROUND

*Ms. Wilkins's Claims*

Ms. Wilkins was a Simmons checking account customer.  Compl. ¶ 5.  Ms. Wilkins opted into Simmons's overdraft service, which allows a customer to withdraw cash and make debit card purchases even if an account lacks sufficient funds.  *See, e.g.*, 12 C.F.R. § 1005.17(b).

Simmons allows customers enrolled in its overdraft service to withdraw funds up to a $500 negative balance.  Ex. 1 (Overdraft Privilege Account Disclosure).[1]  Not surprisingly, customers are contractually required to repay Simmons if they overdraw their account:

> Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account.  This

---

[1] Although Ms. Wilkins attached only her fee schedule to the complaint, the Court may consider the full account agreement and related disclosures because they are referenced in the complaint and integral to Ms. Wilkins's claims.  Compl. ¶ 17; *U.S. ex rel. Paulos v. Stryker Corp.*, 762 F.3d 688, 696 (8th Cir. 2014) (a court may consider "'matters incorporated by reference or integral to the claim'"); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661-62 (7th Cir. 2012) (where plaintiff sues under a contract, "[defendant] is entitled to take the position that [plaintiff] has appended only a part of the relevant instrument and to append what it contends is the remainder"); *accord Prieto v. Election.com*, 2005 WL 3560596, at *2 (E.D.N.Y. Dec. 29, 2005); *Dials v. Watts Bros. Moving & Storage Sys.*, 2003 WL 23208987, at *3 (S.D. Ohio Nov. 24, 2003).

> liability is due immediately, and can be deducted directly from the account balance whenever sufficient funds are available. You have no right to defer payment of this liability, and you are liable regardless of whether you signed the item or benefited from the charge or overdraft.

Ex. 2 at 1 (Terms and Conditions). Moreover, to maintain the overdraft service in good standing, Simmons requires customers to bring their account balance positive at least once every 30 days. Ex. 1. Simmons charged a $35 per item fee for payment requests that were either paid into overdraft or rejected for insufficient funds and returned unpaid. Compl. Ex. A at 5.

On October 23, 2017, Ms. Wilkins's checking account had a positive balance of $8.32. Ex. 3 (Nov. 17, 2017 Account Statement).[2] That day, Ms. Wilkins made a $300.38 insurance payment to Metlife, which overdrew her account. *Id.* Simmons advanced those funds to Ms. Wilkins. *Id.* On November 7, 2017, Ms. Wilkins made a $72.93 insurance payment to Liberty National, which further overdrew her account. *Id.* Simmons again advanced those funds to Ms. Wilkins. *Id.* By November 17, 2017, Ms. Wilkins's account had a negative balance of $437.99. *Id.*

Ms. Wilkins did not repay the funds advanced by Simmons or bring her account balance positive. Instead, on December 6, 2017, Liberty National attempted to debit $72.93 from Ms. Wilkins's account. Ex. 4 (Dec. 19, 2017 Account Statement). Simmons declined this payment—which would have exceeded the $500 overdraft limit—and assessed a $35 insufficient funds fee. *Id.*; Compl. ¶¶ 22-23. Ms. Wilkins does not dispute that this $35 fee was proper.

---

[2] The Court may consider Ms. Wilkins's account statements covering the transactions at issue on a motion to dismiss. *See Cobb v. PayLease LLC*, 34 F. Supp. 3d 976, 979 n.2 (D. Minn. 2014) (holding that "bank statements, although not explicitly referenced in the [complaint], are central to [plaintiff's] claims" and plaintiff "does not dispute the accuracy of the statements") (following *Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 581 & n.3 (E.D. Pa. 2004)); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (holding that a court may consider documents "necessarily embraced by the pleadings" on a motion to dismiss).

On December 18, 2017, Liberty National again attempted to debit $72.93 from Ms. Wilkins's account. Ex. 4; Compl. ¶ 24. Simmons declined the payment and assessed a $35 insufficient funds fee—the only fee Ms. Wilkins disputes. *Id.* ¶¶ 24-26. Ms. Wilkins alleges that the December 6 and 18, 2017 payment attempts represent a single "item" and that the second $35 fee was improper. *Id.* By December 19, 2017, Ms. Wilkins's account had a negative balance of $545.21, the majority of which ($510.21) is undisputed.

Ms. Wilkins does not allege that she paid the challenged $35 fee or made any subsequent deposits to her account. Compl. ¶¶ 21-26 (alleging only that Simmons "charged" or "assessed" the challenged fee). On December 22, 2017, Simmons notified Ms. Wilkins that it was closing her checking account because she failed to comply with the terms of her account agreement. Ex. 5 (Dec. 22, 2017 Account Closure Letter). Simmons reminded Ms. Wilkins that she was "still responsible for repaying the remaining overdraft amount." *Id.*

***Procedural History***

Before Ms. Wilkins filed this case, Mr. Tannehill asserted the same claims challenging the assessment of overdraft or insufficient funds fees where a merchant resubmits a previously-rejected payment request. *See Tannehill v. Simmons Bank*, Case No. 3:19-cv-00140-DPM (E.D. Ark.). At the motion to dismiss stage, the Court declined to interpret the parties' account agreement to evaluate (i) whether such fees are authorized or (ii) whether the contract's pre-suit notice and cure requirement applies. *Tannehill*, Dkt. 23 at 2.[3] The parties therefore actively commenced discovery. In February 2020, months into discovery, Simmons learned on its own

---

[3] Based on the Court's ruling in *Tannehill*, Simmons is not seeking to dismiss Ms. Wilkins's complaint on the grounds that the challenged fee is contractually authorized or that the contract's pre-suit notice and cure requirement bars Ms. Wilkins's claims. As in *Tannehill*, Simmons fully intends to raise these issues, if necessary, at a later stage.

that Mr. Tannehill had passed away on November 15, 2019.  On February 5, 2020, Simmons filed a Suggestion of Death with the Court.  *Tannehill*, Dkt. 31.

On February 18, 2020, the Court ordered Mr. Tannehill's former counsel to move to dismiss him and substitute another plaintiff.  *Tannehill*, Dkt. 32.  On February 28, 2020, Mr. Tannehill's former counsel moved for leave to file an amended complaint that continued to name Mr. Tannehill but also sought to add Ms. Wilkins.  *Tannehill*, Dkt. 36.

On March 10, 2020, the Court denied the motion as premature because "[t]here is nothing to amend at the moment."  *Tannehill*, Dkt. 39.  The Court explained that Mr. Tannehill's claims "abated at his November 2019 death" and "can be revived by a timely motion to substitute."  *Id.*  The Court therefore stayed the case until Mr. Tannehill's estate is resolved.  *Id.*  The Court indicated that it is "await[ing] the planned motion to substitute, which can be joined to a motion to amend that proposed the additional plaintiff [Ms. Wilkins], too."  *Id.*  The Court later extended the deadline for moving to substitute to July 10, 2020.  *Tannehill*, Dkt. 41.

Instead of waiting to join *Tannehill*, Ms. Wilkins filed her own complaint.  If and when Mr. Tannehill's estate is substituted in *Tannehill*, Ms. Wilkins apparently intends "to consolidate or at least coordinate [her] claims with those in *Tannehill*."  Compl. ¶ 16.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Courts insist upon "'specificity in pleading' … to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope'" of

success.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007).

I.      **The Complaint Fails To State A Claim For Breach Of Contract.**

Count I fails to state a claim for breach of contract.  The parties' account agreement specifies that it is governed by Arkansas law.  Ex. 2 at 1.  "To prevail on a breach of contract claim in Arkansas, the plaintiff must show that:  (1) the plaintiff and defendant had a contract; (2) the contract required the defendant to perform a certain act; (3) the plaintiff did what the contract required; (4) the defendant did not do what the contract required; and (5) the plaintiff was damaged by the breach."  *Ramthun v. Bryan Career College-Inc.*, 93 F. Supp. 3d 1011, 1023 (W.D. Ark. 2015) (citing Ark. Model Jury Instr.—Civil 2401); *accord Commercial Credit Grp. Inc. v. Allianz Global Corp. & Specialty N. Am.*, 2018 WL 1575823, at *5 (E.D. Ark. Mar. 30, 2018); *Moore v. Mack's Sport Shop, LLLP*, 2017 WL 4350980, at * (E.D. Ark. Sept. 29, 2017).

Ms. Wilkins has not adequately alleged—and cannot adequately allege—that she did what her contract required.  To the contrary, Ms. Wilkins overdrew her account by more than $500 and never paid Simmons back.  When Simmons closed Ms. Wilkins's account, the account had a negative balance of $545.21.  Exs. 4-5.  Ms. Wilkins does not dispute that she owes Simmons $510.21 ($545.21 less the $35 challenged fee), including for insurance payments to MetLife ($300.38) and Liberty National ($72.93) that Simmons made on Ms. Wilkins's behalf.  Ms. Wilkins therefore breached her agreement to "immediately" repay "any account shortage resulting from charges or overdrafts."  Ex. 2 at 1.  Ms. Wilkins also breached the terms of Simmons's overdraft service, which required her to bring her account to a positive balance at least once every 30 days.  Ex. 1.  Ms. Wilkins drew her account negative on October 23, 2017 and never brought her account to a positive balance by depositing funds to repay her own purchases.  Exs. 3-5.

Having failed to perform her end of the bargain, Ms. Wilkins fails to state a breach of contract claim against Simmons. Count I should be dismissed.

## II. The Complaint Fails To State A Claim For Unjust Enrichment.

Count II fails to state a claim for unjust enrichment. Under Arkansas law, "[t]o find unjust enrichment, a party must have received something of value, to which [it] is not entitled and which [it] must restore. There must also be some operative act, intent, or situation to make the enrichment unjust or inequitable." *Campbell v. Asbury Automotive, Inc.*, 2011 Ark. 157, 21, 381 S.W.3d 21, 37 (2011). "In short, an action based on unjust enrichment is maintainable where a [party] has received money or its equivalent under such circumstances that, in equity and good conscience, [it] ought not to retain." *Id.*; *accord El Paso Prod. Co. v. Blanchard*, 371 Ark. 634, 646, 269 S.W.3d 362, 372 (2007); *Hatchell v. Wren*, 363 Ark. 107, 117, 211 S.W.3d 516, 522 (2005); *see also Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (explaining that under Tennessee law, "[t]he elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for [defendant] to retain the benefit without payment of the value thereof'").

Ms. Wilkins has not alleged—and cannot allege—that Simmons received money from her to which it was not entitled and must restore. Ms. Wilkins challenges a single $35 insufficient funds fee, but Ms. Wilkins never paid the fee. Exs. 4-5. Ms. Wilkins alleges only that Simmons "charged" or "assessed" the fee at issue. Compl. ¶ 24-25. Simmons therefore did not receive anything of value from Ms. Wilkins that it could be required to return. *See, e.g.*, *Green v. Skyline Highland Holdings LLC*, 2018 WL 3800240, at *6 (E.D. Ark. June 12, 2018) (dismissing unjust enrichment claim because the complaint did not allege that the defendants "received any financial

benefit or thing of value directly from the plaintiffs"); *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) (dismissing unjust enrichment claim because plaintiff "has not alleged any payment to [defendant] for the [challenged] fees.  Therefore, [defendant] was not unjustly enriched at [plaintiff's] expense"); *Hyundai Emigration Corp. v. Empower-Visa, Inc.*, 2009 WL 10687964, at *8-9 (E.D. Va. July 2, 2009) (dismissing unjust enrichment claim because "[n]one of the allegations state that any payments were ever made to [defendants]").

While not entirely clear, Ms. Wilkins appears to rely on a boilerplate allegation that "Plaintiff *and the Class* conferred a benefit on Defendant when they paid Defendant the [challenged] fees."  Compl. ¶ 83 (emphasis added).  But Ms. Wilkins may not rely on fee payments by absent class members to state a claim; she must state a claim in her own right.  *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.") (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (internal citations omitted)).

Moreover, no injustice has been imposed on Ms. Wilkins.  Not only did Simmons receive no money for the challenged fee, but Simmons incurred a significant *loss* on Ms. Wilkins's account because she did not repay Simmons for the funds advanced for her purchases.  Unjust enrichment is an equitable doctrine, and "'equity will not intervene on behalf of a party whose conduct in connection with the same matter has been unconscientious or unjust.'" *Day v. Case Credit Corp.*, 2007 WL 604636, at *3 (E.D. Ark. Feb. 22, 2007) (quoting *Wesley v. Estate of Bosley*, 81 Ark. App. 468, 478, 105 S.W.3d 389, 396 (2003)).  Having taken hundreds of dollars from Simmons, Ms. Wilkins cannot invoke equity to recover a $35 fee that she never paid.

### III. Alternatively, The Court Should Strike Plaintiff's Class Action Allegations.

Rule 12(f) permits courts to strike any "immaterial" matter, while Rule 23(d)(1)(D) allows courts to "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 12(f), 23(d)(1)(D). Courts may strike class allegations at the outset where "the issues are plain enough from the pleadings." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982); *see Bennett v. Nucor Corp.*, 2005 WL 1773948, at *2 (E.D. Ark. July 6, 2005) (same); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1073, 1090 (E.D. Ark. 2013) ("Where class allegations are insufficient to support certification, a district court has the authority and discretion to strike those allegations [prior to discovery] under Rule 23(d)(1)(D)"); *McCrary v. Stifel, Nicolaus & Co., Inc.*, 687 F.3d 1052, 1058-59 (8th Cir. 2012) (finding that "class claims that fail to meet the requirements of Rule 23 may be properly dismissed" on the pleadings).

To maintain a class action, Ms. Wilkins's claims must be "typical of the claims … of the class," and Ms. Wilkins must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). "'A class representative must … 'possess the same interest and suffer the same injury' as the class members'" and have "familiarity with the conditions [she] challenges on behalf of the class." *Bennett*, 2005 WL 1773948, at *4 (resolving plaintiff's inadequacy as class representative on the pleadings).[4] Ms. Wilkins is not an adequate class representative. Ms. Wilkins does not possess the same interest or suffer the same injury as other members of the putative class, nor is she sufficiently familiar with the conditions she challenges, because she never actually paid a fee where a merchant resubmits a previously-rejected payment request. To the

---

[4] If the Complaint survives dismissal with its class allegations intact, Simmons reserves the right to raise this and other issues in opposition to class certification at a later stage.

contrary, Ms. Wilkins overdrew her Simmons checking account by over $500 and walked away without paying the challenged fee or her underlying negative account balance.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice. Alternatively, the Complaint's class allegations should be stricken.

Dated:  June 15, 2020

>E. B. Chiles IV (96179)
>R. Ryan Younger (2008209)
>QUATTLEBAUM, GROOMS & TULL PLLC
>111 Center Street, Suite 1900
>Little Rock, Arkansas 72201
>(501) 379-1700 Telephone
>(501) 379-1701 Facsimile
>ryounger@qgtlaw.com
>
>Debra Bogo-Ernst (*pro hac vice forthcoming*)
>Matthew C. Sostrin (*pro hac vice forthcoming*)
>MAYER BROWN LLP
>71 South Wacker Drive
>Chicago, Illinois 60606
>(312) 782-0600 Telephone
>(312) 701-7711 Facsimile
>dernst@mayerbrown.com
>
>*Attorneys for Simmons Bank*