# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

| | |
|---|---|
| SHUNDA WILKINS, DIANN GRAHAM, and DAVID WATSON on behalf of themselves and all others similarly situated, | Case No. 3:20-cv-00116-DPM  Hon. D.P. Marshall Jr. |
| Plaintiff, | |
| vs. | |
| SIMMONS BANK, | |
| Defendant. | |

## DEFENDANT SIMMONS BANK'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

**INTRODUCTION**

For over a year, Plaintiffs' counsel has been trying to find a plaintiff who can sue Simmons Bank over its practice of assessing insufficient funds fees when a merchant resubmits a previously-rejected withdrawal request. They first brought suit with Donald Tannehill as the plaintiff, but he died. After Simmons notified the Court and counsel was unable to add Mr. Tannehill's estate, the Court dismissed Mr. Tannehill's suit. *Tannehill v. Simmons Bank*, Case No. 3:19-cv-00140-DPM (E.D. Ark.). Meanwhile, counsel filed this suit with Shunda Wilkins as the plaintiff, and Simmons moved to dismiss because Ms. Wilkins had never paid the challenged insufficient funds fee or the more than $500 in overdrafts she owed. Rather than respond to Simmons's motion to dismiss the original Complaint, counsel has now filed an Amended Complaint that keeps Ms. Wilkins as a plaintiff but also adds two new plaintiffs, David Watson and Diann Graham. This latest set of maneuvers does not save this suit from dismissal.

Plaintiffs' claims are fundamentally flawed because the parties' account agreement clearly and unambiguously authorizes Simmons to assess an insufficient funds fee each time it returns a "withdrawal request" or "Item" without paying it. In an attempt to avoid the clear and unambiguous account language, Plaintiffs invent a fiction that the merchants with which they did business submitted single withdrawal requests through the Automated Clearinghouse ("ACH") Network that **Simmons** purportedly chose to process multiple times without Plaintiffs' knowledge or consent. In reality, when Simmons returned an ACH entry for insufficient funds, the ACH Network rules—which are incorporated by reference in the parties' account agreement and subject to judicial notice—allow *merchants* to re-initiate up to two more withdrawal requests through the ACH Network, which Simmons appropriately processed like any other withdrawal request. Tellingly, Plaintiffs do not allege that they denied the merchants with which they did business the

737749780.2 27-Jul-20 07:31

authority to resubmit two additional withdrawal requests as the ACH Network rules explicitly allow. As to Simmons, when the merchants "'re-presented' the request for payment, it was a new ACH debit item … and was therefore eligible for a fee when it was returned for nonsufficient funds." *Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064, at *3-5 (E.D. Va. Aug. 14, 2019) (granting motion to dismiss Plaintiffs' same resubmission theory).

In *Tannehill*, the Court noted that the ACH Network rules were "rather complicated" to address on a motion to dismiss (*Tannehill*, Case No. 3:19-cv-00140-DPM, Dkt. 23 at 2), and our description of how the rules operate was more detailed than necessary. As shown below, there are just a few, clear ACH Network rules which are relevant to Plaintiffs' claims. Those rules leave no room to dispute that Simmons has the contractual right to charge an insufficient funds fee when a merchant resubmits a previously-rejected withdrawal request and the withdrawal request is again rejected due to insufficient funds in a customer's account. Plaintiffs therefore have not stated a viable claim for breach of contract, nor have they alleged any unjust enrichment.

Even if the Amended Complaint otherwise stated a claim, Ms. Wilkins's and Mr. Watson's claims should be dismissed. Ms. Wilkins's and Mr. Watson's breach of contract claim fails because the Amended Complaint cannot allege that they performed their end of the bargain. Simmons advanced Ms. Wilkins and Mr. Watson hundreds of dollars for overdrafts that they never repaid. Second, Ms. Wilkins's and Mr. Watson's unjust enrichment claim fails. The Amended Complaint does not—and cannot—allege that Ms. Wilkins paid the challenged fee and conferred a benefit that Simmons should return, and neither Ms. Wilkins nor Mr. Watson can assert an equitable claim when they accepted and refused to repay substantial advances from Simmons.[1]

---

[1] If this case proceeds past the motion to dismiss stage, Simmons will be filing counterclaims against Ms. Wilkins and Mr. Watson who each owe Simmons more than $500 as a result of their failure to repay overdrafts.

2

## BACKGROUND

Ms. Wilkins and Mr. Watson were Simmons checking account customers, and Ms. Graham still is a Simmons customer. Am. Compl. ¶¶ 5-7. Plaintiffs opted in to Simmons's overdraft service, which allows customers to withdraw cash and make debit card purchases even if an account lacks sufficient funds. *See, e.g.*, 12 C.F.R. § 1005.17(b).

Simmons allows customers enrolled in its overdraft service to withdraw funds up to a $500 negative balance. Ex. 1 (Overdraft Privilege Account Disclosure).[2] Not surprisingly, as Plaintiffs acknowledge, customers are contractually required to repay Simmons if they overdraw their account:

> Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account. This liability is due immediately, and can be deducted directly from the account balance whenever sufficient funds are available. You have no right to defer payment of this liability, and you are liable regardless of whether you signed the item or benefited from the charge or overdraft.

Ex. 2 (Terms and Conditions); Am. Compl. ¶ 27. Moreover, to maintain the overdraft service in good standing, customers must bring their account balance positive at least once every 30 days. Ex. 1. Simmons charged a "Per Item" fee for withdrawal requests that were rejected for insufficient funds and returned. Am. Compl. ¶ 61 & Ex. A at 5 (Schedule of Fees & Charges).

---

[2] Although Plaintiffs attached only their Schedule of Fees & Charges to the Amended Complaint, the Court may consider the full agreement and related disclosures because they are referenced in the Amended Complaint and integral to Plaintiffs' claims. *U.S. ex rel. Paulos v. Stryker Corp.*, 762 F.3d 688, 696 (8th Cir. 2014) (a court may consider "'matters incorporated by reference or integral to the claim'"); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661-62 (7th Cir. 2012) (where plaintiff sues under a contract, "[defendant] is entitled to take the position that [plaintiff] has appended only a part of the relevant instrument and to append what it contends is the remainder"); *accord Prieto v. Election.com*, 2005 WL 3560596, at *2 (E.D.N.Y. Dec. 29, 2005).

*Ms. Wilkins's Transactions*

On October 23, 2017, Ms. Wilkins made a $300.38 payment to Metlife, which overdrew her account. Ex. 3 (11/17/17 Account Statement).[3] Simmons advanced those funds to Ms. Wilkins. *Id.* On November 7, 2017, Ms. Wilkins made a $72.93 payment to Liberty National, which further overdrew her account. *Id.* Simmons again advanced those funds to Ms. Wilkins. *Id.* By November 17, 2017, Ms. Wilkins's account had a negative balance of $437.99. *Id.*

Ms. Wilkins did not repay the funds advanced by Simmons or bring her account balance positive. Instead, on December 6, 2017, Liberty National attempted to withdraw $72.93 from Ms. Wilkins's account. Ex. 4 (12/19/17 Account Statement). Simmons declined this request—which would have exceeded the $500 overdraft limit—and assessed a $35 insufficient funds fee. *Id.*; Am. Compl. ¶¶ 22-23. Ms. Wilkins does not dispute that this fee was proper.

Twelve days later, on December 18, 2017, Ms. Wilkins alleges that "[u]nbeknownst" to her, Simmons processed the $72.93 withdrawal request "yet again." Am. Compl. ¶ 24. Simmons declined payment and assessed another $35 insufficient funds fee—the only fee Ms. Wilkins disputes. *Id.* ¶¶ 24-26. Ms. Wilkins alleges that the December 6 and 18 withdrawal requests represent a single "item" and that the second fee was improper. *Id.* By December 19, 2017, Ms. Wilkins's account had a negative balance of $545.21, all but $35 of which is undisputed.

---

[3] The Court may consider Ms. Wilkins's and Mr. Watson's relevant account statements on a motion to dismiss. *See Cobb v. PayLease LLC*, 34 F. Supp. 3d 976, 979 n.2 (D. Minn. 2014) (holding that "bank statements, although not explicitly referenced in the [complaint], are central to [plaintiff's] claims" and plaintiff "does not dispute the accuracy of the statements") (following *Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 581 & n.3 (E.D. Pa. 2004)); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (holding that a court may consider documents "necessarily embraced by the pleadings" on a motion to dismiss).

Ms. Wilkins does not allege that she paid the challenged $35 fee or made any subsequent deposits to her account. Am. Compl. ¶ 32. On December 22, 2017, Simmons notified Ms. Wilkins that it was closing her account with a negative balance of $545.21. *Id.* ¶ 31.

*Mr. Watson's Transactions*

Mr. Watson offers two examples where Simmons purportedly charged multiple insufficient funds fees on the same "Item" in January and February 2016. In each case, Mr. Watson alleges that an unidentified merchant made a withdrawal request and that Simmons rejected payment due to insufficient funds and charged a first insufficient funds fee, which he does not challenge. Am. Compl. ¶¶ 47-48, 52-53. Mr. Watson then alleges that six days later, Simmons "attempted to reprocess" the same withdrawal requests, purportedly without his "authorization or request." *Id.* ¶¶ 49, 54. Mr. Watson alleges that Simmons again rejected payment due to insufficient funds and charged a second fee, which he does challenge. *Id.* ¶¶ 50, 55.

By March 2016, however, Mr. Watson's account had a negative $735.59 balance, all but $60 of which is undisputed. Ex. 5 (3/18/16 Account Statement). Mr. Watson does not allege that he made any subsequent deposits to his account, or that his account was otherwise in good standing. Simmons subsequently closed Mr. Watson's account. Am. Compl. ¶ 7.

*Ms. Graham's Transactions*

Ms. Graham similarly offers two examples where Simmons purportedly charged multiple insufficient funds fees on the same "Item" in August 2019. Ms. Graham alleges that Primerica Life Insurance and Alder Holdings made withdrawal requests that Simmons rejected due to insufficient funds and charged a fee, which she does not challenge. Am. Compl. ¶¶ 36-37, 40-41. Ms. Graham then alleges that three and eleven days later, respectively, Simmons "reprocessed" the same

5

withdrawal requests, purportedly "[u]nbeknownst" to her, and again rejected payment and charged a second fee, which she does challenge. *Id.* ¶¶ 38, 42.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts insist upon "'specificity in pleading' … to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope'" of success. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007).

### I. Plaintiffs Fail To State A Claim For Breach Of Contract.

#### A. The Parties' Account Agreement Clearly And Unambiguously Authorizes The Challenged Fees.

The parties' account agreement specifies that it is governed by Arkansas law. Ex. 2 at 1. Under Arkansas law, "when a contract is free of ambiguity, its construction is a matter of law for the court to determine." *Floyd v. Otter Creek Homeowners Ass'n*, 23 Ark. App. 31, 35, 742 S.W.2d 120, 134 (1988). In construing a contract, courts "consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning." *Coleman v. Regions Bank*, 364 Ark. 59, 65, 216 S.W.3d 569, 574 (2005). Parties may not "strain the construction of ordinary terms in the contract to create ambiguity where one does not appear." *Ark. Burial Ass'n v. Dixon Funeral Home, Inc.*, 25 Ark. App. 18, 22, 751 S.W.2d 356, 357 (1988); *see also Sligo, Inc. v. Nevois*, 84 F.3d 1014, 1019 (8th Cir. 1996) (explaining that "[a] contract is not ambiguous simply because the parties disagree as to its meaning" and that "[a] court may not use 'forced or strained meanings … to create an ambiguity'") (applying Missouri law).

In *Tannehill*, the Court declined to "interpret[]" the parties' account agreement on a motion to dismiss, but acknowledged that "[t]here may or may not be ambiguity." Case No. 3:19-cv-00140-DPM, Dkt. 23 at 2. If there is no ambiguity, however, a court can interpret a contract as a matter of law. *See, e.g.*, *Cummins Law Office, P.A. v. Norman Graphic Printing Co. Ltd.*, 2012 WL 3430447, at *3 (D. Minn. Aug. 14, 2012) ("where 'a contract is unambiguous,' its plain terms 'shall be enforced'"). To survive a motion to dismiss, therefore, Plaintiffs must establish that the applicable account agreement is at least ambiguous. *See Lambert*, 2019 WL 3843064, at *5 (holding that because the challenged insufficient funds fees were unambiguously authorized, "the breach of contract claim must be dismissed for failure to state a claim").

The Terms and Conditions that governed Plaintiffs' checking accounts provided that Simmons's overdraft service applied to "***withdrawal requests*** that overdraw your account." Ex. 2 at 1 (emphasis added). The Schedule of Fees & Charges further provided that insufficient funds fees are assessed "Per Item," and explained that a fee may be assessed when Simmons makes a "choice to either pay the item or not" and "return[s] your item without paying it":

> A fee may be imposed if you overdraw your account. When you write a check, withdraw money in person or from an ATM, use your debit card to make a purchase, or make an automatic bill payment or other electronic payment for more than the amount in your account you overdraw your account, *Simmons Bank has the choice to either pay the item or not.  If we pay even though you don't have the money in your account; you may be charged a Paid Item Fee (Overdraft Fee).  If we return your item without paying it you may be charged a Return Item Fee (Insufficient Funds (NSF) Fee).*

Am. Compl. ¶ 61 & Ex. A at 5 (emphasis added).

The fees challenged by Plaintiffs are authorized by the clear and unambiguous language of the parties' account agreement. Each time a merchant re-submitted a previously-rejected withdrawal request through the ACH Network, anywhere from three to twelve days following the

7

original return (Am. Compl. ¶¶ 24, 38, 42, 49, 54), the merchant made a "withdrawal request," Simmons was required to evaluate whether to "pay the item or not," and Simmons "return[ed] [the] item without paying it," triggering a fee. The imposition of fees in these circumstances is also consistent with the plain and ordinary meaning of "Item," which means "a distinct part in an enumeration, account, or series." *Item*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/item. Each withdrawal request was a distinct part of the merchant's attempt to be paid by Plaintiffs for transactions that Plaintiffs had initiated.

Plaintiffs' theory that multiple withdrawal requests submitted days or weeks apart constitute a single "Item" is based on a fiction that merchants submitted single withdrawal requests through the ACH Network that **Simmons** purportedly chose to process multiple times. *See, e.g.,* Am. Compl. ¶ 24 ("Unbeknownst to [Ms. Wilkins], and without her request to Simmons to reprocess the item, however, twelve days later … Simmons processed the same item yet again…."); *id.* ¶ 42 ("Without Ms. Graham's request to Simmons to reprocess the item, however, eleven days later … Simmons processed the same item yet again."); *id.* ¶ 54 ("six days later …, Simmons, without Mr. Watson's authorization or request, attempted to reprocess the item").

But that is not how the ACH Network operates. The National Automated Clearing House Association ("NACHA") maintains rules for what happens when an ACH entry is returned for insufficient funds. *See* NACHA, 2019 Operating Guidelines, Ch. 10, *ODFIs and Return, Dishonored Return and Contested Dishonored or Corrected Return Entries* (Ex. 6).[4] The rules

---

[4] The Court may take judicial notice of NACHA rules on a Rule 12(b)(6) motion to dismiss, particularly because the rules are incorporated by reference into the parties' contract. *See U.S. ex rel. Paulos v. Stryker Corp.*, 762 F.3d 688, 696 (8th Cir. 2014) (under Rule 12(b)(6), a court may consider "'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record'"); *Cachet Fin. Servs. v. C & J Assocs., Inc.*, 373 F. Supp. 3d 1303, 1304 n.2 (N.D. Cal. 2019) (taking judicial notice of NACHA rules).

make clear that the sequence of rejecting payment and returning an entry for insufficient funds "***can take place only once***; there is no further recourse available to the parties within the ACH Network." *Id.* at OG53 (emphasis added). Thus, Simmons cannot reprocess the same withdrawal request after it has already been rejected for insufficient funds and returned.

Instead, the NACHA rules allow a merchant (and its bank) to "[r]einitiate an entry" through the ACH Network "a maximum of two times following the return of the original entry." *Id.* at OG55. Plaintiffs agreed in the Terms and Conditions "to be bound by automated clearing house association rules." Ex. 2 at 4; *id.* at 2 ("This agreement is subject to … other applicable rules such as … payment processing system rules."). And Plaintiffs do not allege that they denied the merchants with which they did business the authority to re-submit two additional withdrawal requests through the ACH Network as the NACHA rules explicitly allow.

Another district court squarely addressed these very issues in *Lambert*, 2019 WL 3843064, at *3-5. Similar to Simmons's account agreement—which authorized insufficient funds fees if a "withdrawal request" or "Item" is "return[ed] … without paying" it (see *supra* at 7-8)—Navy Federal's account agreement provided that "[a] fee may be assessed … for each returned debit item." *Lambert*, 2019 WL 3843064, at *3. The court held that when plaintiffs' merchant (an insurance company) "'re-presented' the request for payment, it was a new ACH debit item – just as a second check would be a new check even if it was by the same merchant, in the same amount, for the same purpose – and was therefore eligible for a fee when it was returned for nonsufficient funds." *Id.* at *4. The same is true here. When Plaintiffs' merchants re-submitted previously-rejected withdrawal requests through the ACH Network, they were new requests which Simmons was required to evaluate whether to pay and returned again for insufficient funds.

Where courts have declined to dismiss claims asserting similar theories about insufficient funds fees for resubmitted withdrawal requests, they have done so either without addressing the NACHA rules or the account agreements or because of uncertainty about the applicable terms of the agreements. *See Coleman v. Alaska USA Fed. Credit Union*, 2020 WL 1866261, at *4 (D. Ala. Apr. 14, 2020) (acknowledging that the court could have considered NACHA rules on a motion to dismiss but holding that because the parties failed to provide the court with a copy of the relevant rules, "[h]ow these rules might play into the interpretation of the Account Agreement is … a matter for another day"); *Noe v. City Nat'l Bank of West Virginia*, 2020 WL 836871, at *5 (S.D.W.V. Feb. 19, 2020) (denying motion to dismiss breach of contract claim where there was some disagreement about which terms and conditions applied at the time of the relevant purchases and defendant made no arguments under the applicable terms and conditions); *Morris v. Bank of America, N.A.*, 2019 WL 1274928, at *4-5 (W.D.N.C. Jan. 8, 2019), *report and recommendation adopted in part*, 2019 WL 1421166 (W.D.N.C. Mar. 29, 2019) (declining to dismiss breach of contract claim in a single, conclusory sentence without identifying or addressing the applicable contract language or NACHA rules). These decisions thus should carry no weight here, where the terms of the NACHA rules and the applicable account agreements are before the Court and undisputed. As in *Lambert*, Plaintiffs' breach of contract claim should be dismissed because the parties' account agreement clearly and unambiguously authorizes the challenged fees.

      **B.**    **Ms. Wilkins And Mr. Watson Cannot Allege That They Did What Their Contracts Required.**

Even if Plaintiffs otherwise stated a breach of contract claim (and they do not), at least Ms. Wilkins's and Mr. Watson's claims should be dismissed. To prevail on a breach of contract claim under Arkansas law, plaintiffs must show that *they* "did what the contract required." *Ramthun v. Bryan Career College-Inc.*, 93 F. Supp. 3d 1011, 1023 (W.D. Ark. 2015) (citing Ark. Model Jury

Instr.—Civil 2401) (emphasis added); *accord Commercial Credit Grp. Inc. v. Allianz Global Corp. & Specialty N. Am.*, 2018 WL 1575823, at *5 (E.D. Ark. Mar. 30, 2018); *Moore v. Mack's Sport Shop, LLLP*, 2017 WL 4350980, at * (E.D. Ark. Sept. 29, 2017).

Ms. Wilkins and Mr. Watson cannot allege that they did what their contracts required. To the contrary, Ms. Wilkins and Mr. Watson each overdrew their account by more than $500 and never repaid Simmons. When Simmons closed Ms. Wilkins's account, the account had a negative balance of $545.21 (Am. Compl. ¶ 31), and when Simmons closed Mr. Watson's account, the account had a negative balance of $735.59 (Ex. 5). Ms. Wilkins does not dispute that she owes Simmons $510.21 ($545.21 less the $35 challenged fee), and Mr. Watson does not dispute that he owes Simmons $675.59 ($735.59 less the $60 challenged fees).

Ms. Wilkins and Mr. Watson therefore breached their agreement to "immediately" repay "any account shortage resulting from charges or overdrafts." Am. Compl. ¶¶ 27, 29-31. They also breached the terms of Simmons's overdraft service, which required them to bring their account to a positive balance at least once every 30 days. Ex. 1. Ms. Wilkins and Mr. Watson instead drew their accounts substantially negative and never deposited money to repay the funds that Simmons advanced them for their own purchases. Having failed to perform their end of the bargain, Ms. Wilkins and Mr. Watson fail to state a breach of contract claim against Simmons.

**II.     Plaintiffs Fail To State A Claim For Unjust Enrichment.**

    **A.     Plaintiffs Do Not Allege That Simmons Received Something Of Value To Which It Was Not Entitled.**

Plaintiffs also fail to state a claim for unjust enrichment, which they assert solely in the alternative to their breach of contract claim. Am. Compl. ¶ 113. "To find unjust enrichment, a party must have received something of value, to which [it] is not entitled and which [it] must restore. There must also be some operative act, intent, or situation to make the enrichment unjust or

11

inequitable." *Campbell v. Asbury Automotive, Inc.*, 2011 Ark. 157, 21, 381 S.W.3d 21, 37 (2011). "In short, an action based on unjust enrichment is maintainable where a [party] has received money or its equivalent under such circumstances that, in equity and good conscience, [it] ought not to retain." *Id.*; *accord El Paso Prod. Co. v. Blanchard*, 371 Ark. 634, 646, 269 S.W.3d 362, 372 (2007); *Hatchell v. Wren*, 363 Ark. 107, 117, 211 S.W.3d 516, 522 (2005).

For the same reasons that Plaintiffs fail to state a claim for breach of contract (Part I.A *supra*), Plaintiffs do not—and cannot—allege that Simmons collected fees to which it was not entitled or acted unjustly or inequitably. The sole basis for Plaintiffs' unjust enrichment claim is that Simmons purportedly collected fees "that were not disclosed or allowed for" in the parties' account agreement. Am. Compl. ¶ 115. As shown above, however, Simmons processed withdrawal requests submitted by Plaintiffs' merchants and assessed corresponding fees in accordance with the clear and unambiguous terms of the parties' account agreement and NACHA rules. Plaintiffs therefore fail to state an unjust enrichment claim against Simmons.

      **B.**    **Ms. Wilkins and Mr. Watson Cannot State An Unjust Enrichment Claim.**

Even if Plaintiffs otherwise stated an unjust enrichment claim, Ms. Wilkins does not—and cannot—allege that Simmons received money from her to which it was not entitled and must restore. Ms. Wilkins challenges a single $35 insufficient funds fee, but Ms. Wilkins acknowledges that she never paid the fee. Am. Compl. ¶ 32. Simmons therefore did not receive anything of value from Ms. Wilkins that it could be required to return. *See, e.g.*, *Green v. Skyline Highland Holdings LLC*, 2018 WL 3800240, at *6 (E.D. Ark. June 12, 2018) (dismissing unjust enrichment claim because the complaint did not allege that the defendants "received any financial benefit or thing of value directly from the plaintiffs"); *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) (dismissing unjust enrichment claim because plaintiff "has not alleged any payment

to [defendant] for the [challenged] fees. Therefore, [defendant] was not unjustly enriched at [plaintiff's] expense"); *Hyundai Emigration Corp. v. Empower-Visa, Inc.*, 2009 WL 10687964, at *8-9 (E.D. Va. July 2, 2009) (dismissing unjust enrichment claim because "[n]one of the allegations state that any payments were ever made to [defendants]").

Moreover, no injustice has been imposed on either Ms. Wilkins or Mr. Watson. Simmons incurred a significant *loss* on Ms. Wilkins's and Mr. Watson's accounts because they did not repay Simmons for the significant funds advanced for their purchases. Unjust enrichment is an equitable doctrine, and "'equity will not intervene on behalf of a party whose conduct in connection with the same matter has been unconscientious or unjust.'" *Day v. Case Credit Corp.*, 2007 WL 604636, at *3 (E.D. Ark. Feb. 22, 2007) (quoting *Wesley v. Estate of Bosley*, 81 Ark. App. 468, 478, 105 S.W.3d 389, 396 (2003)). Having each taken hundreds of dollars from Simmons, Ms. Wilkins and Mr. Watson cannot invoke equity to recover insufficient funds fees.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated:  July 27, 2020                                  Respectfully submitted,

                                                          E. B. Chiles IV (96179)
                                                         R. Ryan Younger (2008209)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
(501) 379-1700 Telephone
(501) 379-1701 Facsimile
ryounger@qgtlaw.com

Debra Bogo-Ernst (*pro hac vice forthcoming*)
Matthew C. Sostrin (*pro hac vice forthcoming*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600 Telephone
(312) 701-7711 Facsimile
dernst@mayerbrown.com

*Attorneys for Simmons Bank*

14