**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| SHUNDA WILKINS, DIANN GRAHAM, and DAVID WATSON on behalf of themselves and all others similarly situated, | ) ) ) ) | Case No. 3:20-cv-00116-DPM |
| | ) | Hon. D.P. Marshall Jr. |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| SIMMONS BANK, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT SIMMONS BANK'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

This case is about whether Plaintiffs can state a claim under the terms of their account agreement with Simmons Bank ("Simmons").  Those terms make clear that Simmons may assess an insufficient funds ("NSF") fee each time a merchant submits a "withdrawal request" that would overdraw the customer's account, because Simmons has the "choice to either pay the item or not" and can assess an NSF fee if it "return[s] your item without paying it."  Am. Compl. Ex. A at 5; MTD Ex. 2 at 1.  Plaintiffs have no response to these unambiguous terms.  Simmons properly charges an NSF fee "every time a third-party payee presents an item for payment against insufficient available funds," and Plaintiffs' "stilted reading of the [agreement] does not create any ambiguity."  *Page v. Alliant Credit Union*, 2020 WL 5076690, at *4 (N.D. Ill. Aug. 26, 2020); *see Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064, at *4 (E.D. Va. Aug. 24, 2019) (holding that when plaintiffs' merchant "'re-presented' the request for payment, it was a new ACH debit item … and was therefore eligible for a fee when it was returned for nonsufficient funds").

Since this Court considered Plaintiffs' theory that NSF fees cannot be charged on resubmitted withdrawal requests in *Tannehill v. Simmons Bank*, Case No. Case No. 3:19-cv-00140-DPM (E.D. Ark.), at least one additional federal court has rejected that theory.  *Page*, 2020 WL 5076690, at *4 (dismissing same resubmission theory); *accord Lambert*, 2019 WL 3843064, at *4 (same).  While Plaintiffs cite other decisions that decline to dismiss claims based on similar theories, none of them analyze the kind of contract language and arguments raised here.

Simmons submits that Plaintiffs' claims should be dismissed in their entirety, but if the Court disagrees, at a minimum, Ms. Wilkins's and Mr. Watson's claims should be dismissed. Plaintiffs' opposition does not identify any basis for a breach of contract or unjust enrichment claim where Ms. Wilkins and Mr. Watson materially breached the parties' account agreement long

1

before the assessment of the challenged NSF fees by overdrawing their accounts by hundreds of dollars that they failed to immediately (or ever) repay.

## ARGUMENT

**I.      Plaintiffs Fail To State A Claim For Breach Of Contract.**

      **A.      The Parties' Account Agreement Clearly And Unambiguously Authorizes The Challenged Fees.**

            **1.      NSF Fees Are Tied To Merchant Withdrawal Requests, Which Simmons Makes A "Choice" To "Return … Without Paying" Each Time A Merchant Resubmits A Request.**

As Simmons explained in its opening brief (at 7-8), the parties' account agreement unambiguously provides that Simmons's overdraft service applies to "withdrawal requests that overdraw your account" and that an NSF fee may be assessed in those circumstances if Simmons makes the "choice" to "return your item without paying it."  Am. Compl. Ex. A at 5; MTD Ex. 2 at 1.  Simmons indisputably makes a "choice" to "return [the] item without paying it" each time a merchant resubmits a previously-rejected withdrawal request and an accountholder continues to have insufficient funds in an account to pay it.  Plaintiffs do not claim otherwise.

     Nonetheless, Plaintiffs argue that "fee assessment is tied directly to the action of the accountholder" and that Plaintiffs made "only one payment attempt each."  Pls. Opp. at 3, 8-9. Not so.  Under the parties' account agreement, overdrafts, and thus overdraft and NSF fees, are tied to "withdrawal requests" (MTD Ex. 2 at 1), which come from merchants, not accountholders, in the transactions at issue.  And a merchant makes a "withdrawal request" each time it resubmits a previously-rejected ACH entry, as NACHA rules allow.  Plaintiffs concede that when they authorized merchants to make the withdrawal requests at issue, they authorized ***both*** the initial withdrawal request and up to two resubmissions.  MTD Br. at 8-9; Pls. Opp. at 17 n.7 ("Plaintiffs

do not argue it is improper for a merchant to re-submit the same transaction for payment multiple times or that it is improper for Simmons to re-process the same transaction.").

### 2.    The Ordinary Meaning Of "Item" Supports Dismissal.

Plaintiffs offer no response to the plain and ordinary meaning of "Item," which the dictionary defines as "a distinct part in an enumeration, account, or series." *Item*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/item.  Each time a merchant resubmits a previously-rejected withdrawal request is indisputably a distinct part of the merchant's attempt to be paid for transactions that Plaintiffs initiated and authorized.

### 3.    The "Industry Meaning" Of "Item" Likewise Supports Dismissal.

Ignoring the plain and ordinary meaning of the account agreement, Plaintiffs assert that "Item" has an "industry meaning" that refers to "an *accountholder's* instruction for payment, not a merchant's attempt to collect on that payment."  Pls. Opp. at 9-10.  Plaintiffs are incorrect.  The so-called "industry meaning" cited by Plaintiffs in fact supports Simmons.

First, Plaintiffs cite the Arkansas Uniform Commercial Code ("UCC"), which, according to Plaintiffs, defines "Item" as "an instrument or a promise or order to pay money[.]"  Pls. Opp. at 9.  Remarkably, Plaintiffs cut the definition short and omitted the rest of the sentence.  The UCC actually defines "Item" to mean "an instrument or promise or order to pay money ***handled by a bank for collection or payment***."  Ark. Code Ann. § 4-4-104 (emphasis added).  Each resubmitted withdrawal request is plainly an "order to pay money handled by a bank for collection or payment."  The UCC's bank-centered definition of "Item" confirms what the parties' account agreement already provides—that Simmons may charge an NSF fee each time it handles a "withdrawal request" and makes a "choice" to "return [the] item without paying it."  Am. Compl. Ex. A at 5; MTD Ex. 2 at 1.

Second, Plaintiffs assert that "[t]here is no doubt that the NACHA rules support Plaintiffs' claims." Pls. Opp. at 10. Plaintiffs are wrong. Like the UCC definition of "Item," the NACHA rules make clear that each resubmitted withdrawal request is a new ACH entry that Simmons must handle by deciding whether to pay and, if not, return again for insufficient funds.

As Simmons's opening brief (at 8-9) explained, NACHA rules specify that the sequence of rejecting payment and returning an ACH entry for insufficient funds "***can take place only once***" and that Simmons therefore cannot re-process the same entry after it has already been rejected and returned. MTD Ex. 6 at OG53 (emphasis added). Instead, the NACHA rules allow a merchant to "[r]einitiate an entry" "a maximum of two times ***following the return of the original entry***." *Id.* at OG55 (emphasis added). These NACHA provisions make clear that when merchants "'re-presented' [a] request for payment, it was a ***new ACH debit item*** … and was therefore eligible for a fee when it was returned for insufficient funds." *Lambert*, 2019 WL 3843064, at *4 (emphasis added).

In response, Plaintiffs make two main arguments. First, Plaintiffs claim that it is significant that the NACHA rules require merchants to label retries as retries and otherwise prohibit altering details of a previously-returned entry. Pls. Opp. at 9-10, 15-16. But that does not change the fact that a re-submitted withdrawal request is a ***new ACH entry***—"just as a second check would be a new check even if it was by the same merchant, in the same amount, for the same purpose." *Lambert*, 2019 WL 3843064, at *4. NACHA has also explained that the purpose of the "RETRY PYMT" code is to "facilitate research and dispute resolution" when banks process resubmissions. *See* NACHA, ACH Network Risk & Enforcement Topics (Sept. 18, 2015).[1] Nothing in the

---

[1] *Available at* https://www.nacha.org/rules/ach-network-risk-and-enforcement-topics.

NACHA rules prohibit a bank from assessing its accountholder another NSF fee if a "RETRY PYMT" code is listed on an ACH entry.

Second, Plaintiffs argue that NACHA rules allow **merchants** to charge only a single "Return Fee" per underlying transaction (Pls. Opp. at 16), but NACHA places no such limitation on **banks like Simmons** that are required to process multiple ACH entries against their customers' accounts.  NACHA's decision to place a fee limit on merchants but not banks like Simmons should be given effect.  *See, e.g., Larry Hobbs Farm Equip., Inc. v. CNH Am., LLC*, 375 Ark. 379, 384-85, 291 S.W.3d 190, 195 (2009) ("The phrase *expressio unius est exclusion alterius* is a fundamental principle of … construction that the express designation of one thing may be properly construed to mean the exclusion of another.").  Simmons's authority to assess NSF fees is governed by the parties' account agreement, which authorizes a fee each time Simmons processes a withdrawal request, chooses not to pay the item, and returns it for insufficient funds.

### 4.    Case Law Supports Simmons's Position.

Of the federal courts to address Plaintiffs' resubmission theory, *Lambert* is most on point.  Navy Federal's account agreement provided that a fee "may be assessed … for each returned debit item."  *Lambert*, 2019 WL 3843064, at *3.  And *Lambert* held that each resubmission by a merchant "was a new ACH debit item" and "was therefore eligible for a fee when it was returned for insufficient funds."  *Id.* at *4.  Like in *Lambert*, the account agreement here provides that Simmons may assess an NSF fee when it processes a "withdrawal request" and makes a "choice" to "return [the] item without paying it."  Am. Compl. Ex. A at 5; MTD Ex. 2 at 1.  Plaintiffs respond that "item" is undefined (Pls. Opp. at 19), but the Simmons account agreement and fee schedule, read together, plainly equate an "item" with a merchant's "withdrawal request," which occurs when a merchant seeks payment for any particular customer transaction with the merchant.

5

This reading is fully consistent with the dictionary and UCC definitions of "Item," which make clear that each withdrawal request handled by Simmons and returned without payment due to insufficient funds is a separate "Item." *See supra* at 3.

Page—the most recent federal court decision to address Plaintiffs' resubmission theory— is also instructive. Alliant's account agreement provided that "if the amount of the item presented for payment exceeds the total available overdraft sources, the item will be returned as non-sufficient funds (NSF) and you will be charged applicable fees." *Page*, 2020 WL 5076690, at *4. The court held that this language "does not promise members that Alliant will charge just one overdraft fee per transaction. Rather, in the context of the entire Membership Agreement, Alliant charges its members an overdraft fee every time a third-party payee presents an item for payment against insufficient available funds." *Id.* The court further held that plaintiff's "stilted reading of the [agreement] does not create any ambiguity." *Id.* The same is true here.

Plaintiffs accuse Simmons of failing to mention any of the cases that allowed their resubmission theory to survive dismissal. Pls. Opp. at 2-3 7 n.1. That is not true. Simmons already addressed several of the federal cases cited by Plaintiffs and explained that the cases allowed claims to survive dismissal either without addressing the NACHA rules or the account agreements or because of uncertainty about the applicable terms of the agreements. MTD Br. at 10 (addressing *Coleman*, *Noe*, and *Morris*). Plaintiffs offer no response. Their reliance on *Young v. The Wash. Trust Co.*, No. 1:10-cv-524-WES-PAS (D.R.I. June 2, 2020) (Pls. Opp. Ex. 15), is similarly misplaced—*Young* is a text order that does not discuss the claims at issue, does not discuss the relevant terms of the account agreement, or provide any reasoning for the court's decision.

The only other federal case cited by Plaintiffs is *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635 (S.D.N.Y. 2020). The account agreement in *Perks* defined "Item" as "[a]n … ACH

transaction … and any *other* instruction or order for … payment, transfer, deposit or withdrawal of funds." *Id.* at 640.  The court found that "and any other" was ambiguous because it was not clear whether a resubmitted entry constituted a separate "Item" or was part of the same "ACH transaction … and any other instruction or order." *Id.* at 640-41.  The parties' account agreement here contains no such ambiguity.  To the contrary, the agreement makes clear that Simmons may charge an NSF fee each time it handles a "withdrawal request" and makes a "choice" to "return [the] item without paying it."  Am. Compl. Ex. A at 5; MTD Ex. 2 at 1.

In sum, as shown in the chart below, the terms of the parties' account agreement authorizing NSF fees where a merchant resubmits a previously-rejected payment request line up with *Lambert* and *Page*, which properly dismissed claims based on Plaintiffs' resubmission theory.

| Federal Case | Relevant Language | Disposition |
|---|---|---|
| *Wilkins v. Simmons Bank* (this case) | Overdraft service applies to "withdrawal requests that overdraw your account," and an NSF fee may be assessed when Simmons makes the "choice" to "return your item without paying it." (Am. Compl. Ex. A at 5; MTD Ex. 2 at 1.) | TBD |
| *Lambert*, 2019 WL 3843064, at *3 | A fee "may be assessed … for each returned debit item." | Dismissed. |
| *Page*, 2020 WL 5076690, at *4 | "[I]f the amount of the item presented for payment exceeds the total available overdraft sources, the item will be returned as non-sufficient funds (NSF) and you will be charged applicable fees." | Dismissed. |

| *Coleman v. Alaska USA Fed. Credit Union*, 2020 WL 1866261, at *3-4 (D. Alaska Jan. 9, 2020) | "If available funds are not in the account when a debit is presented for payment, and Overdraft Protection or Courtesy Pay are not available, the item will be returned unpaid.  A fee will be assessed for each item." | Not dismissed. Declining to consider relevant NACHA rules in interpreting agreement because neither party provided a copy to the Court. |
|---|---|---|
| *Noe v. City Nat'l Bank of West Virginia*, 2020 WL 836871, at *5 (S.D.W.V. Feb. 19, 2020) | N/A – The parties disputed which agreement applied. | Not dismissed. |
| *Morris v. Bank of America, N.A.*, 2019 WL 1274928, at *4-5 (W.D.N.C. Jan. 8, 2019), *report and recommendation adopted in part*, 2019 WL 1421166 (W.D.N.C. Mar. 29, 2019) | N/A – The court did not identify or discuss the relevant agreement language or NACHA rules. | Not dismissed. |
| *Young v. The Wash. Trust Co.*, No. 1:10-cv-524-WES-PAS (D.R.I. June 2, 2020) | N/A – The court did not identify or discuss the relevant agreement language or NACHA rules. | Not dismissed. |
| *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 640 (S.D.N.Y. 2020) | Defining "Item" as "[a]n … ACH transaction … and any other instruction or order for … payment, transfer, deposit or withdrawal of funds." | Not dismissed.  Finding "and any other" language (not present in Simmons's account agreement) ambiguous. |

Plaintiffs' unpublished state trial court orders also should carry no weight here.  Motion to dismiss standards vary, as Plaintiffs' own authority acknowledges in disregarding other state court orders.  Pls. Opp. Ex. 5 at ECF p. 8 (*Ingram v. Teachers Credit Union*, No. 49D01-1908-PL-035431 (Marion Cty. Ind. Super. Ct. Feb. 18, 2020)).  Moreover, Plaintiffs' unpublished state trial court orders are either one-page rulings with no explanation or, where they do provide some detail, they make clear that the courts were addressing different contract language.  As Plaintiffs' own authority acknowledges, dismissal is appropriate if a defendant can "identify language in its

contract with Plaintiff that unambiguously provides that a separate or additional [NSF] fee could be imposed" where a merchant resubmits a previously-rejected withdrawal request.  Pls. Opp. Ex. 4 at 6 (*Perri v. Notre Dame Fed. Credit Union*, No. 71C01-1909-PL-000332 (St. Joseph Cty. Ind. Cir. Ct. Mar. 2, 2020)).  Simmons has done so here.

     **5.**     **Plaintiffs' Attempt To Use Extrinsic Evidence Should Be Rejected.**

Finally, Plaintiffs attempt to go beyond the four corners of the parties' account agreement by citing extrinsic evidence of how other banks assess or disclose NSF fees.  Pls. Opp. at 14-15. This is improper.  As *Page* explained in rejecting these same arguments, "the Court cannot consider extrinsic evidence if the agreement's language is unambiguous, as is the case here."  2020 WL 5076670, at *4; *see Patton Hosp. Mgmt., LLC v. Bella Vista Vill. Coopershares Owners Ass'n, Inc.*, 2016 Ark. App. 281, 493 S.W.3d 798, 803 (2016) ("Outside evidence regarding intent is pertinent only when interpreting an ambiguous contract.").  In any event, the fact that some other bank used other agreement language that Plaintiffs think is clearer is no evidence of what the parties to the Simmons account agreement intended.

*     *     *

In sum, like the account agreements at issue in *Lambert* and *Page*, the parties' account agreement here unambiguously authorizes NSF fees where a merchant resubmits a previously-rejected withdrawal request.  The Court should reject Plaintiffs' invitation to strain to create an ambiguity in the account agreement where there is none.

     **B.**     **Ms. Wilkins And Mr. Watson Cannot Allege That They Did What Their Contracts Required.**

Even if Plaintiffs had otherwise stated a breach of contract claim (and they have not), Ms. Wilkins and Mr. Watson do not and cannot allege that *they* did what the contract required.  To the contrary, Ms. Wilkins and Mr. Watson each overdrew their account by more than $500 and never

9

repaid Simmons.  As Simmons's opening brief (at 10-11) established, Ms. Wilkins and Mr. Watson therefore fail to state a breach of contract claim against Simmons.

Plaintiffs accuse Simmons of "attempt[ing] to create new criteria for a breach of contract claim."  Pls. Opp. at 20.  But Plaintiffs ignore that the requirement to allege (and later prove) that *they* "did what the contract required" is straight out of Ark. Model Jury Instr.—Civil 2401, which defines the elements of a breach of contract claim.  *See* MTD Br. at 10-11 (collecting federal cases applying the model instruction).  The Arkansas Supreme Court has "created a presumption that the model instruction is a correct statement of the law.  As such, any party who wishes to challenge the accuracy of a model instruction … must rebut the presumption of correctness." *Thomas v. State*, 370 Ark. 70, 84, 257 S.W.3d 92, 103 (2007).  Plaintiffs have not rebutted the presumption of correctness.  To the contrary, Plaintiffs concede that Simmons's "obligation to perform may be discharged if plaintiff's breach is material and sufficiently serious."  Pls. Opp. at 20 (quoting *Mobil Expl. & Producing N. Am., Inc. v. Graham Royalty Ltd.*, 910 F.2d 504, 507 (8th Cir. 1990)).  Overdrawing a checking account by more than $500 and walking away is indisputably material and sufficiently serious—Ms. Wilkins and Mr. Watson do not argue otherwise.

Plaintiffs next argue that Ms. Wilkins's and Mr. Watson's material breach only bars their claims if it occurred "first."  Pls. Opp. at 20.  But their breach did occur first.  As Plaintiffs concede, their account agreements required them to repay overdrafts "immediately."  MTD Br. at 2.  Ms. Wilkins and Mr. Watson did not do so.  Ms. Wilkins and Mr. Watson overdrew their accounts, and instead of repaying their overdrafts immediately, they ***continued*** to overdraw their accounts deeper and deeper, eventually reaching their $500 negative balance limit.  At that point, Simmons began to reject withdrawal requests (leading to the NSF fees challenged by Plaintiffs here), ultimately closing and charging off their accounts at a significant loss.  Ms. Wilkins and Mr. Watson therefore

breached the parties' account agreement long before Simmons imposed the challenged NSF fees.

For example, as Simmons's opening brief explained (at 4-5), Ms. Wilkins overdrew her account on October 23, 2017 and ended the November 17, 2017 statement period with a negative balance of $437.99.   Ms. Wilkins did not immediately repay the overdrafts as her account agreement required.   Instead, on December 6 and 18, 2017, Liberty National twice attempted to withdraw another $72.93—the transactions at issue here.   By the time Simmons assessed an insufficient funds fee on the December 18, 2017 withdrawal request—the only fee challenged by Ms. Wilkins in this case—Ms. Wilkins's account had already been in the negative with no repayments for nearly two months.[2]

Finally, Plaintiffs spend two pages arguing that they can assert a breach of contract claim even if they never paid the challenged NSF fees.   Opp. at 21-22.   Simmons never claimed otherwise.   Simmons does not seek to dismiss Ms. Wilkins's and Mr. Watson's breach of contract claims for failure to pay *the challenged NSF fees*.[3]   Simmons moved to dismiss their breach of contract claims because they overdrew their accounts and failed to repay *the unchallenged merchant charges*.   MTD Br. at 11.   Ms. Wilkins and Mr. Watson certainly could have repaid Simmons for their merchant charges while continuing to contest the challenged NSF fees.   Instead, Ms. Wilkins and Mr. Watson walked away owing Simmons far more money for funds advanced to them by Simmons than the few NSF fees at issue here.

---

[2] In a footnote, Plaintiffs accuse Simmons of improperly going beyond the four corners of the complaint (Pls. Opp. at 21 n.11), but Plaintiffs ignore the authority cited in Simmons's opening brief explicitly allowing bank statements to be considered at the motion to dismiss stage where, as here, the statements are central to plaintiffs' claims and undisputed.   MTD Br. at 4 n.3 (citing *Cobb v. PayLease LLC*, 34 F. Supp. 3d 976, 979 n.2 (D. Minn. 2014), *Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 581 & n.3 (E.D. Pa. 2004)).

[3] As explained further in Part II.B below, Simmons does seek to dismiss Ms. Wilkins's *unjust enrichment claim* because she did not pay the challenged NSF fee.   Receiving something of value from the plaintiff is an element of an unjust enrichment claim.

**II.      Plaintiffs Fail To State A Claim For Unjust Enrichment.**

      **A.      Plaintiffs Do Not Allege That Simmons Received Something Of Value To Which It Was Not Entitled.**

Simmons's opening brief (at 11-12) established that Plaintiffs' unjust enrichment claim fails for the same reasons as their breach of contract claim.  Because the challenged NSF fees were authorized by the parties' account agreement, Plaintiffs cannot establish that Simmons collected fees to which it was not entitled or acted unjustly or inequitably.  Plaintiffs concede that their unjust enrichment claim turns on Simmons's contractual authority to assess the challenged fees.  Pls. Opp. at 23 ("Plaintiffs here are not seeking to 'recover anything more or different from what the contract provides for' through [their] claim for unjust enrichment.").  Plaintiffs' failure to state a breach of contract claim therefore defeats their unjust enrichment claim as well.

      **B.      Ms. Wilkins and Mr. Watson Cannot State An Unjust Enrichment Claim.**

Simmons's opening brief (at 12-13) identified two more fatal flaws that require dismissal of Ms. Wilkins's and Mr. Watson's unjust enrichment claims.

First, in order to state an unjust enrichment claim, Ms. Wilkins must allege that she provided Simmons "something of value" such as "money or its equivalent."  *Campbell v. Asbury Automotive, Inc.*, 2011 Ark. 157, 21, 381 S.W.3d 21, 37 (2011).  Ms. Wilkins cannot do so because she acknowledges that she never paid the single NSF fee she challenges.  Am. Compl. ¶ 12.  Plaintiffs offer no response.  Plaintiffs argue that fee payment is not required to pursue a breach of contract claim (Pls. Opp. at 21-22), but Plaintiffs do not dispute that Ms. Wilkins's unjust enrichment claim fails because she did not provide anything of value for Simmons to return.

Second, neither Ms. Wilkins nor Mr. Watson may pursue unjust enrichment claims because "'equity will not intervene on behalf of a party whose conduct in connection with the same matter has been unconscientious or unjust.'"  *Day v. Case Credit Corp.*, 2007 WL 604636, at *3 (E.D.

Ark. Feb. 22, 2007) (*Wesley v. Estate of Bosley*, 81 Ark. App. 468, 478, 105 S.W.3d 389, 396 (2003)).   Having each taken hundreds of dollars from Simmons, Ms. Wilkins and Mr. Watson cannot invoke equity to recover a few NSF fees.   Citing no authority, Plaintiffs contend that Ms. Wilkins's and Mr. Watson's wrongdoing does not "undo or negate" Simmons's alleged wrongdoing.   Pls. Opp. at 25.   Arkansas law says otherwise.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated:  September 14, 2020                    Respectfully submitted,

E. B. Chiles IV (96179)
R. Ryan Younger (2008209)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
(501) 379-1700 Telephone
(501) 379-1701 Facsimile
ryounger@qgtlaw.com

Debra Bogo-Ernst (*pro hac vice pending*)
Matthew C. Sostrin (*pro hac vice forthcoming*)
Lucy Lee Holifield
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600 Telephone
(312) 701-7711 Facsimile
dernst@mayerbrown.com

*Attorneys for Simmons Bank*

13