IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

SHUNDA WILKINS; DIANN GRAHAM; and
DAVID WATSON, all on behalf of themselves
and all others similarly situated                                    PLAINTIFFS

v.                               No. 3:20-cv-116-DPM

SIMMONS BANK                                                          DEFENDANT

## ORDER

Wilkins and Watson are former Simmons Bank checking account customers. Graham still banks with Simmons. The Court will call them the customers. All three agreed to the terms and conditions in Simmons's deposit agreement, did not decline Simmons's overdraft protection service, and received a copy of Simmons's schedule of fees and charges. The overdraft service allows customers to overdraw their accounts up to $500. Each time a customer makes a payment that exceeds the account's balance, Simmons can choose to either pay the item (and assess a $35 paid-item overdraft fee) or return the item (and assess a $35 returned-item overdraft fee). In the deposit agreement, the customers agreed "to be bound by automated clearing house association rules." *Doc. 22-2 at 4*. Those ACH rules, in turn, allow an item to be resubmitted twice after it has been returned for insufficient funds. *Doc. 22-6 at 3*. Simmons charges one of the fees for each

resubmission. Was it a breach of the parties' contract, or was Simmons unjustly enriched, when the Bank charged a fee on resubmitted items? Simmons argues no, and moves to dismiss for failure to state a claim.

This case is a sequel to *Tannehill v. Simmons Bank*, No. 3:19-cv-140-DPM. Tannehill died, substitution was impracticable, and the Court dismissed the case without prejudice. The Court regrets its delay in deciding Simmons's motion to dismiss this new case.

Wilkins disputes one $35 returned-item fee from December 2017; Watson disputes two returned-item fees from January and February 2016, totaling $60 based on the then-$30 fee; and Graham disputes two returned-item fees from August 2019, totaling $70. Simmons closed Wilkins's account in December 2017 with a negative balance of $545.21. Simmons sent Wilkins's debt, including the disputed fee, to a collection agency. Simmons says it closed Watson's account with a negative balance of $735.59 sometime in 2016. It's unclear whether Simmons sent Watson's debt for collection. Both Wilkins and Watson agree that they owe Simmons for going into the red.

Accepting the allegations in the amended complaint as true and making all reasonable inferences in the customers' favor, *Jones v. Douglas County Sheriff's Department*, 915 F.3d 498, 499 (8th Cir. 2019), Wilkins, Watson, and Graham have stated a claim for breach of contract. They must allege an enforceable agreement with Simmons, a

-2-

violation of it by the Bank, and resulting damage. *Perry v. Baptist Health*, 358 Ark. 238, 244, 189 S.W.3d 54, 58 (2004).

First, the parties agree that an enforceable contract exists. Several documents comprise the contract: the deposit agreement, the overdraft privilege account disclosure, the schedule of fees and charges, and the incorporated ACH rules. All these documents must be construed together. *Nunnenman v. Estate of Grubbs*, 2010 Ark. App. 75, 2, 374 S.W.3d 75, 78 (2010).

Second, the customers allege a plausible breach. They say that Simmons's practice violates the fee schedule, which provides that overdraft fees are assessed on a per-item basis. They were charged multiple fees, they continue, on the same item when it was re-submitted. The Bank responds that the incorporated ACH rules contemplate reinitiation of what those rules call an entry, for a total of three tries, and that each is an item, which might generate a fee, for purposes of the parties' contract. The Court concludes that there is ambiguity in all this, and lurking in the Bank's "per item" fee in particular. Is each try an item? Or is the entire transaction one item even though multiple tries are involved? As the parties note, the cases divide. *Compare, e.g., Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 639–41 (S.D.N.Y. 2020), *with, e.g., Lambert v. Navy Federal Credit Union*, 2019 WL 3843064, at *3–5 (E.D. Va. 14 August 2019). The Court appreciates Simmons's efforts to boil down the complicated materials. The Court

concludes, however, that this multi-part contract is susceptible at the case's threshold to the equally reasonable interpretations urged. *E.g., Magic Touch Corp. v. Hicks*, 99 Ark. App. 334, 339, 260 S.W.3d 322, 326 (2007).

Finally, all three customers say they were damaged by Simmons's assessment of the challenged returned-item fees. Graham paid a challenged fee. Wilkins and Watson had their accounts closed and owe the fees.

Pointing to Wilkins's and Watson's overdrawn and closed accounts, Simmons says these customers owe more than the fees. Apparently so. The monthly statements submitted by the Bank are embraced by the amended complaint, and the Court will consider them. *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018). But, Wilkins's and Watson's failure to bring their accounts into the black before the charges were resubmitted does not necessarily undermine their breach claims as a matter of law. The deep issue is who committed the first material breach. Simmons is correct that the deposit agreement requires a customer to fix any overdraft-based account shortage "immediately." Doc. 22-2 at 1. The overdraft privilege, though, allows customers to go $500 in the hole. Customers must respond to the circumstances. "You must also bring your account to a positive balance at least once every thirty (30) days to maintain your [o]verdraft [p]rivilege in good standing." Doc. 22-1 at 1. The overdraft privilege

disclosure incorporates the deposit agreement, directing that the two documents "shall be construed so as to minimize conflicts between them." *Ibid.* The sum of all this is more ambiguity. Here again, the customers' reading—that the Bank made the first breach by imposing the challenged fees when charges were resubmitted—fits comfortably within the parties' words. The animating premise of the overdraft privilege is to provide customers "a pre-approved $500 negative available funds balance." *Ibid.* The thirty-day provision can be fairly interpreted as a cure period. *Magic Touch Corp.*, 99 Ark. App. at 339, 260 S.W.3d at 326. The Bank's reading—we'll cover overdrafts, subject to fees, but you must cure as soon as possible, and you have only $500 of rope—is reasonable, too. So, the first-material-breach issue goes forward for resolution in due course when the Court has more facts and can determine whether resolution of this ambiguity turns on any disputed extrinsic evidence. *Smith v. Prudential Property & Casualty Insurance Co.*, 340 Ark. 335, 341, 10 S.W.3d 846, 850 (2000).

Wilkins, Watson, and Graham have also stated an alternative claim for unjust enrichment. It's still too early to tell whether the contract addresses every issue in this case. *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 605–09 (8th Cir. 1999). Any echoing equitable claim is subject, of course, to Simmons's countervailing argument that there's no equity in Wilkins's and Watson's position because of their unpaid debts.

\* \* \*

Simmons's motion to dismiss, *Doc.* 22, is denied.

So Ordered.

*[signed]* WPMarshall Jr.
D.P. Marshall Jr.
United States District Judge

9 December 2020