# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

| | |
|---|---|
| SHUNDA WILKINS and DAVID WATSON ) <br> on behalf of themselves and all others ) <br> similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> SIMMONS BANK, ) <br> ) <br> Defendant. ) | Case No. 3:20-cv-00116-DPM <br><br> Hon. D.P. Marshall Jr. |

## BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF ARTHUR OLSEN

E. B. Chiles IV (96179)
R. Ryan Younger (2008209)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
(501) 379-1700 Telephone
(501) 379-1701 Facsimile
ryounger@qgtlaw.com

Debra Bogo-Ernst (IL No. 6271962) (*pro hac vice*)
Joshua Yount (IL No. 6256900) (*pro hac vice*)
Lucy Holifield (AR No. 2016165; IL No. 6329822)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600 Telephone
(312) 701-7711 Facsimile
dernst@mayerbrown.com
jyount@mayerbrown.com
lholifield@mayerbrown.com

*Attorneys for Simmons Bank*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1
ARGUMENT ........................................................................................................................ 4
I.   Olson Has Adopted An Unreliable Methodology .............................................. 5
II.  Olsen's Analysis Is Unhelpful ............................................................................ 7
III. Olsen Cannot Save His Opinions With Promises Of Future Analyses ............ 10
CONCLUSION ................................................................................................................... 12

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007) ...................................................................................... 11

*Blades v. Monsanto Co.*,
    400 F.3d 562 (8th Cir. 2005) ............................................................................................ 10

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ............................................................................................................ 3

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) .................................................................................. 8, 11

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) .......................................................................................... 10

*Dancy v. Hyster Co.*,
    127 F.3d 649 (8th Cir. 1997) .............................................................................................. 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ................................................................................................. passim

*Dorchester Mins., LP v. Chesapeake Expl., LLC*,
    No. 4:12-cv-00461, 2017 WL 743743 (E.D. Ark. Feb. 24, 2017) .................................... 12

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ............................................................................................................ 9

*J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*,
    243 F.3d 441 (8th Cir. 2001) .............................................................................................. 5

*Lauzon v. Senco Prods., Inc.*,
    270 F.3d 681 (8th Cir. 2001) .............................................................................................. 4

*Lewis v. Casey*,
    518 U.S. 343 (1996) ............................................................................................................ 3

*Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*,
    408 F.3d 410 (8th Cir. 2005) ............................................................................................ 10

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ............................................................................................. 10

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
    No. 4:08-cv-0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) .................................. 10

# TABLE OF AUTHORITIES
## (continued)

Pages(s)

*Peitzmeier v. Hennessy Indus., Inc.*,
   97 F.3d 293 (8th Cir. 1996) ..................................................................................8

*Pestel v. Vermeer Mfg. Co.*,
   64 F.3d 382 (8th Cir. 1995) ..................................................................................8

*Petrone v. Werner Enters., Inc.*,
   940 F.3d 425 (8th Cir. 2019) ..............................................................................12

*Polski v. Quigley Corp.*,
   538 F.3d 836 (8th Cir. 2008) ................................................................................7

*Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*,
   49 F. Supp. 3d 385 (S.D.N.Y. 2014), *aff'd*, 638 F. App'x 43 (2d Cir. 2016) ............6

*Schipp v. Gen. Motors Corp.*,
   443 F. Supp. 2d 1023 (E.D. Ark. 2006) .................................................................7

*Taylor v. Mission Fed. Credit Union*,
   Case No. 37-2012-00092073-CU-BT-CTL, Minute Order
   (San Diego Cty. Sup. Ct., Aug. 29, 2014) (Bogo Ex. 27) .......................................10

*Ward v. Apple Inc.*,
   784 F. App'x 539 (9th Cir. 2019) ........................................................................10

*Washam v. BNSF Ry. Co.*,
   No. 3:19-CV-00231, 2020 WL 5880133 (E.D. Ark. Oct. 2, 2020) ..........................5

*In re Wholesale Grocery Prods. Antitrust Litig.*,
   946 F.3d 995 (8th Cir. 2019) ................................................................................9

*Williams v. TESCO Servs., Inc.*,
   719 F.3d 968 (8th Cir. 2013) ..............................................................................12

*Wright v. Willamette Indus., Inc.*,
   91 F.3d 1105 (8th Cir. 1996) ................................................................................5

*Young v. Mentor Worldwide LLC*,
   312 F. Supp. 3d 765 (E.D. Ark. 2018) ...................................................................7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   644 F.3d 604 (8th Cir. 2011) ................................................................................4

# TABLE OF AUTHORITIES
## (continued)

**Pages(s)**

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ................................................................................................1, 4, 5, 7, 12

## INTRODUCTION

Plaintiffs pin their hopes for class certification and a class-wide judgment on an opinion from purported data and database expert Arthur Olsen that putative class members and their alleged damages can be identified and calculated in a programmatic way for the entire proposed class without individual analysis. But that opinion is inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because Olsen's methodology is unreliable and his analysis is unhelpful.

Plaintiffs contend that Simmons Bank ("Simmons") wrongfully assessed more than one fee associated with certain transactions that exceeded the funds available in a customer's account. *See* Doc. 15 ¶¶ 1-3 (Am. Compl.). In particular, Plaintiffs take issue with Simmons's practice of charging overdraft or insufficient-funds fees when Simmons paid or returned a merchant's "resubmitted" payment order after Simmons charged an insufficient-funds fee in returning a prior order by the same merchant related to the same underlying customer-merchant transaction. *See id.* ¶¶ 17-18, 59-71. According to Plaintiffs, this practice violated a supposed promise in Simmons's customer agreement to assess such fees "per item" and unjustly enriched Simmons (*see id.* ¶¶ 59-71, 99-117), even though industry rules incorporated in the agreement treat each merchant payment order (called an "ACH Entry") as an "item," even when "resubmitted." *See* Def.'s MSJ Br. at 16-20. Plaintiffs—who indisputably violated the customer agreement, did not pay most of the $185 in fees they challenge, and each owes Simmons hundreds of dollars beyond the challenged fees (*see id.* at 8-14)—want to litigate their breach-of-contract and unjust-enrichment claims on behalf of a class of "[a]ll persons who, within the applicable statute of limitations period, were charged

multiple fees for the same debit item in a Simmons checking account." Doc. 15 ¶ 88 (Am. Compl.).[1]

Plaintiffs proffer the opinions of Mr. Olsen in an effort to show that they can establish, without individual inquiries, which Simmons customers incurred the challenged fees and in what amounts. In his July 12, 2021 expert report, Olsen opines that he "will be able to ascertain the class members and calculate damages for each of the class members under Plaintiffs' theory of liability." Bogo Ex. 25 ¶ 2 (Olsen Rep.). He further asserts that "[t]his process would be performed programmatically by use of an algorithm that will perform the calculations in an automated way on the entire customer data set, and will not require an individual analysis." *Id.* ¶ 24. His report, however, never describes the promised algorithm or provides any results (even on a sample basis) of the promised calculations, despite Olsen's access to sample customer data timely produced by Simmons. Nor does his report specify how Olsen would account for fee reversals or charged-off negative balances, which he recognizes "would affect the damages relating to [the challenged] fees." *Id.* ¶ 27. Olsen instead offers assurances that he can figure it out later. *Id.* ¶¶ 28-29.

Undoubtedly recognizing that such threadbare opinions could never be admissible, Mr. Olsen tried to belatedly supplement his opinions during his November 19, 2021 deposition. Specifically, he described a supposed "algorithm" provided to him by Plaintiffs' counsel for identifying challenged fees. Bogo Ex. 26 at 53-54, 142-44 (Olsen Dep.). He testified that, in applying the "algorithm," he would electronically search Simmons transactional data "to find [ACH] transactions in the same amount that occurred within ten business days of each other that

---

[1] Plaintiffs' claims are meritless for the many reasons described in Simmons's summary judgment papers. And this case is unsuited for class litigation for reasons that Simmons will explain in responding to Plaintiffs' anticipated class certification motion. Citations herein to "Bogo Ex. __" refer to the Exhibits to the Declaration of Debra Bogo-Ernst filed herewith.

had the … same merchant name" and that are associated with more than one overdraft or insufficient-funds fee. *Id.* at 53-54, 79.[2] Olsen also said that he used the "algorithm" to identify the fees challenged by Plaintiffs. *Id.* at 54. But he had not done the same for the rest of the proposed class, even on a sample basis, using the Simmons customer data available to him. *Id.* at 99-100, 104. Nor had he even tested the "algorithm." *Id.* at 104-05. Olsen also did not offer any further details on how he would address fee reversals and charged-off negative balances, even with respect to the Plaintiffs. *Id.* at 54, 112-13. And Olsen still has not performed any calculation of damages. *Id.* at 86, 122. According to Olsen, all of those matters will be addressed in some later "full expert report." *Id.* at 15-16, 116-18.[3]

Mr. Olsen's opinions, even as belatedly supplemented, fall far short of satisfying the admissibility requirements for expert testimony. His methodology for identifying challenged fees

---

[2]  Olsen also mentioned the possible presence of a "RETRY PYMT" notation in certain ACH Entries as a factor to consider (Bogo Ex. 26 at 104 (Olsen Dep.)), but it is unclear what work that factor does in the "algorithm," given that (by Olsen's own admission) merchants often have not used such notations for a variety of reasons. *Id.* at 96-97; Bogo Ex. 1 ¶¶ 48-50 (Nesbitt Rep.). Indeed, five of the six fees challenged by Plaintiffs are associated with ACH Entries that lack any "RETRY PYMT" notation. Bogo Ex. 1 ¶ 51 (Nesbitt Rep.). As a result, "RETRY PYMT" notations do not appear to play any real role in the "algorithm" Olsen wants to use, and, even if they did, they would only add to the unreliability of Olsen's methodology.

Olsen further alluded to an unspecified method for identifying challenged fees associated with checks, rather than ACH Entries, centered on locating multiple fees linked to the same check number. Bogo Ex. 26 at 79, 101-02 (Olsen Dep.). But neither Plaintiff challenges a check-associated fee (Bogo Ex. 2 ¶ 24 (Kwon Rep.); Bogo Ex. 26 at 88 (Olsen Dep.)), which makes any opinion or analysis regarding the identification or calculation of such fees irrelevant and inadmissible. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (suit could not obtain judgment on conduct that allegedly affected class but not named plaintiff); *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). In any event, as Simmons's data expert has explained, check numbers are absent from the relevant data sources prior to November 1, 2018, making Olsen's proposed method unworkable. Bogo Ex. 2 ¶ 24 (Kwon Rep.).

[3]  This approach is consistent with Olsen's general lack of attention to this case. He did not realize that he had already submitted a "report" in this case. Bogo Ex. 26 at 15 (Olsen Dep.). And he acknowledged copying most of his report from submissions in other cases. *Id.* at 48-49, 145.

3

is unreliable because the "algorithm" he plans to use is completely arbitrary and necessarily inaccurate. His opinions are unhelpful because he admittedly does not offer a full analysis or account for crucial factors that admittedly affect damages determinations. And Olson cannot salvage his opinions with promises of additional analyses in some future report; indeed, the one and only deadline for disclosing all expert opinions passed long ago. For all of these reasons, the Court should exclude Olson's opinions as inadmissible under Rule 702 and *Daubert*.

## ARGUMENT

As the parties offering Mr. Olsen's testimony, Plaintiffs bear the burden of showing that it satisfies the standards set forth in Rule 702 and *Daubert*. *See Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). To do so, they must establish "three prerequisites." *Id.* First, the testimony must "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. In other words, the testimony must be "useful," *Lauzon*, 270 F.3d at 686, and "fit" the issue being litigated. *Daubert*, 509 U.S. at 591. Second, the witness must be qualified. *Lauzon*, 270 F.3d at 686. Third, the testimony must be reliable—that is, the testimony has to be based on sufficient facts or data and be the product of reliable principles and methods reliably applied. Fed. R. Evid. 702(b)-(d); *Lauzon*, 270 F.3d at 686. Here, Olsen's opinions should be excluded (for class certification and merits purposes) because they are neither reliable nor helpful.[4]

---

[4] When a motion to exclude expert testimony is limited to the use of that testimony at the class-certification stage (as when class-certification and merits proceedings are bifurcated), a district court must "conduct[] a focused *Daubert* analysis which scrutinize[s] the reliability of … expert testimony in light of the criteria for class certification and the current state of the evidence." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 614 (8th Cir. 2011). Simmons's broader challenge to the use of Mr. Olsen's testimony here, asserted after the close of all discovery, is subject to the usual, full *Daubert* analysis. *See id.* at 613 ("Because summary judgment ends litigation without a trial, the court must review the evidence in light of what would be admissible before either the court or jury.").

I.      **Olson Has Adopted An Unreliable Methodology**.

Mr. Olson's methodology for identifying the fees that Plaintiffs challenge on behalf of the purported class is thoroughly unreliable. Olsen's plan to search Simmons transactional data for ACH Entries in the same amount with the same merchant name that occurred within ten business days of each other and are associated with more than one overdraft or insufficient-funds fee is arbitrary and inaccurate. It is not remotely "the product of reliable principles and methods … reliably applied … to the facts of the case." Fed. R. Evid. 702(c)-(d).

To start, the ten-business-day look-back period is entirely arbitrary. It has no basis in the evidentiary record or banking-industry standards or customs. To the contrary, the Nacha Rules that govern the submission and processing of ACH Entries allow merchants 180 days to "resubmit" an Entry returned for insufficient funds. Bogo Ex. 1 ¶ 40 (Nesbitt Rep.); Bogo Ex. 29 at OR30 (Nacha Rules § 2.12.4). Nor does the invented look-back period come from some kind of expert judgment by Olsen, who has disclaimed any expertise in banking, overdraft fees, or regulatory matters. Bogo Ex. 26 at 9-10, 77, 99 (Olsen Dep.). Indeed, Olsen testified that the look-back period was "an instruction from [P]laintiffs' counsel" and that he does not "know why that ten-day period was chosen." *Id.* at 142-43. In other words, the centerpiece of the "algorithm" at the heart of Olsen's opinions in this case is a time period *plucked out of thin air* by *Plaintiffs' counsel*. That is the antithesis of *expert* testimony. Olsen is applying neither expertise nor reliable principles or methods.

Courts routinely exclude similarly arbitrary and expertise-free opinions. *See, e.g.*, *J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (expert opinion that "was mere speculation and pure conjecture" was properly excluded); *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1108 (8th Cir. 1996) (trial court should have excluded expert's testimony "because it was not based on scientific knowledge"); *Washam v. BNSF Ry. Co.*, No. 3:19-CV-00231, 2020

5

WL 5880133, at *11 (E.D. Ark. Oct. 2, 2020) (excluding expert opinion because "the record is not clear as to whether and how [the expert] employed any specialized knowledge in his [opinion]"); *Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*, 49 F. Supp. 3d 385, 403 (S.D.N.Y. 2014) (excluding an expert opinion because "there is no evidence to support that [opinion's] unstated assumption and no logical reason to suspect it would be true"), *aff'd*, 638 F. App'x 43 (2d Cir. 2016).

Mr. Olsen's methodology is unreliable in another way, too. He has done nothing to test the methodology against the Simmons customer data for the proposed class, even on a sample basis. He thus has no idea what the error rate for his methodology might be. And, for at least three reasons, that error rate is likely to be high.

First, the "algorithm" chosen for Olsen will obviously miss challenged fees associated with any ACH Entry submitted more than ten business days after an allegedly "matching" ACH Entry previously returned by Simmons. Again, merchants have 180 days to "resubmit" an ACH Entry. The "algorithm" thus is underinclusive.

Second, the "algorithm" is also overinclusive. There are many reasons beyond "resubmissions" that Simmons might receive more than one ACH Entry from the same merchant in the same amount in a 10-business-day-period. Bogo Ex. 2 ¶ 22 (Kwon Rep.). For example, some people have weekly recurring payments for certain goods and services. Some have transit or other accounts that reload from their Simmons account in the same amount when they reach a certain threshold. And some have regular, identical purchases, like a favorite coffee order or lunch delivery. The possibilities are myriad. Yet Olsen would erroneously deem fees associated with all of these transactions as challenged fees associated with "resubmitted" ACH Entries when they most assuredly are not.

Third, there is no programmatic way to reliably associate fees to "resubmitted" transactions throughout the proposed class period—an absolutely crucial part of any effort to identify challenged fees. The Simmons data source for overdraft and insufficient-funds fees assessed prior to November 1, 2018 does not tie the fees to particular transactions. Bogo Ex. 2 ¶¶ 25-31 (Kwon Rep.). Only individual, class-member-specific analyses of account statements and NSF notices could accomplish that task. Olsen's apparent plan to attempt the task programmatically, therefore, will be riddled with errors.

Courts do not hesitate to exclude expert testimony based on similarly untested and error-prone methodologies. *See, e.g.*, *Polski v. Quigley Corp.*, 538 F.3d 836, 840 (8th Cir. 2008) (affirming exclusion of an expert opinion that "relied on an unproven and indeed untested premise"); *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997) (same where the opinion "could be, but had not been, tested"); *Young v. Mentor Worldwide LLC*, 312 F. Supp. 3d 765, 770-72 (E.D. Ark. 2018) (excluding expert opinion because there was "no way of projecting the potential rate of error"); *Schipp v. Gen. Motors Corp.*, 443 F. Supp. 2d 1023, 1029-31 (E.D. Ark. 2006) (where experts "adopted a hypothesis but failed to test it," their "opinions [were] unreliable"); *see also Daubert*, 509 U.S. at 593-94 (whether a methodology "(has been) tested" and its "known or potential rate of error" should be considered in assessing whether expert testimony is admissible).

In short, Mr. Olsen's unreliable methodology for identifying challenged fees makes his opinions inadmissible.

## II. Olsen's Analysis Is Unhelpful.

Mr. Olsen's unsupported and speculative opinions that he can programmatically identify class members and calculate their purported damages would not "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). Olsen has neither identified class members nor calculated their purported damages. And he does not even have a plan to address

important factors that he admits would affect damages. His analysis therefore is completely unhelpful.

To prevail on the putative class claims in this case, Plaintiffs must prove (among other things) which Simmons customers fall within the proposed class definition, which of the class members (if any) have an injury attributable to the challenged fee practices, and what damages each injured class member experienced. Mr. Olsen's opinions do not speak to any of those issues (or any other element of Plaintiffs' claims). Instead, Olsen essentially opines that he will *later* be able to figure out class membership, injury, and damages questions. Indeed, Olsen admits that he has not provided a "full analysis." Bogo Ex. 26 at 116-18 (Olsen Dep.). Olsen's opinions thus would be of no use to a judge or jury trying to actually determine class membership, injury, and damages for any putative class.

For that reason alone, Olsen's opinions should be excluded. *See, e.g.*, *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 297 (8th Cir. 1996) (upholding exclusion of expert design opinion based on "unfinished and untested" concepts); *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382, 384 (8th Cir. 1995) (same for opinion that "was not finished" and "was still evolving" and thus "would not aid the jury"); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552-53 (C.D. Cal. 2014) (excluding opinions of expert who "provide[d] no damages model at all" but instead merely offered "assurance that he can build a model to calculate damages").

Mr. Olsen's opinions also should be excluded as unhelpful because he has no reliable plan for dealing with challenged fees that Simmons reversed or refunded or that are incorporated in or offset by unpaid negative account balances. Olsen has admitted that those circumstances affect damages. Bogo Ex. 25 ¶ 27 (Olsen Rep.). Indeed, Plaintiffs' own experiences show exactly how such circumstances can leave putative class members without any cognizable or redressable injury.

*See* Def.'s MSJ Br. at 33-40. But all Olsen says on the subject is that he might later use one of several assumptions to account for reversals/refunds and charged-off balances. Bogo Ex. 25 ¶¶ 28-29 (Olsen Rep.). That will not do.

Olsen admits that "in the Simmons data there is not a way to conclusively relate a reversal to a specific NSF fee for purposes of reducing the damages," at least in a programmatic way. *Id.* ¶ 28. Olsen thus says that he might assume either that a refund/reversal applied to any challenged fee in the prior 30 days or that a refund/reversal applied to the last fee assessed (whether challenged or not). *Id.* But both of those assumptions will be wrong in many instances. A refund/reversal might occur after more than 30 days. Or a customer might incur multiple fees between the assessment and reversal of a challenged fee. And, of course, Olsen has not tested either method on the Simmons data to determine any kind of error rate.

Olsen says even less about how he might account for charged-off negative balances. He does not say what data he would examine. He does not say how (or even whether) he would determine if the unpaid balance incorporated challenged fees. And he does not say how he would handle partial payments on unpaid balances incorporating challenged fees. Olsen only says that he can "easily include" an offset for accounts that were closed with a negative balance. *Id.* ¶ 29. But that *ipse dixit* describes no methodology at all, much less a reliable one. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Lacking reliable methodologies for addressing known issues that prevent any determination of injury or damages, Olsen's opinions are unhelpful and should be excluded. *See, e.g.*, *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1002-03 (8th Cir. 2019)

(affirming exclusion of expert injury opinion that "fell short of incorporating all aspects of the relevant markets"); *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) ("An expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported"); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (ruling that "expert opinion should not have been admitted because it did not incorporate all aspects of the economic reality"). Indeed, at least one court has discredited Olsen's opinions on his ability to identify and calculate challenged overdraft fees where "there are significant gaps in available data" that could only be rectified through burdensome and costly review of backup records. *Taylor v. Mission Fed. Credit Union*, Case No. 37-2012-00092073-CU-BT-CTL, Minute Order at 2-3 (San Diego Cty. Sup. Ct., Aug. 29, 2014) (denying class certification) (Bogo Ex. 27).

### III. Olsen Cannot Save His Opinions With Promises Of Future Analyses.

Mr. Olsen's answer to all of the fatal gaps in his opinions is that he will address those gaps later in some kind of "full report" with a "full analysis." Bogo Ex. 26 at 15-16, 116-18 (Olsen Dep.). That blithe assurance does not save his opinions from exclusion, for two reasons.

First, courts routinely reject assurances that an expert can devise a model to calculate damages. *See, e.g.*, *Blades v. Monsanto Co.*, 400 F.3d 562, 575 (8th Cir. 2005) (denying class certification because plaintiffs and their expert failed to show that damages benchmark "could work to prove classwide injury with common evidence"); *Ward v. Apple Inc.*, 784 F. App'x 539, 540-41 (9th Cir. 2019) (holding that plaintiffs must demonstrate that they have a "workable method" to calculate damages and that it was "not enough" for plaintiffs' expert to "assert[] that he would be able to develop a model at some point in the future").[5] An expert must show that he

---

[5] *See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187-88 (3d Cir. 2001) ("[P]laintiffs' expert provided no model formula, but instead projected that he could devise a formula that would measure damages among the class …. We are not convinced."); *Ohio Pub.*

or she presently has a model that could work. Promises of future analyses are insufficient. For instance, a California federal court excluded an expert who "made no showing" that his methodologies were "capable of calculating damages in this action," leaving the court "with only [his] assurance that he can build a model to calculate damages," which made his declaration "so incomplete as to be inadmissible as irrelevant." *ConAgra Foods*, 302 F.R.D. at 552-53. The same reasoning applies here.

Second, the deadline for disclosing all expert opinions passed long ago. Plaintiffs had to produce the opinions of their experts by July 12, 2021 and any rebuttal opinions by October 27, 2021. Doc. 45 (Am. Scheduling Order); Doc. 66 (3d Am. Scheduling Order). Plaintiffs served Olsen's expert report on July 12 and decided to forgo any rebuttal report. Contrary to Olsen's apparent belief (*see* Bogo Ex. 26 at 15-16, 116-18 (Olsen Dep.)), there is no later deadline for a "full report" on the "merits." There is one set of deadlines for all opinions, whether they relate to class certification, the merits, or anything else. Doc. 66 (3d Am. Scheduling Order).

And now that discovery is closed and summary-judgment, class-certification, and *Daubert* motions are being filed (*id.*), it would be highly prejudicial for Olsen to come back in with new opinions identifying putative class members, calculating their purported damages, addressing fee reversals and negative account balances, or otherwise attempting to fix his defective opinions. Simmons would have to spend time and resources having its experts prepare additional responsive

---

*Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, No. 4:08-cv-0160, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) ("When a class plaintiff presents a damages model that is vague, indefinite, and unspecific, or simply asserts … that there are unspecified 'tools' available to measure damages, the model amounts to 'no damages model at all' …."); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 176-77 (C.D. Cal. 2007) ("'[I]t is simply not enough that Plaintiffs merely promise to develop in the future some unspecified workable damage formula. A concrete, workable formula must be described before certification is granted.'").

11

opinions, redeposing Olsen, and undertaking supplemental motion practice, all of which would burden the Court and disrupt the current schedule with its June 13, 2022 trial date.

For all of these reasons, Olsen should not be allowed to later submit the kind of "full report" he envisions. *See, e.g.*, *Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 433-36 (8th Cir. 2019) (district court abused discretion in allowing untimely new report that attempted to correct inadequacies of original report); *Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 976 (8th Cir. 2013) (affirming rejection of belated expert report); *Dorchester Mins., LP v. Chesapeake Expl., LLC*, No. 4:12-cv-00461, 2017 WL 743743, at *1 (E.D. Ark. Feb. 24, 2017) (striking untimely report). And his vague promise to do so should not be permitted to transform an unreliable and unhelpful report into anything other than precisely what it is.

In short, Olsen (and Plaintiffs) are stuck with Olsen's unreliable and unhelpful opinions, which fully warrant exclusion under Rule 702 and *Daubert*.

## CONCLUSION

For the reasons set forth above, Simmons respectfully requests that the Court exclude Arthur Olsen's expert opinions.


DATED: December 13, 2021                    Respectfully submitted,

/s/ *Debra Bogo-Ernst*

E. B. Chiles IV (96179)
R. Ryan Younger (2008209)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
(501) 379-1700 Telephone
(501) 379-1701 Facsimile
ryounger@qgtlaw.com

Debra Bogo-Ernst (IL No. 6271962) (*pro hac vice*)
Joshua Yount (IL No. 6256900) (*pro hac vice*)
Lucy Holifield (AR No. 2016165; IL No. 6329822)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600 Telephone
(312) 701-7711 Facsimile
dernst@mayerbrown.com
jyount@mayerbrown.com
lholifield@mayerbrown.com

*Attorneys for Simmons Bank*