**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

| | | |
|---|---|---|
| SHUNDA WILKINS and DAVID WATSON on behalf of themselves and all others similarly situated, | ) ) ) | Case No. 3:20-cv-00116-DPM |
| | ) | Hon. D.P. Marshall Jr. |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SIMMONS BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

E. B. Chiles IV (96179)
R. Ryan Younger (2008209)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
(501) 379-1700 Telephone
(501) 379-1701 Facsimile
ryounger@qgtlaw.com

Debra Bogo-Ernst (IL No. 6271962) (*pro hac vice*)
Joshua Yount (IL No. 6256900) (*pro hac vice*)
Lucy Holifield (AR No. 2016165; IL No. 6329822)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600 Telephone
(312) 701-7711 Facsimile
dernst@mayerbrown.com
jyount@mayerbrown.com
lholifield@mayerbrown.com

*Attorneys for Simmons Bank*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

    A.    Simmons Can Assess A Fee For Each Payment Request That Exceeds The Funds Available In A Customer's Account .................................... 3

    B.    Plaintiffs Challenge Simmons's Fee Practices On Behalf Of A Disparate Class ................................................................................ 5

    C.    Plaintiffs' Individual Claims Rest On Unique Factual Circumstances ................. 7

    D.    The Litigation So Far Inspires No Confidence In Plaintiffs ............................... 11

ARGUMENT ................................................................................................ 13

I.    Plaintiffs Are Not Adequate Or Typical Class Representatives ....................................... 15

    A.    Each Plaintiff Is Subject To Unique Defenses Because Each Owes Simmons Far More Than Each Claims In Damages ........................................... 17

    B.    Wilkins Is Subject To Further Unique Defenses Because She Never Paid The Lone Fee She Challenges .................................................................. 20

    C.    Wilkins Is Subject To More Unique Defenses Because She Breached The Customer Agreement Long Before Simmons Assessed Her Challenged Fee ................................................................................ 22

    D.    The Untimeliness Of Watson's Unjust Enrichment Claim Precludes Him From Representing The Class .................................................................. 23

    E.    Plaintiffs Cannot Represent Those Who Incurred Challenged Fees On Checks Because Neither Plaintiff Challenges A Fee On A Check ..................... 24

    F.    Plaintiffs' Personal Circumstances Make Them Inadequate Class Representatives ................................................................................ 26

    G.    Plaintiffs' Ignorance Of The Case Also Makes Them Inadequate Class Representatives ................................................................................ 28

II.    Individual Questions Prevent Class Certification Under Rule 23(b)(3) ......................... 30

    A.    The Breach-Of-Contract Claims Require Individualized Analyses .................... 31

        1.    Different Extrinsic Evidence .................................................................. 31

i

# TABLE OF CONTENTS
### (continued)

**Page**

|  |  |  |  |
|---|---|---|---|
|  | 2. | Different Evidence On Compliance With Customer Agreement | 34 |
|  | 3. | Different Good-Faith-And-Fair-Dealing Evidence | 36 |
|  | 4. | Different Standing, Injury, And Damages Evidence | 37 |
|  | 5. | Different Evidence Regarding Affirmative Defenses | 43 |
| B. | Plaintiffs' Unjust-Enrichment Claims Are Equally Individualized | | 44 |
|  | 1. | Different Proof On The Elements Of The Claim | 45 |
|  | 2. | Different Proof Of Affirmative Defenses | 47 |
|  | 3. | Choice-Of-Law Issues Further Preclude Predominance | 48 |
| C. | A Class Action Is Not Superior To Individual Actions | | 50 |
| III. | No Class Can Be Certified Under Rule 23(b)(2) | | 52 |
| A. | As Former Customers, Plaintiffs Cannot Represent An Injunctive Or Declaratory Relief Class | | 53 |
| B. | This Suit Primarily Seeks Monetary Relief | | 54 |
| C. | Plaintiffs Cannot Meet the Stringent Cohesiveness Requirement | | 54 |
| IV. | The Proposed Class Is Not Clearly Ascertainable | | 55 |
| CONCLUSION | | | 56 |

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Kan. City Life Ins. Co.*,
  192 F.R.D. 274 (W.D. Mo. 2000) ........................................................................33

*Alexander v. McEwen*,
  239 S.W.3d 519 (Ark. 2006) ........................................................................32, 34

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*,
  247 F.R.D. 156 (C.D. Cal. 2007) ......................................................................39

*Alpern v. Utilicorp United, Inc.*,
  84 F.3d 1525 (8th Cir. 1996) ......................................................................16, 17

*Ark. Dev. Fin. Auth. v. Wiley*,
  611 S.W.3d 493 (Ark. 2020) ..............................................................................46

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................................51

*Avritt v. Reliastar Life Ins. Co.*,
  615 F.3d 1023 (8th Cir. 2010) ..................................... 14, 15, 30, 32-34, 36, 42, 44, 45, 54, 55

*Baum v. Great W. Cities, Inc. of N.M.*,
  703 F.2d 1197 (10th Cir. 1983) ........................................................................50

*Bennett v. Nucor Corp.*,
  2005 WL 1773948 (E.D. Ark. July 6, 2005) ....................................................26

*Bethell v. Bethell*,
  597 S.W.2d 576 (Ark. 1980) ........................................................................43, 44

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) ....................................................................38, 39, 41

*Blair v. City of Hannibal*,
  179 F. Supp. 3d 901 (E.D. Mo. 2016) ..............................................................47

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) ............................................................................................26

*BMG Direct Mktg., Inc. v. Peake*,
  178 S.W.3d 763 (Tex. 2005) ..............................................................................47

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Bond v. Liberty Ins. Corp.*,
2017 WL 1628956 (W.D. Mo. May 1, 2017) ........................................................52

*Brookewood, Ltd. P'ship v. DeQueen Physical Therapy &*
*Occupational Therapy, Inc.*,
547 S.W.3d 461 (Ark. Ct. App. 2018) ...........................................................21, 37

*Brooks v. Norwest Corp.*,
103 P.3d 39 (N.M. Ct. App. 2004) ..........................................2, 15, 36, 37, 43, 56

*Burk v. Contemp. Home Servs., Inc.*,
2007 WL 2220279 (W.D. Wash. Aug. 1, 2007) ...................................................20

*Butcher v. Delta Mem'l Hosp.*,
2013 WL 1668998 (E.D. Ark. Apr. 17, 2013) .......................................................45

*Calaway v. Deere & Co.*,
2013 WL 12123671 (E.D. Ark. Dec. 31, 2013) .....................................................19

*Cardiovascular Care of Sarasota, P.A. v. Cardinal Health, Inc.*,
2009 WL 928321 (M.D. Fla. Apr. 3, 2009) ..........................................................50

*Chruby v. Glob. Tel*Link Corp.*,
2017 WL 4320330 (W.D. Ark. Sept. 28, 2017) ....................................................47

*Clay v. Am. Tobacco Co.*,
188 F.R.D. 483 (S.D. Ill. 1999) ..........................................................................49

*Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*,
95 F.R.D. 168 (D. Del. 1982) .............................................................................44

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ............................................................................2, 13, 15

*Compass Bank v. Snow*,
823 So. 2d 667 (Ala. 2001) ...........................................................2, 15, 33, 34, 43

*Cortez v. Neb. Beef, Inc.*,
266 F.R.D. 275 (D. Neb. 2010) ..........................................................................17

*Coughlin v. Sears Holdings Corp.*,
2010 WL 4403089 (C.D. Cal. Oct. 26, 2010) ..................................................21, 23

*Cruson v. Jackson Nat'l Life Ins. Co.*,
954 F.3d 240 (5th Cir. 2020) .............................................................................44

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Darty v. Scott Credit Union*,
  No. 19L0793, Order (St. Clair Cnty. Ill. Cir. Ct. July 19, 2021) ...............................................2

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ..................................................................................................52

*Do v. First Fin. Sec., Inc.*,
  2017 WL 11634363 (C.D. Cal. Nov. 2, 2017).........................................................................35

*Dog Walkin Divas LLC v. Wash. Fed., Inc.*,
  2021 WL 2309675 (W.D. Wash. May 28, 2021)..............................................................19, 20

*Drake v. Morgan Stanley & Co., Inc.*,
  2010 WL 2175819 (C.D. Cal. Apr. 30, 2010) ........................................................................50

*Dungan v. Acad. at Ivy Ridge*,
  249 F.R.D. 413 (N.D.N.Y. 2008), *aff'd*, 344 F. App'x 645 (2d Cir. 2009).............................36

*Durchardt v. Midland Nat'l Life Ins. Co.*,
  265 F.R.D. 436 (S.D. Iowa 2009) ...........................................................................................56

*Dvorak v. St. Clair Cnty., Ill.*,
  2018 WL 514326 (S.D. Ill. Jan. 23, 2018)...............................................................................24

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
  431 U.S. 395 (1977)............................................................................................................16, 24

*Ebert v. Gen. Mills, Inc.*,
  823 F.3d 472 (8th Cir. 2016) .......................................................................................30, 42, 55

*Edgington v. R.G. Dickinson & Co.*,
  139 F.R.D. 183 (D. Kan. 1991)...........................................................................................27, 28

*Elizabeth M. v. Montenez*,
  458 F.3d 779 (8th Cir. 2006) .......................................................................................13, 19, 53

*Endres v. Wells Fargo Bank*,
  2008 WL 344204 (N.D. Cal. Feb. 6, 2008) .............................................................................48

*English v. Apple Inc.*,
  2016 WL 1188200 (N.D. Cal. Jan. 5, 2016).............................................................................19

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) ...................................................................................................33

v

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Fairpark, LLC v. Healthcare Essentials*,
 381 S.W.3d 852 (Ark. Ct. App. 2011) ................................................................22

*Faris v. Flagstar Bank, FSB*,
 Civil No. 15-145287, Order (Mich. Cir. Ct. Sept. 30, 2015) ..............................14

*Flynn v. CTB, Inc.*,
 2013 WL 28244 (E.D. Mo. Jan. 2, 2013) ............................................................49

*Ford v. TD Ameritrade Holding Corp.*,
 995 F.3d 616 (8th Cir. 2021) ...............................................................................41

*Frost v. Sioux City, Iowa*,
 920 F.3d 1158 (8th Cir. 2019) .............................................................................53

*Fuller v. Cmty. Nat'l Bank*,
 --- S.W.3d. ----, 2020 WL 1485696 (Tenn. Ct. App. Mar. 27, 2020) ..................23

*Gen. Tel. Co. of Sw. v. Falcon*,
 457 U.S. 147 (1982) .......................................................................................25, 26

*Ginardi v. Frontier Gas Servs., LLC*,
 2012 WL 1377052 (E.D. Ark. Apr. 19, 2012) ....................................................50

*Graham v. Catamaran Health Sols. LLC*,
 940 F.3d 401 (8th Cir. 2017) ...............................................................................23

*Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc.*,
 120 F.3d 893 (8th Cir. 1997) ...............................................................................24

*Green v. Skyline Highland Holdings LLC*,
 2018 WL 3800240 (E.D. Ark. June 12, 2018) ....................................................26

*Gresser v. Wells Fargo Bank, N.A.*,
 2014 WL 1320092 (D. Md. Mar. 31, 2014) ...................................................23, 44

*Gunter v. United Fed. Credit Union*,
 2017 WL 4274196 (D. Nev. 2017) ......................................................................14

*Haley v. Kolbe & Kolbe Millwork Co.*,
 2016 WL 1180203 (W.D. Wis. Mar. 25, 2016) ...................................................41

*Hall v. Lhaco, Inc.*,
 140 F.3d 1190 (8th Cir. 1998) .........................................................16, 20, 26, 53

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Halvorson v. Auto-Owners Ins. Co.*,
   718 F.3d 773 (8th Cir. 2013) ......................................................................37, 42, 50

*Harris v. Union Pac. R.R. Co.*,
   953 F.3d 1030 (8th Cir. 2020) ..........................................................30, 47, 54, 55

*Hedger Bros. Cement & Materials v. Stump*,
   10 S.W.3d 926 (Ark. Ct. App. 2000) ........................................................................37

*Hernandez v. Point Loma Credit Union*,
   No. 37-2013-00053519, Minute Order (Cal. Super. Ct. July 1, 2016) ...................14

*Hicks v. Sw. Energy Co.*,
   330 F.R.D. 183 (E.D. Ark. 2018) ................................................................42, 55, 56

*Hocker v. N.H. Ins. Co.*,
   922 F.2d 1476 (10th Cir. 1991) ................................................................................23

*Hogue v. Kroger Co.*,
   373 S.W.2d 714 (Tenn. 1963) ..........................................................................18, 47

*Hudock v. LG Elecs. U.S.A., Inc.*,
   2020 WL 1515233 (D. Minn. Mar. 30, 2020), *rev'd on other grounds*,
   12 F.4th 773 (8th Cir. 2021) ....................................................................................21

*Hurt-Hoover Invs., LLC v. Fulmer*,
   448 S.W.3d 696 (Ark. 2014) ....................................................................................32

*In re Checking Acct. Overdraft Litig.*,
   2012 WL 12877717 (S.D. Fla. July 19, 2012) ........................................................15

*In re Checking Acct. Overdraft Litig.*,
   275 F.R.D. 666 (S.D. Fla. 2011) ..............................................................................44

*In re Checking Acct. Overdraft Litig.*,
   286 F.R.D. 645 (S.D. Fla. 2012) ..............................................................................44

*In re Digital Music Antitrust Litig.*,
   321 F.R.D. 64 (S.D.N.Y. 2017) ..........................................................................47, 48

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ........................................................................48, 49

*In re Milk Prods. Antitrust Litig.*,
   195 F.3d 430 (8th Cir. 1999) ........................................................15, 16, 19, 21, 25, 53

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Prempro Prod. Liab. Litig.*,
230 F.R.D. 555 (E.D. Ark. 2005)......................................................................50, 55

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
325 F.R.D. 136 (D.S.C. 2018) ............................................................14, 33, 34, 44

*In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*,
716 F.3d 1057 (8th Cir. 2013) ...............................................................................16

*Inacom Corp. v. Sears, Roebuck & Co.*,
254 F.3d 683 (8th Cir. 2001) .................................................................................48

*Innovative BioDefense, Inc. v. VSP Techs., Inc.*,
2013 WL 3389008 (S.D.N.Y. July 3, 2013) ..........................................................49

*Jacobs v. FirstMerit Corp.*,
No. 11CV000090, Order (Ohio Ct. Com. Pl. Dec. 26, 2012)................................15

*Jarrett v. Panasonic Corp. of N. Am.*,
8 F. Supp. 3d 1074 (E.D. Ark. 2013) .....................................................................49

*Johannessohn v. Polaris Indus. Inc.*,
9 F.4th 981 (8th Cir. 2021) ..............................................................37, 41, 42, 50

*Johnson v. Ark. Convalescent Ctrs., Inc.*,
2013 WL 3874774 (E.D. Ark. July 25, 2013) .......................................................45

*Jones v. CBE Grp., Inc.*,
215 F.R.D. 558 (D. Minn. 2003)............................................................................29

*Kassover v. Comput. Depot, Inc.*,
691 F. Supp. 1205 (D. Minn. 1987), *aff'd*, 902 F.2d 1571 (8th Cir. 1990) ............29

*Kilgore Lumber Co. v. Thomas & Hammonds*,
128 S.W. 62 (Ark. 1910)........................................................................................18

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)................................................................................................49

*Krim v. pcOrder.com, Inc.*,
210 F.R.D. 581 (W.D. Tex. 2002) ....................................................................27, 28

*Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*,
21 F. Supp. 2d 785 (W.D. Tenn. 1998)..............................................................18, 46

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Lee-Bolton v. Koppers Inc.*,
  319 F.R.D. 346 (N.D. Fla. 2017) ...........................................................................41

*Leroy v. Paytel III Mgmt. Assocs., Inc.*,
  1992 WL 367090 (S.D.N.Y. Nov. 24, 1992) ...........................................................24

*Lewis v. Casey*,
  518 U.S. 343 (1996) ..................................................................................................26

*Lindblom v. Santander Consumer USA, Inc.*,
  2018 WL 573356 (E.D. Cal. Jan. 26, 2018) ...........................................................24

*Marquis v. Tecumseh Prod. Co.*,
  206 F.R.D. 132 (E.D. Mich. 2002) ..........................................................................24

*Martinez v. Triple S Props.*,
  2019 WL 1646405 (W.D. Mo. Apr. 16, 2019) ........................................................56

*Mazur v. eBay Inc.*,
  257 F.R.D. 563 (N.D. Cal. 2009) .......................................................................19, 23

*McKeage v. TMB, LLC*,
  847 F.3d 992 (8th Cir. 2017) ...................................................................................33

*McNair v. Synapse Grp. Inc.*,
  672 F.3d 213 (3d Cir. 2012) ...............................................................................53, 54

*Mobil Expl. & Producing N. Am., Inc. v. Graham Royalty Ltd.*,
  910 F.2d 504 (8th Cir. 1990) ...................................................................................22

*Monaco v. Bear Stearns Cos.*,
  2012 WL 100006987 (C.D. Cal. Dec. 10, 2012) ...............................................33, 48

*Morton v. Green Bank*,
  No. 11-135-III, Agreed Order (Tenn. Ch. Ct. Aug. 2, 2012) ..................................15

*Murphy v. Gospel for Asia, Inc.*,
  327 F.R.D. 227 (W.D. Ark. 2018) ...........................................................................52

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) .....................................................................................39

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
  2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) .......................................................38

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*,
   339 F.3d 1001 (8th Cir. 2003) ................................................................42

*Pagan v. The New Wilson's Meats, Inc.*,
   2011 WL 1876027 (E.D. Pa. May 17, 2011) ..........................................28

*Paxton v. Union Nat'l Bank*,
   688 F.2d 552 (8th Cir. 1982) .................................................................16

*Pipes v. Life Invs. Ins. Co. of Am.*,
   254 F.R.D. 544 (E.D. Ark. 2008) ......................................16, 29, 42, 54

*Plant v. Merrifield Town Ctr. Ltd. P'ship*,
   2008 WL 4951352 (E.D. Va. Nov. 12, 2008) ...................................20, 23

*Poff v. Brown*,
   288 S.W.3d 620 (Ark. 2008) ............................................................18, 47

*Porath v. Logitech, Inc.*,
   2019 WL 6134936 (N.D. Cal. Nov. 18, 2019) .......................................28

*Postawko v. Mo. Dep't of Corr.*,
   910 F.3d 1030 (8th Cir. 2018) ...............................................................16

*Pruett v. Am. Income Life Ins. Co.* (*In re Pruett*),
   220 B.R. 625 (Bankr. E.D. Ark. 1997) .................................................17

*Ramthun v. Bryan Career Coll.-Inc.*,
   93 F. Supp. 3d 1011 (W.D. Ark. 2015) .....................................22, 31, 34

*Rapp v. Green Tree Servicing, LLC*,
   302 F.R.D. 505 (D. Minn. 2014) ...........................................................36

*Rector v. City & Cnty. of Denver*,
   348 F.3d 935 (10th Cir. 2003) ...............................................................20

*Riedel v. XTO Energy, Inc.*,
   257 F.R.D. 494 (E.D. Ark. 2009) .....................................................19, 54

*Robinson v. Sears, Roebuck & Co.*,
   111 F. Supp. 2d 1101 (E.D. Ark. 2000) ................................................17

*Rush v. Whirlpool Corp.*,
   2008 WL 11337601 (W.D. Ark. Nov. 13, 2008) ...................................55

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*S. Ferry LP No. 2 v. Killinger*,
  271 F.R.D. 653 (W.D. Wash. 2011) ....................................................................19

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) ........................................................................44

*Samuels v. Old Kent Bank*,
  1997 WL 458434 (N.D. Ill. Aug. 1, 1997) .........................................................49

*Schleicher v. Wendt*,
  2009 WL 761157 (S.D. Ind. Mar. 20, 2009), *aff'd*,
  618 F.3d 679 (7th Cir. 2010) ............................................................................28

*Shelley v. AmSouth Bank*,
  2000 WL 1121778 (S.D. Ala. July 24, 2000), *aff'd*,
  247 F.3d 250 (11th Cir. 2001) .............................................................2, 15, 43, 50

*Sims v. First Nat'l Bank, Harrison*,
  590 S.W.2d 270 (Ark. 1979)..............................................................................43

*Smith v. Bank of Haw.*,
  2019 WL 2712262 (D. Haw. 2019) ....................................................................14

*Smith v. Hi-Speed, Inc.*,
  536 S.W.3d 458 (Tenn. Ct. App. 2016)..............................................................45

*Spagnola v. Chubb Corp.*,
  264 F.R.D. 76 (S.D.N.Y. 2010) ........................................................................47

*Sparks Reg'l Med. Ctr. v. Blatt*,
  935 S.W.2d 304 (Ark. Ct. App. 1996)................................................................45

*Stearns v. Inmate Servs. Corp.*,
  2020 WL 7138626 (E.D. Ark. Dec. 7, 2020)......................................................54

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)......................................................................................19, 20

*Stratton v. Am. Med. Sec., Inc.*,
  266 F.R.D. 340 (D. Ariz. 2009) ........................................................................37

*Stuart v. Glob. Tel*Link Corp.*,
  956 F.3d 555 (8th Cir. 2020) ............................................................................47

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Stuart v. State Farm Fire & Cas. Co.*,
  910 F.3d 371 (8th Cir. 2018) ............................................................................33

*Taxes of P.R., Inc. v. Tax Works, Inc.*,
  2014 WL 6604056 (W.D. Mo. June 16, 2014) ...................................................48

*Taylor v. Mission Fed. Credit Union*,
  No. 37-2012-00092073, Minute Order (Cal. Super. Ct. Aug. 29, 2014) ...........2, 15, 43, 50, 56

*Telco Grp., Inc. v. Ameritrade, Inc.*,
  2007 WL 203949 (D. Neb. Jan. 23, 2007) ..........................................................51

*Thompson v. Bayer Corp.*,
  2009 WL 362982 (E.D. Ark. Feb. 12, 2009) ..................................................49, 50

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .......................................................................................37

*Tri-Eagle Enters. v. Regions Bank*,
  373 S.W.3d 399 (Ark. Ct. App. 2010) ................................................................32

*Tyler v. Alltel Corp.*,
  265 F.R.D. 415 (E.D. Ark. 2010) ........................................................................49

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) .....................................................................45, 46

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................13, 30, 34, 52, 54

*Walls v. Sagamore Ins. Co.*,
  2009 WL 890528 (W.D. Ark. Mar. 31, 2009) .............................21, 37, 55, 56

*Watson v. Astrue*,
  2009 WL 4730927 (W.D. Ark. Dec. 7, 2009) ...............................................11, 27

*Weikel v. Tower Semiconductor Ltd.*,
  183 F.R.D. 377 (D.N.J. 1998) .............................................................................20

*Whitley v. Irwin*,
  465 S.W.2d 906 (Ark. 1971) .........................................................................18, 46

*Withco, LLC v. Republic Servs. of Tenn., LLC*,
  818 F. Supp. 2d 1040 (M.D. Tenn. 2011) ...........................................................21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

STATUTES AND RULES

28 U.S.C. § 2072(b) .................................................................................................34

Ark. Code § 16-56-105 ..........................................................................................23

Fed. R. Civ. P. 23 .......................................................1, 2, 13, 20, 25, 28, 30, 48, 50

Fed. R. Civ. P. 23(a)(3) ........................................................................ 13-15, 26, 30

Fed. R. Civ. P. 23(a)(4) ...........................................................................................15

Fed. R. Civ. P. 23(b)(2) ..........................................................................13, 14, 52, 53, 54

Fed. R. Civ. P. 23(b)(3) ..........................................................13, 14, 30, 31, 50, 54

Fed. R. Civ. P. 23(b)(3)(D) ....................................................................................50

Fed. R. Civ. P. 25 ....................................................................................................11

Fed. R. Civ. P. 26(a)(1) ...........................................................................................12

Fed. R. Evid. 609(a) ................................................................................................28

Fed. R. Evid. 609(b) ................................................................................................28

UCC § 4-104(9) ........................................................................................................4

## INTRODUCTION

This case is not at all suited for class certification. Plaintiffs pretend otherwise by offering a false picture of the case. They ignore the substantial and unique defects of their own individual claims. They wrongly assume that class-member-specific evidence would play no role in any class litigation. And they rely on an unreliable and incomplete expert opinion in contending that class members and their purported damages could be identified without any individual inquiries.

Plaintiffs allege that Simmons Bank wrongfully assessed overdraft or insufficient-funds fees on multiple payment requests related to the same underlying transaction between a customer and a merchant. According to Plaintiffs, Simmons promised not to assess more than one fee per underlying transaction. Simmons's summary-judgment motion explains why Plaintiffs are wrong and how the Customer Agreement authorizes Simmons to assess a fee on each merchant payment request, consistent with industry standards. But even if Plaintiffs somehow avoided summary judgment on that issue (which they should not), their request that the Court certify a class of all Simmons customers who incurred the type of fees challenged by Plaintiffs must be denied.

Under Eighth Circuit precedent, Plaintiffs have not remotely carried their burden to prove that this case satisfies the demanding requirements of Federal Rule of Civil Procedure 23. To start, it is hard to conceive of less typical or adequate class representatives. Plaintiffs Shunda Wilkins and David Watson face a host of unique defenses and present unusual personal circumstances that make them poor choices to represent a class. Nor would common questions predominate over individual ones here, as required for any class litigation of damages claims. Article III standing, breach of contract, unjust enrichment, affirmative defenses, fact of injury, and amount of damages all require individual analyses of transactions, payment requests, fees, account balances, knowledge, expectations, and communications for each putative class member. For the same reason, and also because no-cost individual arbitration is available, class litigation is not superior

1

to individual proceedings. Plaintiffs' additional request for class certification to seek injunctive and declaratory relief fails because the class is not remotely cohesive and Plaintiffs cannot obtain such relief as former customers. Finally, the proposed class is not even ascertainable because deciding who incurred a challenged fee requires individual and subjective analyses.

In support of their assertion that this case satisfies Rule 23's requirements, Plaintiffs offer only *assurances*, not *proof*. To disguise that fatal defect, Plaintiffs repeatedly argue that class certification is warranted here because some courts outside the Eighth Circuit have granted class certification in fee cases against other banks. Only one of those cases challenged the assessment of fees on multiple payment requests related to the same underlying transaction: *Darty v. Scott Credit Union*, No. 19L0793, Order (St. Clair Cnty. Ill. Cir. Ct. July 19, 2021) (Doc. 91-1). But not even *Darty* should carry any weight here. It accepted the complaint's allegations as true, something forbidden in federal court. *Compare Darty* Order at 7, *with Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013). It relied heavily on a supposed absence of bank-fee cases denying class certification, but there are four such decisions, including one that rejects the opinions of Plaintiffs' expert. *Compare Darty* Order at 17, 19, *with Taylor v. Mission Fed. Credit Union*, No. 37-2012-00092073, Minute Order (Cal. Super. Ct. Aug. 29, 2014) (Doc. 88-27); *Brooks v. Norwest Corp.*, 103 P.3d 39 (N.M. Ct. App. 2004); *Compass Bank v. Snow*, 823 So. 2d 667 (Ala. 2001); *Shelley v. AmSouth Bank*, 2000 WL 1121778 (S.D. Ala. July 24, 2000), *aff'd*, 247 F.3d 250 (11th Cir. 2001). And it did not consider the same wide array of well-supported typicality, adequacy, and predominance arguments raised by Simmons here. *Compare Darty* Order at 16, 25-26, *with infra* pp. 17-50.

Plaintiffs seem to recognize *Darty*'s irrelevance, for they cite it only in their introduction and rely on other bank-fee cases to support their arguments. But those other cases against other

banks challenging other practices are even further afield and thus offer no guidance on whether this case—with its peculiarly situated Plaintiffs, need for individual analyses of Simmons data, and other unique factors—warrants class certification. *See infra* pp. 14-15 & n.7. The truth is that the factual record, legal arguments, and controlling precedents in this case simply do not permit the findings required to certify a class action. Class certification therefore should be denied.

## BACKGROUND

### A.   Simmons Can Assess A Fee For Each Payment Request That Exceeds The Funds Available In A Customer's Account.

Some Simmons customers choose to pay for goods or services by authorizing a merchant to obtain the payment from the customer's Simmons account, often for recurring transactions like rent payments or insurance premiums. Doc. 88-1 ¶¶ 17, 20 (Nesbitt Rep.). A merchant with such an authorization submits payment instructions to its bank. *Id.* ¶¶ 20-21 (Nesbitt Rep.). The merchant's bank then sends an "ACH Entry" with the payment instructions to an Automated Clearing House ("ACH") operator that delivers the ACH Entry to Simmons. *Id.* Simmons then processes the ACH Entry. *Id.* If the funds in the customer's account are insufficient to cover the ACH Entry, Simmons can either pay the Entry using the customer's overdraft privilege or return the Entry for insufficient funds. *See, e.g.*, Doc. 88-6 at 3 (Terms); Doc. 88-6 at 14 (Fee Schedule). When Simmons returns an ACH Entry, the merchant can try again to obtain payment by submitting a new ACH Entry (with a different date and unique trace number) up to two more times in the next 180 days, in hopes that the customer will then have sufficient funds. Doc. 88-1 ¶ 40 (Nesbitt Rep.).

When Simmons pays an ACH Entry using a customer's overdraft privilege, it charges what is called an "overdraft" or "paid item" fee. Doc. 88-6 at 14 (Fee Schedule). When Simmons returns an ACH Entry for insufficient funds, it charges what is called an "insufficient funds" or "return item" fee. *Id.* Consistent with those practices, Simmons might assess more than one fee related to

a single underlying transaction when it has returned an ACH Entry for that transaction, the merchant submits a second (or third) ACH Entry for the transaction, and the customer lacks the funds to cover the second (or third) Entry. *See, e.g.*, Doc. 83 ¶¶ 7, 14, 16, 20, 24, 27 (Hunter Decl.). But Simmons does not charge more than one return or paid item fee on any single ACH Entry.

Simmons's practice of assessing fees for each ACH Entry paid into overdraft or returned for insufficient funds adheres to the Customer Agreement that governs Simmons's relationship with its customers. As the Court has recognized, the "Customer Agreement" consists of at least four documents: (a) "the deposit agreement," also known as Simmons's Terms and Conditions ("Terms"); (b) "the overdraft privilege account disclosure" ("ODP Disclosure"); (c) "the schedule of fees and charges" ("Fee Schedule"); and (d) "the incorporated ACH rules" (the Nacha Rules). Doc. 41 at 3 (MTD Order). The Fee Schedule states:

> If we pay even though you do not have the money in your account[,] you may be charged a Paid Item Fee (Overdraft Fee). If we return your item without paying it, you may be charged a Return Item/Insufficient Funds (NSF) Fee.

Doc. 88-6 at 14. The Fee Schedule also provides that Simmons may charge a paid or return item fee "per item." *Id.* The incorporated Nacha Rules specify that "each debit Entry shall be deemed an 'item' within the meaning of the … Uniform Commercial Code" (Doc. 88-29 at OR63 (Nacha Rules § 8.36)), which in turn defines an "item" as an "order to pay money handled by a bank for collection or payment" (UCC § 4-104(9)).

In short, the Customer Agreement's authorization to charge return or paid item fees "per item," means that Simmons can assess a fee on each ACH Entry that exceeds a customer's balance. And that is true even when Simmons assessed a fee on a prior ACH Entry related to the same underlying transaction. *See* Doc. 80 at 11-15, 24-33 (Def.'s MSJ Br.).[1]

---

[1]   Plaintiffs try to manufacture ambiguity in the meaning of "item" by citing testimony from Simmons's corporate representative that the bank's documents do not specifically define "item"

**B.**     **Plaintiffs Challenge Simmons's Fee Practices On Behalf Of A Disparate Class**.

Plaintiffs dispute Simmons's plain-language reading of the Customer Agreement, even though that reading comports with industry standards described in an unrebutted expert report from ACH expert Gary Nesbitt (Doc. 88-1 ¶¶ 30-47, 56). Plaintiffs contend that the "per item" language in the Fee Schedule creates ambiguity. Doc. 91 at 3. And they argue that the ambiguity should be resolved against Simmons by deeming an "item" to be the underlying transaction between a customer and a merchant. *Id.* at 14.

Relying on that reading, Plaintiffs maintain that Simmons improperly charged them and other customers when it assessed a return or paid item fee on an ACH Entry (or check) after it assessed a return item fee on a prior ACH Entry related to the same underlying transaction (or on the same check). *Id.* at 2; Doc. 15 ¶¶ 1-2, 17-18, 59-70 (Am. Compl.). As to those challenged fees, they assert claims for breach of contract and unjust enrichment. Doc. 15 ¶¶ 99-117 (Am. Compl.). They demand a panoply of relief, including restitution, disgorgement, compensatory damages, a declaratory judgment, and an injunction. *Id.* Prayer ¶¶ 2-6. And they seek to represent a class of "[a]ll persons who, within the applicable statute of limitations period, were charged Retry Fees – NSF or Overdraft Fees – on an item that had already been subject to an NSF Fee in a Simmons checking account." Doc. 90 at 1 (Class Cert. Mot.).

Plaintiffs insist that this case can be litigated on a class-wide basis. Doc. 91 at 2-3, 20-25. As they see it, the relevant parts of Simmons's Customer Agreement and fee practices were unchanged during the class period. *Id.* at 2, 4. And they maintain that their database expert, Arthur Olsen, can use an "algorithm" to identify the challenged fees for all class members. *Id.* at 23-24.

---

or present fee scenarios. Doc. 91 at 5-6. But, as Ms. Hunter explained, that is so because "item" is a "generally understood word" (Doc. 91-11 at 12 (11/4/21 Hunter Dep.)), as reflected in the Nacha Rules and UCC provisions incorporated into the Customer Agreement. *See supra* p. 4.

That "algorithm," which is both untested and unclear, supposedly would identify challenged fees related to ACH transactions by searching Simmons's electronic transaction data for two ACH Entries in the same amount from the same merchant in the same ten-business-day period that each gave rise to a return or paid item fee. Doc. 88-26 at 53-54, 79 (Olsen Dep.).[2] The "algorithm" might also look for ACH Entries with a "RETRY PYMT" notation, but how Olsen might use that information is uncertain. *Id.* at 104.[3] Olsen also has promised to come up with class-wide methods to account for reversals of challenged fees and negative account balances that Simmons had to charge-off, which he concedes "would affect the damages relating to [the challenged] fees." Doc. 88-25 ¶¶ 27-29 (Olsen Rep.). For reversals, he has mentioned two possible assumptions: (a) attributing any reversal within 30 days of a challenged fee to that fee; or (b) attributing each reversal to the most recent fee, whether challenged or not. *Id.* ¶ 28. For charged-off balances, he offers no possible methods and, instead, just asserts that he "can easily include that in [his] analysis." *Id.* ¶ 29.

Plaintiffs' view of this case does not comport with reality. Any trial on ambiguity in the Customer Agreement would require close examination of class-member-specific evidence to determine party intent. Different putative class members inevitably would have different understandings of the return and paid item fees authorized by the Customer Agreement based on their experiences with such fees at Simmons and other banks. *See infra* p. 34.

There also is no class-wide way to determine whether different putative class members incurred challenged fees or experienced injury and damages as a result. ACH Entries do not

---

[2]    For check transactions, Olsen says he can look for instances of multiple fees associated with the same check number in some unspecified way. Doc. 88-26 at 79, 101-02 (Olsen Dep.).

[3]    Pursuant to a Nacha Rule introduced in September 2015, merchants sometimes include a "RETRY PYMT" notation in a free-form Company Description Entry field of an ACH Entry when a merchant resubmits certain kinds of transactions for payment. Doc. 88-1 ¶¶ 48-50 (Nesbitt Rep.).

reliably indicate whether they relate to a resubmitted underlying transaction. Doc. 88-1 ¶¶ 36-52 (Nesbitt Rep.); Doc. 88-2 ¶¶ 21-23 (Kwon Rep.). And Olsen's proposed shortcuts for identifying challenged fees and accounting for fee reversals and charged-off negative account balances, to the extent they are specified at all, would not accurately and reliably accomplish either task. Doc. 88-2 ¶ 22, 33-36, 39 (Kwon Rep.). As Simmons's data expert has attested, only individual analyses of ACH Entries, account statements, Overdraft/NSF Notices, and other documentation for each putative class member could hope to reliably identify ACH Entries related to resubmitted transactions, link paid and return item fees to ACH Entries, and account for fee-reversals and charged-off negative balances. *Id.* ¶ 21-23, 25-31, 40-41, 33-36, 39; *see also infra* pp. 39-41.

## C.   Plaintiffs' Individual Claims Rest On Unique Factual Circumstances.

The details of Plaintiffs' individual claims illustrate the kind of individual issues that would beset any class litigation. Indeed, each Plaintiff faces daunting, individual obstacles to establishing liability and damages that would cause any putative class member to question why the outcome of their claims should be controlled by the outcome of Plaintiffs' claims.

**Shunda Wilkins.** During the year Wilkins was a Simmons customer (from December 2, 2016 to December 22, 2017), her checking account was chronically overdrawn. Doc. 83 ¶ 4 (Hunter Decl.); Doc. 88-9 (Wilkins Acct. Stmts.). And when Wilkins overdrew her account on October 23, 2017, she never brought her account back to a positive balance. Doc. 83 ¶ 5 (Hunter Decl.); Doc. 88-9 at 2-7 (Wilkins Acct. Stmts.).

By November 22, 2017, Wilkins's account had been overdrawn for 30 days. Doc. 83 ¶ 6 (Hunter Decl.); Doc. 88-11 at 8 (11/22/17 Ltr.). That put her in breach of the provisions of the Simmons Customer Agreement that make a customer "liable for any account shortage resulting from charges or overdrafts" (*e.g.*, Doc. 88-6 at 2 (Terms)), make that liability "due immediately" (*e.g.*, *id.*), and require a customer to "bring [his or her] account to a positive balance once every

(30) days" to maintain the overdraft privilege (*e.g.*, Doc. 88-6 at 15 (ODP Disclosure)). Simmons therefore suspended Wilkins's overdraft privilege and advised her that, "[a]s long as your account remains overdrawn, we will return, unpaid, any checks or other items presented to us for payment." Doc. 88-11 at 8 (11/22/17 Ltr.).

That action did not lead Wilkins to either deposit money into her account or stop merchants from seeking payment from her account. On December 19, 2017, Wilkins incurred the only fee she challenges in this case—a $35 return item fee that Simmons assessed on a returned $72.93 ACH Entry submitted by the life insurer Liberty National. Doc. 88-20 at 3-4 (Wilkins Rog. Resp.). Wilkins contends that the December 19 fee violated the Customer Agreement because Simmons previously assessed a return item fee on a $72.93 ACH Entry from Liberty National that Simmons returned on December 7, 2017. *Id.* The ACH Entry associated with the December 19 fee *did not* include a "RETRY PYMT" notation. Doc. 83 ¶ 8 (Hunter Decl.).

On December 21, 2017, Simmons charged off Wilkins's negative account balance of $545.21. Doc. 88-8 (Wilkins Deposit Inquiry). The next day, Simmons informed Wilkins that it was closing her account. Doc. 88-11 at 10 (12/22/17 Ltr.). Wilkins has not been a Simmons customer since then. Doc. 83 ¶ 11 (Hunter Decl.). In the four years that have passed, Wilkins has never paid the one fee she challenges or any other part of her negative account balance. *Id.* ¶ 10.

Wilkins is now inexplicably suing Simmons over that unpaid fee as a proposed representative for a class of all Simmons customers who incurred similar fees. Wilkins, however, knows little about her suit. At her deposition, she did not know what legal claims she was asserting. Doc. 88-3 at 62-63 (Wilkins Dep.). She could not identify contractual language that Simmons violated. *Id.* at 63-73. And she was unaware of the default judgment entered against her on Simmons's counterclaims or the then-pending request for attorneys' fees. *Id.* at 113-14, 121.

8

Wilkins had little grasp on class-representative duties and even said that class members should not be bound by the results on her claims. *Id.* at 100, 171-72. She also admitted to having no interest in Simmons's current fee policies because she is no longer a customer. *Id.* at 98. Wilkins further testified that she has "post-traumatic stress, anxiety, and depression" that "affect [her] memory," including her "ability to remember what happened at [her] time with Simmons Bank." *Id.* at 11-12. Those conditions also affect her "ability to give a deposition" and have left her unable to respond to her attorneys for "two, three weeks sometimes." *Id.* at 11-12, 119-20.

**David Watson.** Watson had a joint Simmons checking account with his wife Marilyn Watson. Doc. 83 ¶ 12 (Hunter Decl.); Doc. 88-12 (Watson Sig. Card). During the roughly ten months they were Simmons customers, their account was chronically overdrawn. Doc. 83 ¶ 12 (Hunter Decl.); Doc. 88-13 (Watson Acct. Stmts.). They also took out *and defaulted on* two (interest-free) Overdraft Repayment Plan loans from Simmons. Doc. 83 ¶¶ 15, 21-22 (Hunter Decl.); Doc. 88-13 at 4-11, 14-17, 28-32 (Watson Acct. Stmts.).

Watson challenges five fees: (a) a $30 paid item fee assessed on June 11, 2015 related to a PayPal ACH Entry; (b) a $30 paid item fee assessed on August 17, 2015 related to another PayPal ACH Entry; (c) a $30 return item fee assessed on January 11, 2016 related to a Verizon ACH Entry; (d) a $30 return item fee assessed on February 1, 2016 related to a Progressive Insurance ACH Entry; and (e) a $30 return item fee assessed on February 9, 2016 related to another Verizon ACH Entry. Doc. 88-21 at 3-4 (Watson Rog. Resp.). Watson challenges each of these fees because Simmons assessed a return item fee on a prior ACH Entry from the same merchant for the same amount in the previous two weeks. *Id.*

Of the five challenged fees, Simmons reversed one of them (the August 17, 2015 fee). Doc. 83 ¶ 17 (Hunter Decl.). The Watsons did not pay two others (the January 11, 2016 and February

9, 2016 fees). *Id.* ¶¶ 22, 28. And all but one of them (the February 1, 2016 fee) were associated with ACH Entries that did not include a "RETRY PYMT" notation. *Id.* ¶¶ 14, 16, 20, 24, 27.

The Watsons did not regain a positive account balance following their second Overdraft Repayment Plan loan (which had zeroed out their negative balance on January 14, 2016). Doc. 88-13 at 4-11 (Watson Acct. Stmts.). They then defaulted on the loan by failing to make the first monthly payment in February 2016. *Id.* at 4-8; Doc. 83 ¶ 22 (Hunter Decl.). On February 24, 2016, Simmons charged off the Watsons' negative account balance of $735.59 (including the defaulted $675.59 loan). Doc. 83 ¶¶ 28-29 (Hunter Decl.). The Watsons have not been Simmons customers since. *Id.* ¶ 29. And they have never paid any portion of their final negative balance. *Id.* ¶¶ 28-29.

Despite his significant debt to Simmons, Watson sues the bank over $150 in fees ($90 of which the Watsons never paid), seeking to represent all Simmons customers in class litigation. Yet Watson knows almost nothing about this case. He does not know what fees he is challenging. Doc. 88-4 at 38, 43, 56-57, 166-67 (D. Watson Dep.). He does not know what his legal claims are or what contract provision Simmons supposedly violated. *Id.* at 87, 90-91. Dozens and dozens of times during his deposition he referred basic and important questions about his claims to his lawyers, acknowledging at one point that "maybe I'm relying on my attorney more than I should" and apologizing at another for not being prepared. *Id.* at 92, 110, 185-86. He has no idea what his responsibilities as class representative would be. *Id.* at 182. And he admitted that, as a former customer, he has no interest in Simmons's current fee policies. *Id.* at 117.

Beyond all of that, Watson has "multiple personality disorders" that "affect [his] memory" and allow him to collect Social Security disability payments. *Id.* at 12. He testified that he "should probably be on medication" but is not. *Id.* And he acknowledged having a "little episode" during his deposition that caused him to have to take a break to compose himself. *Id.* at 183. His wife

confirmed that he has had "multiple personality disorder" for over a decade, adding that "it is progressive with age[,] there's no pill he can take for it[, a]nd it just gets worse." Yount Ex. E at 95 (M. Watson Dep.).[4] A disability decision from 2009 confirms the "multiple personality disorder" diagnosis, while finding that Watson was a drug abuser addicted to marijuana and cocaine. *Watson v. Astrue*, 2009 WL 4730927, at *7-8 (W.D. Ark. Dec. 7, 2009). Watson also has a lengthy criminal history that includes assault, battery, robbery, theft of property, driving while intoxicated, drug possession, resisting arrest, and failure to appear in court. Doc. 88-4 at 13-18 (D. Watson Dep.); Yount Ex. H (D. Watson Crim. Records.). And he has a restraining order against him (through 2029) for threatening to poison the water of his wife's niece and blow up her house. Yount Ex. J (Maxfield Aff.); Yount Ex. K (Order of Protection).[5]

### D.    The Litigation So Far Inspires No Confidence In Plaintiffs.

In April 2020, Plaintiffs' counsel commenced this suit with Shunda Wilkins as the sole named Plaintiff. Doc. 1 (Compl.).[6] After learning of some of the defects plaguing Wilkins's claims, counsel filed an Amended Complaint on June 29, 2020 on behalf of three Plaintiffs—Wilkins, Watson, and Diann Graham. Doc. 15 (Am. Compl.). As noted, the Amended Complaint asserts claims for breach of contract and unjust enrichment based on Simmons's allegedly wrongful assessment of more than one fee related to a single underlying transaction. *Id.*

---

[4]    Citations to "Yount Ex." refer to the Exhibits to the Declaration of Joshua Yount filed herewith.
[5]    This is the same niece that Watson's wife accuses of exercising control over the Watsons' account and forging her signature on Overdraft Repayment Plan loan documents. Yount Ex. E at 45, 49-50, 79-80, 83, 88-89, 99-100, 127-28 (M. Watson Dep.). As for Watson's wife, she has her own lengthy criminal history that includes two convictions for check-related forgery and fraud. Yount Ex. I (M. Watson Crim. Records.).
[6]    Previously, Plaintiffs' counsel had brought a suit making similar allegations with Donald Tannehill as the plaintiff, but the case was dismissed after Mr. Tannehill died, Plaintiffs' counsel failed to tell the Court, Simmons did so, and Plaintiffs' counsel were unable to file a Rule 25 motion to substitute. *Tannehill v. Simmons Bank*, 3:19-cv-00140 (E.D. Ark.), Docs. 1, 31, 42, 44.

Simmons moved to dismiss both claims of all Plaintiffs on several grounds. *See* Doc. 23 (MTD Br.). The Court declined to dismiss, concluding that it could not resolve the issues raised by Simmons without factual development. Doc. 41 (MTD Order). Simmons then answered the Amended Complaint and filed counterclaims against Wilkins for the $545.21 negative balance due on her account. Doc. 42 (Ans.). Despite repeated notice from Simmons regarding her obligation to respond to the counterclaims, Wilkins failed to answer the counterclaims for more than six months. Doc. 46 at 2 (Default Mot.). Ultimately, Simmons moved for default judgment, which the Court granted with respect to the $510.21 "uncontested balance due" on Wilkins's account. Doc. 62 at 2 (Default Order). The Court also awarded Simmons $3,000 in attorneys' fees and $117.88 in (still accruing) prejudgment interest. Doc. 73 (Fee Order). Meanwhile, Plaintiff Graham voluntarily dismissed her claims against Simmons after abruptly leaving her in-progress deposition and refusing to return. Doc. 71 (Dismissal Stip.).

During discovery, Plaintiffs repeatedly delayed and stonewalled in responding to basic discovery requests. For instance, they delayed for many months to disclose the fees they challenge and their damages calculation, despite obligations to do so much earlier under Rules 26(a)(1) and 33. Yount Ex. A at 4-6 (Pls.' Rule 26(a)(1) Discl.); Doc. 88-20 (Wilkins Rog. Resp.) (answering interrogatories served almost six months earlier); Doc. 88-21 (D. Watson Rog. Resp.) (same). Likewise, Plaintiffs' expert failed to disclose his proposed methodology for identifying challenged fees in his report, opting instead to belatedly (and only partially) disclose it at his deposition. Doc. 88-25 (Olsen Rep.); Doc. 88-26 at 53-54, 142-44 (Olsen Dep.). And Watson has refused to provide any details on his multiple personality disorder. Yount Ex. B at 11 (4/22/21 RFP Resp.); Yount Ex. C at 3-5 (11/19/21 RFP Resp.); Yount Ex. D at 2-7 (12/23/21 Rog. Resp.).

Following fact and expert discovery, Simmons moved for summary judgment because the undisputed evidence shows that (a) Simmons has a contractual right to assess the challenged fees, (b) Wilkins violated the Customer Agreement well before Simmons assessed her challenged fee, (c) Simmons obtained no unjust enrichment from either Plaintiff, and (d) Plaintiffs—as former customers who did not pay most of their challenged fees and owe Simmons far more than they could hope to recover—lack standing to obtain any of the relief they seek. *See* Doc. 80 (MSJ Br.). Simmons also moved to exclude Arthur Olsen's testimony for class-certification and trial purposes because his opinions are unreliable and his analysis is unhelpful. *See* Doc. 86 (*Daubert* Br.).

At the same time, Plaintiffs moved for class certification, asking the Court to certify the proposed class under Rule 23(b)(3) to seek damages and under Rule 23(b)(2) to seek injunctive and declaratory relief. That motion should be denied because Plaintiffs do not and cannot satisfy the demanding requirements of Rule 23.

## ARGUMENT

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate … compliance' with Rule 23." *Comcast*, 569 U.S. at 33. Under that Rule, class certification "is proper only if the trial court is satisfied, after a rigorous analysis" that all four of Rule 23(a)'s requirements and one of Rule 23(b)'s requirements "have been satisfied" with the necessary proof. *Id.* at 33-34. That "'rigorous analysis' … must involve consideration of what the parties must prove" (*Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006)), and will thus often "entail some overlap with the merits of the plaintiff's underlying claim" (*Wal-Mart*, 564 U.S. at 351). Under those demanding standards, this case is not remotely suited for class

13

certification. Plaintiffs do not, and cannot, satisfy the prerequisites of Rule 23(a), let alone the requirements of Rule 23(b)(2) or Rule 23(b)(3).

Plaintiffs pretend otherwise by ignoring their own enormous shortcomings as proposed class representatives and the unavoidable need for individual inquiries to determine liability and damages for each putative class member. Plaintiffs then try to cover those fatal defects by pointing to decisions from *outside the Eighth Circuit* that granted class certification in cases against *other banks* challenging *other fee practices*. Doc. 91 at 10-11. But those decisions are easily distinguished, and none of them involved so thoroughly unsuitable class representatives.

Indeed, their leading authority, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136 (D.S.C. 2018), narrowly construed applicable contract and other law out of an admitted desire to broadly preserve class actions for bank customers, while expressly departing from the Eighth Circuit's ruling in *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1030-32 (8th Cir. 2010), that no class could be certified because the defendant was entitled to offer individual, customer-specific extrinsic evidence on the meaning of a uniform contract and the associated duty of good faith and fair dealing. *TD Bank*, 325 F.R.D. at 156-58, 160-61, 170-71. *TD Bank* also relied heavily on the lack of any change to the relevant contract language when the defendant changed its fee-assessment practice (*id.* at 155, 157, 170)—a fact not present here, where Simmons has always assessed fees on ACH Entries that exceed a customer's balance no matter whether the Entry is a "retry" or not. The other decisions cited by Plaintiffs are no less distinguishable.[7]

---

[7]   *Smith v. Bank of Haw.*, 2019 WL 2712262, at *5-7 (D. Haw. 2019), neither involved varying extrinsic evidence nor considered any individual defenses. *Gunter v. United Fed. Credit Union*, 2017 WL 4274196, at *7 (D. Nev. 2017), likewise did not address extrinsic evidence of customer understandings or individual defenses. *Faris v. Flagstar Bank, FSB*, Civil No. 15-145287, Order (Mich. Cir. Ct. Sept. 30, 2015), is a one-page order that does not explain why class certification was appropriate. *Hernandez v. Point Loma Credit Union*, No. 37-2013-00053519, Minute Order (Cal. Super. Ct. July 1, 2016), relied on notions that are not the law in federal court, such as a

Plaintiffs also falsely claim to be "unaware of a single bank fee case involving standard form adhesion contracts and standard fee assessment practices in which class certification was denied." Doc. 91 at 10. As Plaintiffs' counsel well knows from briefing in prior cases they have brought against Simmons, there are at least four bank-fee cases that deny class certification: *Taylor*, *Brooks*, *Compass Bank*, and *Shelley*. *See supra* p. 2; Yount Ex. L at 5 (*Walkingstick* Class Cert. Opp.). Under controlling Eighth Circuit precedent, this case is far more like the bank-fee cases in which class certification has been denied.

## I.   Plaintiffs Are Not Adequate Or Typical Class Representatives.

As a threshold matter, Plaintiffs cannot satisfy Rule 23(a)'s intertwined typicality and adequacy requirements. Typicality requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In general, "[t]he adequacy and typicality requirements 'serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *In re Milk Prods. Antitrust*

---

supposed prohibition on resolving expert disputes and the purported irrelevance of individual damages issues. *See Comcast*, 569 U.S. at 33-38. *Jacobs v. FirstMerit Corp.*, No. 11CV000090, Order (Ohio Ct. Com. Pl. Dec. 26, 2012), likewise relied on the incorrect-in-federal-court idea that courts must accept a plaintiff's allegations as true and cannot resolve merits issues relevant to class certification. *See Comcast*, 569 U.S. at 33-34. And *Morton v. Green Bank*, No. 11-135-III, Agreed Order (Tenn. Ch. Ct. Aug. 2, 2012), is an unexplained settlement-related agreed order. As for the various Overdraft MDL decisions related to the resequencing of checking account transactions, they relied on an objective standard of contract interpretation and good faith and fair dealing to cast aside evidence of customer expectations and understandings, an approach that the Eighth Circuit has rejected. *Compare, e.g.*, *In re Checking Acct. Overdraft Litig.*, 2012 WL 12877717, at *8 (S.D. Fla. July 19, 2012), *with Avritt*, 615 F.3d at 1030 n.4, 1032.

*Litig.*, 195 F.3d 430, 436 (8th Cir. 1999). Under these standards, Plaintiffs' unique factual circumstances and litigation conduct preclude any finding of typicality or adequacy.

Plaintiffs argue otherwise, principally contending that the adequacy and typicality requirements are satisfied because they supposedly were subject to the same fees, fee practices, and contracts as the proposed class. Doc. 91 at 15-18. That supposition is not true; for example, Plaintiffs incurred no challenged fees on checks, which implicate a different set of issues than ACH transactions. *See infra* Part I.E. But even if Plaintiffs' supposition were correct, that would not defeat Simmons's typicality and adequacy arguments.

Plaintiffs have confused a *necessary* condition with a *sufficient* one. The typicality and adequacy requirements demand not just that Plaintiffs' claims arise from the same course of conduct as the putative class's claims. Plaintiffs also must not be "subject to a unique defense that threatens to play a major role in the litigation." *Milk Prods.*, 195 F.3d at 437. They must have standing to assert all of the class claims. *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998). They "must be part of the class." *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). And they must have sufficient abilities, knowledge, and credibility to serve in a fiduciary and representative role. *Pipes v. Life Invs. Ins. Co. of Am.*, 254 F.R.D. 544, 550 (E.D. Ark. 2008). Plaintiffs fail to satisfy each of these additional requirements. Class certification therefore should be denied on typicality and adequacy grounds.[8]

---

[8]    The cases cited by Plaintiffs (Doc. 91 at 15-18) are not to the contrary. None of those cases involved the same array of typicality and adequacy defects as this case, and most have nothing in common with this case. *See, e.g.*, *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1038-39 (8th Cir. 2018) (rejecting typicality argument that hepatitis-treatment suit required individual inquiries, because suit sought only injunctive/declaratory relief); *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1064 (8th Cir. 2013) (rejecting typicality/adequacy challenge to settlement class representatives' failure to bring California statutory claim); *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (plaintiff was typical in securities fraud suit even though he purchased stock through benefit plan instead of open market); *Paxton v. Union Nat'l*

A.     **Each Plaintiff Is Subject To Unique Defenses Because Each Owes Simmons Far More Than Each Claims In Damages**.

The fact that Wilkins and Watson each owe Simmons far more money than they seek to recover makes their claims atypical and makes them inadequate class representatives.

Wilkins claims damages of $35. Doc. 88-20 at 3-4 (Wilkins Rog. Resp.). But she owes Simmons the $545.21 negative account balance she ran up and never repaid ($510.21 of which the Court has already awarded to Simmons). *See supra* pp. 7-8; Doc. 62 at 2 (Default Order). Plus, she owes Simmons $3,000 in attorneys' fees and over $100 in interest also awarded by the Court. Doc. 73 (Fee Order). Watson claims damages of $150. Doc. 88-21 at 3-4 (Watson Rog. Resp.). But he owes Simmons the $735.59 negative account balance he and his wife incurred and never repaid. *See supra* pp. 9-10. Because each Plaintiff owes Simmons more than they seek to recover, each faces unique recoupment, unjust-enrichment, clean-hands, and standing defenses.[9]

Arkansas law entitles Simmons to recoupment of debts that arise out of the same contract or occurrence that gives rise to its alleged liability (*Pruett v. Am. Income Life Ins. Co.* (*In re Pruett*),

_____

*Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982) (adequacy present where plaintiffs shared class's interest in procuring injunctive and declaratory relief to eradicate discriminatory promotion practices); *Robinson v. Sears, Roebuck & Co.*, 111 F. Supp. 2d 1101, 1123-24 (E.D. Ark. 2000) (typicality present where named plaintiffs and class experienced "essentially the same" discriminatory acts and no other typicality challenges were raised). Nor do any of the cited cases purport to reject the well-established law that notwithstanding a common course of conduct, unique defenses, a lack of standing, and other plaintiff-specific issues can refute typicality and adequacy; several even acknowledge that law. *See, e.g.*, *Alpern*, 84 F.3d at 1540 n.8 ("a class representative must be part of the class"); *Cortez v. Neb. Beef, Inc.*, 266 F.R.D. 275, 290 (D. Neb. 2010) (typicality absent where liability determination requires individual inquiries or class representative is subject to unique defenses). As for the cited bank-fee cases, they are distinguishable for the reasons already discussed (*see supra* pp. 14-15 & n.7) and because they did not address the typicality and adequacy challenges raised here.

9     Arkansas law governs Plaintiffs' breach-of-contract claims because the Customer Agreement contains a choice-of-law provision specifying Arkansas law for contractual disputes. Doc. 88-6 at 2 (Terms). Arkansas law governs Watson's unjust-enrichment claims because he is a resident of Arkansas (Doc. 15 ¶ 7 (Am. Compl.)), and Tennessee law governs Wilkins's unjust-enrichment claim because she is a resident of Tennessee (*id.* ¶ 5). *See infra* pp. 48-49.

220 B.R. 625, 628 (Bankr. E.D. Ark. 1997)), a condition satisfied here because Plaintiffs' debts arise out of the same Customer Agreement and banking relationship as Simmons's purported liability. *See supra* pp. 7-10. When a defendant is entitled to recoup more than the actual damages of the plaintiff, as here, recoupment serves to "extinguish the demand of the plaintiff." *Kilgore Lumber Co. v. Thomas & Hammonds*, 128 S.W. 62, 63 (Ark. 1910); *see also* Doc. 80 at 43-45 (Def.'s MSJ Br.).

Unjust-enrichment law gives Simmons a similar defense, as "[n]o recovery of money received can be based upon unjust enrichment when the recipient can show a legal or equitable ground for keeping it." *Whitley v. Irwin*, 465 S.W.2d 906, 911 (Ark. 1971); *accord Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*, 21 F. Supp. 2d 785, 805–06 (W.D. Tenn. 1998) ("The most significant requirement for a recovery [of restitution] is that the enrichment to the defendant be unjust."). Wilkins never paid her one challenged fee, and Watson's debts give Simmons both legal and equitable grounds for keeping the few challenged fees that Watson actually paid. *See* Doc. 80 at 38-39 (Def.'s MSJ Br.).

Along the same lines, the clean-hands doctrine allows Simmons to resist Plaintiffs' claims because "[e]quity will not intervene on behalf of a plaintiff whose conduct in connection with the same matter has been unconscientious or unjust." *Poff v. Brown*, 288 S.W.3d 620, 622 (Ark. 2008); *accord Hogue v. Kroger Co.*, 373 S.W.2d 714, 716 (Tenn. 1963) (similar). Plaintiffs' abuse of Simmons's overdraft privilege and refusal to repay the amounts they owe Simmons is both unconscientious and unjust. *See* Doc. 80 at 39-40 (Def.'s MSJ Br.).

Simmons also has a standing defense based on the fact that Plaintiffs' debts (along with their status as *former* customers) leave Plaintiffs with no redressible injury. To establish the "irreducible constitutional minimum of standing," each Plaintiff must prove (among other things)

"a likelihood that the requested relief will redress the [plaintiff's *own*] alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998). As former customers, they are not entitled to declaratory or injunctive relief. *See Elizabeth M.*, 458 F.3d at 784-85; *infra* p. 53. And they are not entitled to monetary relief because they owe Simmons more than they seek. *See supra* pp. 17-18. There thus is no likelihood that the requested relief would redress their purported injuries. *See Dog Walkin Divas LLC v. Wash. Fed., Inc.*, 2021 WL 2309675, at *2 (W.D. Wash. May 28, 2021) (rejecting bank-fee challenge on similar grounds); Doc. 80 at 43-48 (Def.'s MSJ Br.).

As Simmons's summary-judgment papers explain, those defenses should foreclose the claims asserted by Wilkins and Watson. But many class members are unlikely to face those defenses because they did not end their relationships with Simmons with a negative account balance exceeding any claimed damages. In other words, the defenses are unique to Wilkins and Watson. And the defenses would undoubtedly remain a focus of any litigation going forward.

Courts routinely find adequacy and typicality lacking when "[a] proposed class representative … is subject to a unique defense that threatens to play a major role in the litigation." *Milk Prods.*, 195 F.3d at 437; *see also Riedel v. XTO Energy, Inc.*, 257 F.R.D. 494, 510-11 (E.D. Ark. 2009); *Calaway v. Deere & Co.*, 2013 WL 12123671, at *2 (E.D. Ark. Dec. 31, 2013). Indeed, "[i]t is enough that an arguably unique defense is present, whether or not such defense is ultimately successful." *Riedel*, 257 F.R.D. at 510.

Numerous decisions have found typicality and adequacy lacking based on the same unique defenses that Wilkins and Watson face here. *See, e.g.*, *Milk Prods.*, 195 F.3d at 437 (standing defense "cuts against [plaintiff's] adequacy and typicality"); *English v. Apple Inc.*, 2016 WL 1188200, at *8 (N.D. Cal. Jan. 5, 2016) (unique standing defense); *S. Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 659 (W.D. Wash. 2011) (same); *Mazur v. eBay Inc.*, 257 F.R.D. 563, 568–69

(N.D. Cal. 2009) (unique "unclean hands defense"); *Plant v. Merrifield Town Ctr. Ltd. P'ship*, 2008 WL 4951352, at *2 (E.D. Va. Nov. 12, 2008) (same); *Burk v. Contemp. Home Servs., Inc.*, 2007 WL 2220279, at *2 (W.D. Wash. Aug. 1, 2007) (unique "offset defense"); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 391-92 (D.N.J. 1998) (same). Indeed, "[b]y definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23." *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 950 (10th Cir. 2003); *see also Hall*, 140 F.3d at 1196 (a plaintiff "is not a proper representative of the class where he himself lacks standing to pursue the claim"). Under these authorities, neither Wilkins nor Watson remotely satisfies the typicality or adequacy requirements for class certification.

### B. Wilkins Is Subject To Further Unique Defenses Because She Never Paid The Lone Fee She Challenges.

The typicality and adequacy problems go even deeper for Wilkins. Unlike many putative class members, she never paid a challenged fee. As Wilkins admits, she did not pay the December 19, 2017 return item fee that she challenges here. Doc. 88-3 at 61 (S. Wilkins Dep.); Doc. 83 ¶ 10 (Hunter Decl.); Doc. 88-20 at 3-4 (Wilkins Rog. Resp.). And Simmons has decided to forgo any efforts to recover that fee. Doc. 83 ¶ 31 (Hunter Decl.). The resulting lack of injury subjects Wilkins to yet more unique defenses that will continue to be a focus of any further litigation.

First, she has no Article III standing because she lacks the required "injury in fact." *Steel Co.*, 523 U.S. at 103. Courts routinely hold that a plaintiff who did not pay challenged fees or charges has no injury-in-fact and therefore no standing. *See Dog Walkin Divas*, 2021 WL 2309675, at *2 (plaintiff has no "injury in fact" when it "never paid" challenged bank fees); Doc. 80 at 42 (Def.'s MSJ Br.) (collecting cases).

Second, Wilkins has no actual or compensatory damages. That is fatal to her breach-of-contract claim, for "[d]amages are an essential element of a breach-of-contract claim."

*Brookewood, Ltd. P'ship v. DeQueen Physical Therapy & Occupational Therapy, Inc.*, 547 S.W.3d 461, 467 (Ark. Ct. App. 2018); *see also Walls v. Sagamore Ins. Co.*, 2009 WL 890528, at *4 & n.9 (W.D. Ark. Mar. 31, 2009) (individuals who "were not damaged by the [defendant's challenged practice] …. do not have breach of contract claims"). And even if it were not fatal to her claim, it certainly would be fatal to her damages request. *See* Doc. 80 at 43 (Def.'s MSJ Br.).

Third, Wilkins did not confer a benefit on Simmons that would be inequitable to retain, a fundamental element of an unjust-enrichment claim. *See Withco, LLC v. Republic Servs. of Tenn., LLC*, 818 F. Supp. 2d 1040, 1052-53 (M.D. Tenn. 2011). Courts consistently reject unjust-enrichment claims where the alleged "enrichment" did not occur. *See id.* at 1054 (unjust-enrichment claim failed where plaintiffs "ha[d] not produced evidence that they actually provided valuable goods or services to [defendant]"); Doc. 80 at 37-38 (Def.'s MSJ Br.) (collecting cases).

These defenses should defeat Wilkins's claims. *See* Doc. 80 at 37-38, 41-43 (Def.'s MSJ Br.). And they certainly would remain a focus of Simmons's litigation strategy. But the defenses would have no bearing on, and could distract from, the claims of the many other putative class members who paid challenged fees. The defenses based on Wilkins's failure to pay a challenged fee are therefore exactly the kind of unique defenses that preclude typicality and adequacy findings. *See, e.g.*, *Milk Prods.*, 195 F.3d at 437 (unique standing defense); *Hudock v. LG Elecs. U.S.A., Inc.*, 2020 WL 1515233, at *5 (D. Minn. Mar. 30, 2020) (unique defense based on refund of challenged charges), *rev'd on other grounds*, 12 F.4th 773 (8th Cir. 2021); *Coughlin v. Sears Holdings Corp.*, 2010 WL 4403089, at *5 (C.D. Cal. Oct. 26, 2010) (unique no-injury defense); *supra* pp. 19-20.

### C.   Wilkins Is Subject To More Unique Defenses Because She Breached The Customer Agreement Long Before Simmons Assessed Her Challenged Fee.

Still more unique defenses against Wilkins arise from the fact that she breached her Customer Agreement long before Simmons assessed the fee she challenges. Those defenses, too, give Wilkins atypical claims and make her an inadequate class representative.

The Customer Agreement requires that customers who overdraft their accounts both repay their negative balances without delay and bring their accounts to a positive balance at least once every thirty days. Doc. 88-6 at 2 (Terms); Doc. 88-6 at 15 (ODP Disclosure). Wilkins violated both of those requirements in November 2017. By November 22, her account balance had been negative for 30 days, and it never again became positive. Doc. 83 ¶¶ 5-6 (Hunter Decl.); Doc. 88-11 at 8 (11/22/17 Ltr.). Wilkins therefore was in breach of the Customer Agreement for nearly a month before Simmons assessed the December 19 fee that she challenges.

This chronology prevents Wilkins from establishing an essential element of her breach-of-contract claim—that she "did what the contract required." *Ramthun v. Bryan Career Coll.-Inc.*, 93 F. Supp. 3d 1011, 1023 (W.D. Ark. 2015) (citing Ark. Model Jury Instr.—Civil 2401). As the Court has recognized, the key issue for that element is "who committed the first material breach." Doc. 41 at 4 (MTD Order); *accord Mobil Expl. & Producing N. Am., Inc. v. Graham Royalty Ltd.*, 910 F.2d 504, 507 (8th Cir. 1990) ("Where one party breaches a contract and defends that the other party did so first, defendant's obligation to perform may be discharged if plaintiff's breach is material and sufficiently serious."). The record here gives Simmons a compelling argument that Wilkins breached first. *See Fairpark, LLC v. Healthcare Essentials*, 381 S.W.3d 852, 857 (Ark. Ct. App. 2011) ("breach of a lease by one contracting party … release[d] the other party from its contractual duties" because the "first breach [was] material and sufficiently serious"); Doc. 80 at 34-36 (Def.'s MSJ Br.).

The same record facts also give Simmons a compelling defense to Wilkins's unjust-enrichment claim. *Id.* at 39-40. A plaintiff who commits a "contractual breach" related to a matter on which it seeks equitable relief "does not have [the] clean hands" required for such relief. *Hocker v. N.H. Ins. Co.*, 922 F.2d 1476, 1486 (10th Cir. 1991). And such clean-hands defenses will defeat unjust-enrichment claims. *See Fuller v. Cmty. Nat'l Bank*, --- S.W.3d. ----, 2020 WL 1485696, at *5 (Tenn. Ct. App. Mar. 27, 2020).

Again, these defenses against Wilkins are unique; many putative class members would not have been in breach of the Customer Agreement when they incurred challenged fees. And the defenses have been, and will continue to be, front and center in this litigation. *See* Doc. 80 at 34-36, 39-40 (Def.'s MSJ Br.). The defenses therefore provide further support for denying class certification on typicality and adequacy grounds. *See, e.g.*, *Mazur*, 257 F.R.D. at 568–69 (unclean-hands defense made plaintiff "atypical"); *Plant*, 2008 WL 4951352, at *2 (unclean-hands defense refuted typicality and adequacy); *Gresser v. Wells Fargo Bank, N.A.*, 2014 WL 1320092, at *3 (D. Md. Mar. 31, 2014) (typicality absent due to varying contract defenses).

### D. The Untimeliness Of Watson's Unjust Enrichment Claim Precludes Him From Representing The Class.

Watson, too, faces a defense specific to him that renders his claims atypical and makes him an inadequate class representative. His unjust-enrichment claims are untimely. That fact not only creates a unique defense, it also places Watson outside the proposed class.

"Claims for unjust enrichment in Arkansas are subject to a three-year statute of limitations." *Graham v. Catamaran Health Sols. LLC*, 940 F.3d 401, 408 (8th Cir. 2017) (citing Ark. Code § 16-56-105). Here, the *latest* fee Watson challenges was assessed on February 9, 2016 (Doc. 88-21 at 4 (Watson Rog. Resp.))—more than *four years* before the April 14, 2020 filing date

of the original complaint in this case. Doc. 1 (Compl.). Watson's unjust-enrichment claims are therefore untimely.

Many decisions recognize that a unique statute-of-limitations defense makes a plaintiff atypical and inadequate. *See, e.g.*, *Dvorak v. St. Clair Cnty., Ill.*, 2018 WL 514326, at *4 (S.D. Ill. Jan. 23, 2018) ("Plaintiffs' claims are not sufficiently typical of the class to support certification because their claims are subject to a statute of limitations defense."); *Marquis v. Tecumseh Prod. Co.*, 206 F.R.D. 132, 161-62 (E.D. Mich. 2002) (similar); *Leroy v. Paytel III Mgmt. Assocs., Inc.*, 1992 WL 367090, at *3 (S.D.N.Y. Nov. 24, 1992) (similar). There is no reason for this Court to reach a different conclusion here.

Indeed, the untimeliness of Watson's unjust-enrichment claim takes him outside of the proposed class, which Plaintiffs define in terms of fees charged "within the applicable statute of limitations." Doc. 90 at 1 (Class Cert. Mot.). And that fact makes it categorically impossible for Watson to represent any class asserting unjust-enrichment claims. *See E. Tex. Motor*, 431 U.S. at 403 ("a class representative must be part of the class"); *Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir. 1997) ("[plaintiff] is not and cannot be a class member because his claim is time barred; consequently, he cannot represent the class"); *Lindblom v. Santander Consumer USA, Inc.*, 2018 WL 573356, at *5 (E.D. Cal. Jan. 26, 2018) ("The class is defined as claims within the statute of limitations. Plaintiff's claim does not arise within the statute of limitations. Hence, the Court finds that she cannot be an adequate representative.").

### E.   Plaintiffs Cannot Represent Those Who Incurred Challenged Fees On Checks Because Neither Plaintiff Challenges A Fee On A Check.

Plaintiffs also cannot adequately represent the putative class on any claims related to fees assessed on resubmitted checks. Plaintiffs lack such claims because all of their challenged fees relate to ACH transactions rather than checks. Doc. 88-20 at 3-4 (Wilkins Rog. Resp.); Doc. 88-

21 at 3-4 (Watson Rog. Resp.). They therefore cannot represent class members challenging fees related to checks.

A core principle of Rule 23's adequacy requirement is that "a class representative must … 'possess the same interest and suffer the same injury' as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). Otherwise, the representative cannot be counted on to vigorously litigate the interests and injuries of all class members. *See Milk Prods.*, 195 F.3d at 437 ("A named plaintiff who lacks the desire to 'vigorously pursue' the interests of potential class members is not a fair and adequate representative of the class."). Nor would it be appropriate for the outcome of a representative's claims to control the outcome of the entire class's claims. *See id.* at 436 (adequacy endures that "class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence").

This suit proves the point. Wilkins and Watson have no reason to litigate the question of whether Simmons properly assessed fees on resubmitted *checks*. They incurred no such fees. Their only concern is whether Simmons properly assessed fees on resubmitted *ACH transactions*. They therefore have no incentive or ability to litigate questions arising from the fact that, unlike ACH transactions, ordinary paper checks are not subject to the Nacha Rules incorporated into the Customer Agreement. Nor would their claims allow adjudication over the method for identifying challenged fees on checks that their expert proposes, which is quite different from the method he proposes for identifying challenged fees on ACH Entries. *See* Doc. 88-26 at 53-54, 79, 101-02, 142-44 (Olsen Dep.). Wilkins and Watson thus are not adequate stand-ins for putative class members asserting check-related claims.

Indeed, the Supreme Court has repeatedly ruled that "even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been

suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357-58 (1996) (suit could not obtain judgment on conduct that allegedly affected class but not named plaintiff); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). That rule applies here and deprives Plaintiffs of standing to press any claims with respect to fees assessed on resubmitted checks. *See, e.g.*, *Green v. Skyline Highland Holdings LLC*, 2018 WL 3800240, at *4 (E.D. Ark. June 12, 2018) ("Plaintiffs cannot simply rely on allegations of damages to unidentified class members to support their breach of contract claim.").

Without such standing, Plaintiffs cannot represent any class asserting claims that Simmons wrongfully assessed fees on resubmitted checks. *See, e.g.*, *Hall*, 140 F.3d at 1196 ("[Plaintiff] is not a proper representative of the class where he himself lacks standing to pursue the [class] claim."); *Bennett v. Nucor Corp.*, 2005 WL 1773948, at *3 (E.D. Ark. July 6, 2005) (plaintiff without claims for on-the-job discrimination could not be representative for class asserting such claims). Class certification therefore must be denied as to any check-based claims. *See Gen. Tel.*, 457 U.S. at 156 (adequacy and other Rule 23(a) "requirements effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'").

### F. Plaintiffs' Personal Circumstances Make Them Inadequate Class Representatives.

The unusual personal circumstances of each Plaintiff also preclude any adequacy finding. That is most clear for Watson, who has an undeniably serious mental health condition and an extensive criminal history. But it is true for Wilkins as well, given her acknowledged deficits.

Watson has multiple personality disorder, also known as dissociative identity disorder. Doc. 88-4 at 12 (D. Watson Dep.); *Watson*, 2009 WL 4730927, at *7-8. The condition is "characterized by two or more distinct personality states … , accompanied by related alterations in affect, behavior, consciousness, memory, perception, cognition, and/or sensory-motor functioning" as well as "[r]ecurrent gaps in the recall of everyday events, important personal information and/or traumatic events." Yount Ex. G at 292 (DSM-5). For Watson, the condition is serious enough to qualify him for Social Security disability payments and to "affect [his] memory." Doc. 88-4 at 12 (D. Watson Dep.). His wife further reports that Watson's condition is progressive and only getting worse. Yount Ex. E at 95 (M. Watson Dep.). Watson even had to pause his deposition because he was having an "episode." Doc. 88-4 at 183 (D. Watson Dep.).

These circumstances—a serious health condition that impairs memory and interferes with litigation duties—are more than enough to find that Watson cannot adequately represent a class. *See, e.g.*, *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 589 (W.D. Tex. 2002) (age and health conditions precluded adequacy finding); *Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183, 195 (D. Kan. 1991) (similar). They call into question Watson's ability to carry out the duties of a class representative, including participation at trial, choices about litigation and settlement strategy, and supervision of class counsel. They also create credibility issues that could become a focus at trial. What is more, Watson has refused to answer discovery about his diagnosis, preventing Simmons, the proposed class, and the Court from knowing more about his condition and how it manifests. Yount Ex. B at 11 (4/22/21 RFP Resp.); Yount Ex. C at 3-5 (11/19/21 RFP Resp.); Yount Ex. D at 2-7 (12/23/21 Rog. Resp.).

The adequacy concerns do not end with Watson's multiple-personality-disorder diagnosis. Watson has a history of drug abuse. *Watson*, 2009 WL 4730927, at *8. He has been convicted of

various crimes, including theft of property, resisting arrest, and failure to appear in court. Doc. 88-4 at 13-18 (D. Watson Dep.); Yount Ex. H (D. Watson Crim. Records). And he currently is under a restraining order for threatening a family member. Yount Ex. J (Maxfield Aff.); Yount Ex. K (Order of Protection). All of that only adds to the reasons that Watson would be a thoroughly inadequate class representative. *See, e.g.*, *Porath v. Logitech, Inc.*, 2019 WL 6134936, at *5 (N.D. Cal. Nov. 18, 2019) (lengthy criminal record and period of drug abuse disqualified plaintiff from being class representative); *Pagan v. The New Wilson's Meats, Inc.*, 2011 WL 1876027, at *7 & n.10 (E.D. Pa. May 17, 2011) (refusing to allow plaintiff with robbery conviction to serve as class representative); *Schleicher v. Wendt*, 2009 WL 761157, at *3 (S.D. Ind. Mar. 20, 2009) (plaintiff with expunged fraud conviction over ten years old was inadequate class representative), *aff'd*, 618 F.3d 679 (7th Cir. 2010); Fed. R. Evid. 609(a), (b) (allowing admission of criminal convictions to impeach character for truthfulness).

Wilkins, to be sure, does not labor under as many disabilities as Watson. But she, too, suffers from mental health conditions that "affect [her] memory." Doc. 88-3 at 11-12 (Wilkins Dep.). She has trouble remembering "what happened at [her] time with Simmons Bank," which is what this case is about. *Id.* And her conditions affect her "ability to give a deposition" and made her non-responsive to her attorneys for weeks on end. *Id.* at 11-12, 119-20. Indeed, she failed to answer Simmons's counterclaims for months, resulting in a default judgment being entered against her. Doc. 62 (Default Order). A class is entitled to more capable and responsive representation. *See, e.g.*, *Krim*, 210 F.R.D. at 589; *Edgington*, 139 F.R.D. at 195.

### G. Plaintiffs' Ignorance Of The Case Also Makes Them Inadequate Class Representatives.

Plaintiffs also cannot satisfy Rule 23's adequacy requirement because they have no meaningful understanding of this case or their representative responsibilities.

Plaintiffs say they understand the "general nature of the case" and their duty to act "in the best interest of the class" (Doc. 91 at 8 (Class Cert. Br.)), but their depositions show that they know almost nothing about this case. *See supra* pp. 8-9, 10. Neither Plaintiff had a grasp on what fees they are challenging, what their claims are, or what contract provision Simmons supposedly violated. Doc. 88-3 at 62-73 (Wilkins Dep.); Doc. 88-4 at 38, 43, 56-57, 87, 90-91, 107, 166-67 (D. Watson Dep.). Nor were Plaintiffs familiar with key orders, filings, and discovery responses. Doc. 88-3 at 76, 92, 111, 113-14, 121 (Wilkins Dep.); Doc. 88-4 at 97-98, 132, 178 (D. Watson Dep.). Plaintiffs also exhibited little understanding of what it means to be a class representative; indeed, Wilkins denied any desire to have class members bound by the outcome of her claims. Doc. 88-3 at 100, 171-72 (Wilkins Dep.); Doc. 88-4 at 182 (D. Watson Dep.). And both Plaintiffs—but especially Watson—repeatedly deferred to counsel on a wide variety of matters (Doc. 88-3 at 111, 113, 116 (Wilkins Dep.); Doc. 88-4 at 33, 39, 40, 56, 58, 76-78, 83-84, 87-93, 97, 100, 106, 110-11, 113, 123, 125, 132, 134, 141, 166, 178, 185-86, 191-92 (D. Watson Dep.)), a practice that has led them to repeatedly fail to comply with pleading, disclosure, and discovery obligations. *See supra* p. 12.

Plaintiffs' ignorance of the details of their case and their corresponding abdication to counsel provides ample reason to deny class certification on adequacy grounds. *See, e.g.*, *Pipes*, 254 F.R.D. at 550 ("lack of knowledge and understanding regarding basic policy terms and procedures and … lack of concern regarding the interests of other class members" precluded adequacy finding); *Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 569 (D. Minn. 2003) (proposed class representative was inadequate where "he is confused about the action and is unfamiliar with his own complaint, his claims and the parties involved"); *Kassover v. Comput. Depot, Inc.*, 691 F. Supp. 1205, 1213–14 (D. Minn. 1987) (no adequacy where "plaintiff is unfamiliar with several

critical aspects of this litigation" and "plaintiff has contented himself to rely entirely upon his attorney's direction"), *aff'd*, 902 F.2d 1571 (8th Cir. 1990).[10]

*    *    *

Any one of the typicality and adequacy defects detailed above would warrant denying class certification. Together, they compel it. Indeed, it is hard to imagine two plaintiffs less suited to be class representatives than Wilkins and Watson. No putative class member would ever choose to have Wilkins or Watson—with their narrow and doomed claims and their unusual personal circumstances—represent them in a class action. And Rule 23 does not allow it.

## II.    Individual Questions Prevent Class Certification Under Rule 23(b)(3).

Rule 23(a)'s typicality and adequacy requirements are far from the only barrier to class certification. The proposed class also does not satisfy the predominance and superiority requirements of Rule 23(b)(3).

Plaintiffs have not proven that any "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry requires a "rigorous analysis" of whether "the same evidence will suffice for each [class] member to make a prima facie showing" of the defendant's liability. *Avritt*, 615 F.3d at 1029. And that analysis must include questions of damages and affirmative defenses. *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1038 (8th Cir. 2020) (affirmative defenses); *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) (damages issues). Here, there are few if any common questions the determination of which would "resolve an issue that is central to the validity of each [class member's] claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The central issues for

---

[10]   The cases Plaintiffs cite about the required knowledge and involvement of proposed class representatives (Doc. 91 at 17-18) are not to the contrary. They neither dispute the principle that ignorance of a case can make class representatives inadequate nor involve the same degree of ignorance (and other red flags) as this case.

each of Plaintiffs' claims turn on evidence that would vary from class member to class member. Extrinsic evidence, contract compliance, good faith and fair dealing, unjust enrichment, injury and damages, and affirmative defenses all vary across class members. Common questions thus do not predominate over individual ones.

Nor is a class action "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The need for individual inquiries into virtually every issue, including class membership, would make any class litigation an unmanageable morass. And class litigation is unnecessary since any aggrieved putative class member can pursue no-cost individual arbitration.

### A.   The Breach-Of-Contract Claims Require Individualized Analyses.

Neither liability nor damages on the putative class's breach-of-contract claims could be litigated without extensive individual inquiries that would swamp any common, class-wide questions. "To prevail on a breach of contract claim in Arkansas, the plaintiff must show that: (1) the plaintiff and defendant had a contract; (2) the contract required the defendant to perform a certain act; (3) the plaintiff did what the contract required; (4) the defendant did not do what the contract required; and (5) the plaintiff was damaged by the breach." *Ramthun*, 93 F. Supp. 3d at 1023. Plus, because Plaintiffs invoke the covenant of good faith and fair dealing, the Court must consider whether Simmons acted unfairly toward each class member in performing its contractual obligations. *See* Ark. Model Jury Instr., Civil AMI 2426. Evidence on these issues is highly individual.

### 1.   Different Extrinsic Evidence.

Plaintiffs contend that the Customer Agreement is ambiguous notwithstanding the incorporated Nacha Rules and undisputed industry evidence confirming that each ACH Entry is an "item" on which Simmons can assess a fee. *See* Doc. 91 at 3. If Plaintiffs were right—and for

reasons explained in Simmons's summary-judgment papers they are not—then individual extrinsic evidence would become highly relevant.

When contract language is ambiguous, Arkansas law makes extrinsic evidence admissible to resolve its meaning. *Alexander v. McEwen*, 239 S.W.3d 519, 523 (Ark. 2006); *Tri-Eagle Enters. v. Regions Bank*, 373 S.W.3d 399, 403-04 (Ark. Ct. App. 2010). Plaintiffs nonetheless argue that the Court must ignore extrinsic evidence because contractual ambiguities supposedly must be construed against Simmons, as the contract drafter. Doc. 91 at 14. Plaintiffs pretend that Arkansas case law supports that notion, but neither of the cases Plaintiffs cite says anything remotely like that. *Hurt-Hoover Invs., LLC v. Fulmer*, 448 S.W.3d 696, 704 (Ark. 2014) (extrinsic evidence must relate to parties' common understanding); *Alexander*, 239 S.W.3d at 522 (contract language must be given meaning intended by parties). And Arkansas law actually says *the opposite*: "[T]he rule [that a contract must be interpreted against the drafter] does not apply … where disputed extrinsic evidence is offered to establish what the ambiguous language means." *Tri-Eagle*, 373 S.W.3d at 404; *see also* Ark. Model Jury Instr., Civil AMI 2424 (same).

Plaintiffs also assert that individual extrinsic evidence is irrelevant because standardized contracts of adhesion like the Customer Agreement should be interpreted alike for all those subject to the contract. Doc. 91 at 20-23. But none of Plaintiffs' supporting authorities come from Arkansas or any federal court in the Eighth Circuit. In fact, Plaintiffs' argument is *directly contrary to* the leading Eighth Circuit decision on the subject, *Avritt*. There, the Eighth Circuit held that individual "extrinsic evidence about what each party intended when it entered the contract" could be introduced in a dispute over the interpretation of ambiguous language in a materially uniform annuity contract. *Avritt*, 615 F.3d at 1030. As a result, the Eighth Circuit further explained, the

defendant's "liability to the entire class for breach of contract cannot be established with common evidence," which precluded class certification. *Id.*[11]

*Avritt* is far from the only decision that supports Simmons's position. *See, e.g.*, *EQT Prod. Co. v. Adair*, 764 F.3d 347, 369-70 (4th Cir. 2014) ("likely need to consider" individual "course of performance" evidence to interpret form leases "strongly affects the predominance analysis"); *Monaco v. Bear Stearns Cos.*, 2012 WL 100006987, at *6-8 (C.D. Cal. Dec. 10, 2012) (denying class certification because "extrinsic evidence is needed to determine the intent of the putative Subclass members" in interpreting ambiguous uniform loan documents); *Adams v. Kan. City Life Ins. Co.*, 192 F.R.D. 274, 281-82 (W.D. Mo. 2000) (similar). Indeed, this jurisprudence extends to bank-fee cases. In *Compass Bank*, the court rejected class certification in a contract action challenging practices that allegedly resulted in improper overdraft fees, because "proof of the plaintiff customers' breach-of-contract claims will require individual inquiry into each plaintiff's reasonable contemplation as to the Compass defendants' practice, any course of dealing between the parties, and/or any oral statements made to the plaintiff customers by individual employees of the Compass defendants." *Compass Bank*, 823 So. 2d at 677.

To be sure, the *TD Bank* decision and a few others cited by Plaintiffs (Doc. 91 at 14-15) have declined to deny class certification based on the possibility of individual extrinsic evidence. Those decisions are distinguishable for the reasons already described. *See supra* pp. 14-15 & n.7.

---

[11]   In passing and for other purposes, Plaintiffs cite two Eighth Circuit decisions that approved class certification for contract-related claims: *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371 (8th Cir. 2018), and *McKeage v. TMB, LLC*, 847 F.3d 992 (8th Cir. 2017). Neither decision is relevant here. *Stuart* involved an alleged breach of an unambiguous contract provision definitively interpreted by the Arkansas Supreme Court, with no mention of possible extrinsic evidence. 910 F.32d at 375-76. *McKeage* involved an alleged violation of a Missouri statute prohibiting unauthorized practice of the law based on an unambiguous contract provision charging a document fee. 847 F.3d at 996, 998-99.

*And none applied Arkansas or Eighth Circuit law*. Beyond that, the statements that Plaintiffs quote from *TD Bank* about the supposed need to broadly allow class actions for disputes over consumer checking-account agreements (Doc. 91 at 11, 15) are at odds with the fundamental principle that class actions are the "exception to the usual rule" of individual litigation and cannot be used to "'abridge, enlarge or modify any substantive right'" to put on individual evidence. *Wal-Mart*, 564 U.S. at 348, 367 (quoting 28 U.S.C. § 2072(b)).

In accord with that principle, Simmons intends to exercise its right to put on individual extrinsic evidence if this case proceeds to trial on a class basis. *See Avritt*, 615 F.3d at 1030; *Alexander*, 239 S.W.3d at 523. That evidence would include communications that class members had with Simmons about fees associated with resubmitted transactions. It would also include individual analyses of class-member fee histories showing a course of performance regarding "retries." Simmons would likewise offer evidence that customer experiences at other banks led certain customers to expect or understand that each merchant attempt to collect payment would be an "item" on which fees could be assessed. And Simmons would seek testimony from certain class members about their understanding of the Customer Agreement and their expectations about Simmons's fee practices, just as it asked Wilkins and Watson about those matters. *See* Doc. 88-3 at 63-73, 88-89 (Wilkins Dep.); Doc. 88-4 at 89-91, 107-08 (D. Watson Dep.). As in *Avritt* and *Compass Bank*, the need to consider all of this individual extrinsic evidence makes it impossible for any common contract questions to predominate over the individual ones.

### 2.     Different Evidence On Compliance With Customer Agreement.

Individual breach-of-contract questions predominate for another reason. A plaintiff cannot prevail on a breach-of-contract claim under Arkansas law unless "the plaintiff did what the contract required." *Ramthun*, 93 F. Supp. 3d at 1023. And it matters "who committed the first material

breach." Doc. 41 at 4 (MTD Order); *see supra* p. 22. But whether and when a putative class member violated the Simmons Customer Agreement is not subject to common, class-wide proof.

A putative class member could have breached the Customer Agreement in innumerable ways: overdraft privilege abuse, unlawful account activity, failure to report unauthorized signatures, failure to protect account information, and so on. *See, e.g.*, Doc. 88-6 at 2-6 (Terms); Doc. 88-6 at 15 (ODP Disclosure). Only careful analysis of the particulars of a customer's account activity and relationship with Simmons could establish whether and when any breach occurred. Then the materiality of the breach would have to be assessed based on the customer's particular relationship with Simmons. Finally, the timing of any breach would have to be compared to that of the challenged fees, which involves its own set of individual inquiries. *See infra* pp. 39-41.

What this Brief has already said about Wilkins's violation of the Customer Agreement confirms the individual nature of the necessary inquiries. Determining that Wilkins failed to bring her account balance positive for 30 days, thereby materially breached the Customer Agreement, and did so before she incurred the one fee she challenges, required a time-consuming, day-by-day analysis of her account activity, her account balance, the communications from Simmons about her balance and fees, Simmons's actions in response to her negative balance, and the return and paid item fees she incurred. *See supra* Part I.C. None of that is common, class-wide evidence. Nor can it be analyzed in an automated fashion by applying some kind of formula to the bank's electronic transaction data.

Whether putative class members "did what the contract required" is therefore an individual, not common, question. As such, that question adds to Plaintiffs' inability to establish that common questions predominate. *See, e.g.*, *Do v. First Fin. Sec., Inc.*, 2017 WL 11634363, at *2 (C.D. Cal. Nov. 2, 2017) ("[a]djudicating whether [the defendant] breached the contract as to a particular

member of the class requires a case-by-case determination of whether [the defendant] was relieved of the duty to pay because of that particular plaintiff's failure to perform," which means "[t]here is no common answer to the question of whether [the defendant] breached the contract"); *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 512 (D. Minn. 2014) (similar); *Dungan v. Acad. at Ivy Ridge*, 249 F.R.D. 413, 417 n.2, 427 (N.D.N.Y. 2008) (similar), *aff'd*, 344 F. App'x 645 (2d Cir. 2009).

### 3.     **Different Good-Faith-And-Fair-Dealing Evidence**.

Plaintiffs ignore that they have invoked the implied covenant of good faith and fair dealing in support of their breach-of-contract claims. *See* Doc. 15 ¶¶ 104-09 (Am. Compl.). Perhaps that is not surprising. If the Court finds that the Customer Agreement does not affirmatively authorize the challenged fee practices, the resulting need to litigate Simmons's good faith and fair dealing would add even more individual questions to any class litigation of contract claims.

"[E]vidence of the parties' justified expectations would be required to establish a breach of the duty of good faith and fair dealing." *Avritt*, 615 F.3d at 1032. And "those expectations are likely to vary among members of the putative class." *Id.* Different class members would have had different understandings of whether fees would be based on merchant payment requests or underlying transactions, different experiences with fees on "retries," and different interactions with Simmons personnel regarding such fees. *See supra* p. 34. Because common evidence is not available on those subjects, common questions would not predominate in class litigation of Simmons's good faith and fair dealing, just as they did not in *Avritt*, 615 F.3d at 1032.

Other decisions reach the same conclusion. That includes *Brooks*, which rejected class certification for good-faith-and-fair-dealing claims alleging improper overdraft fees because "individualized determinations would be required to establish what type of notice [regarding the challenged policies] was given, when it was given, and [how] individual preferences varied

[among class] members." *Brooks*, 103 P.3d at 50-53; *see also Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 353 (D. Ariz. 2009) ("As a good faith and fair dealing claim requires consideration of each insured's reasonable expectations, individual issues would outweigh any common ones so that the Court cannot certify a class."). These authorities point the way here.

### 4.   Different Standing, Injury, And Damages Evidence.

Another fatal dissimilarity among putative class members arises from their need to prove injury and damages. "[I]njury in fact" is a requisite of the Article III "standing" that "each [class] member must have" "in order for a class to be certified." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778-79 (8th Cir. 2013); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages."); *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 987 (8th Cir. 2021) ("a class cannot be certified if it contains members who lack standing"). Injury also is an element of liability for breach of contract. *Brookewood*, 547 S.W.3d at 467; *Walls*, 2009 WL 890528, at *4 & n.9. And, of course, Plaintiffs and class members must prove the compensatory damages they seek. *Hedger Bros. Cement & Materials v. Stump*, 10 S.W.3d 926, 930 (Ark. Ct. App. 2000).

Plaintiffs cannot prove any of those things for all class members in a single stroke or through some automated process. Only individual analyses of transaction and fee information could possibly allow anyone to determine (a) which customers incurred challenged fees, (b) the amount of those fees for each customer, or (c) the appropriate offsets for reversed fees and charged-off negative account balances.

Plaintiffs propose to have their expert, Arthur Olsen, use an "algorithm" to programmatically identify all of the challenged fees for each Simmons customer. Doc. 91 at 23-24. That "algorithm" supposedly would search Simmons's electronic transaction data for two or more ACH Entries in the same amount from the same merchant within the same ten-business-day

period that each gave rise to a return or paid item fee. Doc. 88-26 at 53-54, 79 (Olsen Dep.). It supposedly would also look for ACH Entries with a "RETRY PYMT" notation. *Id.* at 104. Plaintiffs further represent that, with "additional information," Olsen could account for the reversed fees and charged-off negative account balances that Olsen admits "would affect the damages." Doc. 91 at 23-24; *see also* Doc. 88-25 ¶¶ 27-29 (Olsen Rep.).[12]

A threshold problem with Plaintiffs' proposed approach is that it is, at best, only partially specified. Neither Plaintiffs nor Olsen explain crucial details of the approach. How will Olsen link ACH Entries to fees? How will Olsen use "RETRY PYMT" notations? What additional information would Olsen need to address reversals and charge-offs? How would Olsen account for reversed fees? How would Olsen account for charge-offs? Plaintiffs do not say. Nor does Olsen. Plaintiffs' proposed "algorithm" thus provides no reliable proof that individual injury and damages inquiries could be avoided. That defect is reason enough to deny class certification. *See, e.g.*, *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) ("When a class plaintiff presents a damages model that is vague, indefinite, and unspecific, or simply asserts … that there are unspecified 'tools' available to measure damages, the model amounts to 'no damages model at all,'" and thus will not support class certification).

Olsen's promises that he will later provide a "full analysis" of injury and damages (Doc. 88-26 at 15-16, 116-18 (Olsen Dep.)) do not call for a different result. As the Eighth Circuit has held, "if [plaintiffs] propose to use [an expert-developed] method to prove injury, they must show that it could work to prove classwide injury with common evidence." *Blades v. Monsanto Co.*, 400 F.3d 562, 575 (8th Cir. 2005). Having failed to even specify Olsen's proposed methodology,

---

[12] Olsen proposes a different (and largely unspecified) method for identifying challenged fees on checks (*see supra* n. 2), but Plaintiffs lack standing to pursue check-based claims on behalf of any class for reasons explained above. *See supra* Part I.E.

Plaintiffs have not carried that burden. *See, e.g.*, *id.*; *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187-88, 191 (3d Cir. 2001) (refusing to certify class based on promise of forthcoming "formula for calculating injury and damages"); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 176-77 (C.D. Cal. 2007) ("[I]t is 'simply not enough that Plaintiffs merely promise to develop in the future some unspecified workable damage formula. A concrete, workable formula must be described before certification is granted.'").

Lack of specification is far from the only problem with Plaintiffs' plan for determining injury and damages programmatically. More fundamentally, the plan would never work.

First, the central premise of the proposed "algorithm"—that ACH Entries from the same merchant for the same amount within the same ten business days are invariably resubmitted transactions—is dead wrong. There are many reasons other than resubmission that a merchant might send multiple ACH Entries for the same amount within ten business days. Doc. 88-2 ¶ 22 (Kwon Rep.). Some customers have weekly or even daily recurring payments for certain goods and services, like gym memberships, charitable donations, or parking lot fees. Some have transit or other accounts that reload from their Simmons account in the same amount when they reach a certain threshold. And some have regular, identical purchases, like a favorite coffee order or lunch delivery. Plaintiffs' "algorithm" therefore would be enormously overinclusive. *Id.* Only individual inquiries into each ACH Entry and underlying transaction could sort out which ACH Entries arose from "retries" and which did not.

Second, the "RETRY PYMT" notation is not a reliable indicator of a resubmitted transaction because it is only rarely used. The Nacha Rules did not require the notation until September 2015. Doc. 88-1 ¶ 49 (Nesbitt Rep.). Those Rules have never required the notation for recurring transactions, which account for most ACH transaction. *Id.* ¶ 50. And merchants often

omit the notation even when the Nacha Rules require it. *Id.* ¶ 50. Indeed, of the six fees challenged by Plaintiffs here, only one is associated with an ACH Entry including a "RETRY PYMT" notation. Doc. 83 ¶¶ 8, 14, 16, 20, 24, 27 (Hunter Decl.).

Third, for the period prior to November 2018, it is not possible to link ACH Entries to fees in any automated way. Simmons's electronic transaction data does not provide linking information before that date. Doc. 88-2 ¶¶ 25-31 (Kwon Rep.). The only way to reliably determine which fees relate to which ACH Entries is to examine account statements and NSF/Overdraft Notices for each fee and infer relationships from date, balance, posting-order, and other information. *Id.* ¶¶ 40-41. That process is necessarily fee- and customer-specific.

Fourth, fee reversals cannot be linked to particular fees in Simmons's electronic transaction data. Olsen acknowledges that fact but maintains that he can nonetheless account for reversals by making assumptions. Doc. 88-25 ¶ 28 (Olsen Rep.). Both of the assumptions mentioned by Olsen, however, are wildly inaccurate. Assuming that a reversal of a challenged fee would occur within 30 days misses all of the many reversals that occur later. Doc. 88-2 ¶ 34 (Kwon Rep.). Likewise, assuming that a reversal relates to the most recent fee misses the many times that reversals occur after intervening fees. *Id.* ¶ 35. And neither of Olsen's potential assumptions would correctly apply reversals of multiple fees effected through a single credit. *Id.* ¶ 36. As the fee challenged by Watson but reversed by Simmons confirms, the only reliable way to determine whether Simmons reversed a challenged fee is through inferences from individual analyses of NSF/Overdraft Notices, reversal documentation, customer and bank staff recollections, account activity, and customer communications. Doc. 88-2 ¶¶ 25-31 (Kwon Rep.); Doc. 83 ¶ 17 (Hunter Decl.).

Fifth, accounting for charged-off negative account balances also requires individual inquiries. Olsen offers nothing but empty assurances that he can account for those balances in a

systematic way. Doc. 88-25 ¶ 29 (Olsen Rep.). As the evidence regarding the negative balances accrued by Wilkins and the Watsons confirm, the truth is that only individual investigation could determine which customers have charged-off negative balances, whether those balances include challenged fees, and how any customer settlements or partial payments affect those fees. Doc. 88-2 ¶ 39 (Kwon Rep.); Doc. 83 ¶¶ 4-29 (Hunter Decl.). And doing those things would be especially difficult in the period before November 2018 when information about the order in which Simmons posted credits and debits is not readily available. Doc. 88-2 ¶¶ 28, 39 (Kwon Rep.).

For all of these reasons, Plaintiffs will be unable to prove injury and damages for each putative class member with class-wide evidence or through any automated analysis.[13] And even if they tried, Simmons would put on individual class-member-specific evidence to rebut Plaintiffs' defective proof. As a result, injury and damages would be individual, not common, questions in any class litigation. *See Johannessohn*, 9 F.4th at 986 (rejecting class certification because "cases are not tried on the evidence of one party" regarding damages).

Under controlling Eighth Circuit precedents, common questions do not predominate when a plaintiff offers no reliable, class-wide way to prove injury or a defendant shows a need for individual injury determinations. *See, e.g.*, *Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 622-24 (8th Cir. 2021) (no class certification because "algorithm" proposed by plaintiff's expert would not eliminate need for individual analysis); *Blades*, 400 F.3d at 574-75 (same because "plaintiffs' expert did not show that injury could be proven on a classwide basis with common

---

[13]   That is especially true if the Court grants Simmons's pending, and well-founded, motion to exclude Olsen's testimony for being unreliable and unhelpful. *See* Doc. 86 (Def.'s *Daubert* Br.). Olsen's opinions are Plaintiffs' only purported basis for claiming that injury and damages are common issues. Doc. 91 at 23-25. Without those opinions, class certification would have to be denied. *See, e.g.*, *Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 382 (N.D. Fla. 2017); *Haley v. Kolbe & Kolbe Millwork Co.*, 2016 WL 1180203, at *1 (W.D. Wis. Mar. 25, 2016).

proof"); *Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 339 F.3d 1001, 1012 (8th Cir. 2003) (same because deciding whether class members "sustained damages" would require a court "to examine each individual class member's account, including offsets, advances, and other items"). Those precedents require denial of class certification here.

The same is true of the Eighth Circuit decisions holding that "a class cannot be certified if it contains members who lack standing." *Johannessohn*, 9 F.4th at 987; *Halvorson*, 718 F.3d at 778-79; *Avritt*, 615 F.3d at 1034. The putative class here would be filled with individuals who (like Plaintiffs) lack standing. Indeed, the class definition guarantees it by neither requiring *payment* of a challenged fee nor excluding fees *reversed* or *charged off*. *See* Doc. 90 at 1 (Class Cert. Mot.) (defining class as, "[a]ll persons who, within the applicable statute of limitations period, were charged Retry Fees – NSF or Overdraft Fees – on an item that had already been subject to an NSF Fee in a Simmons checking account"). Plus, Plaintiffs' "algorithm" is certain to both flag ACH Entries that do not arise from resubmitted transactions and wrongly attribute fees to flagged ACH Entries. *See supra* pp. 39-41.

Even if the problems with Plaintiffs' plan for identifying challenged fees and addressing reversals and charge-offs only went to damages, as Plaintiffs incorrectly suggest, they would still weigh heavily against class certification. Many decisions deny certification based on individual damages issues. *See, e.g.*, *Ebert*, 823 F.3d at 480 (no common-question predominance due to individual damages questions); *Hicks v. Sw. Energy Co.*, 330 F.R.D. 183, 195-96 (E.D. Ark. 2018) (similar); *Pipes*, 254 F.R.D. at 552 (E.D. Ark. 2008) (similar).

Plaintiffs are correct that, in certain bank-fee cases involving other banks, courts from outside the Eighth Circuit have certified classes in reliance on methodologies offered by Olsen for identifying challenged fees and calculating damages. *See* Doc. 91 at 24-25. But Plaintiffs gloss

over the key fact that distinguishes those cases from this one: In those cases, unlike here, Olsen had a fully defined methodology and showed that the defendants' data allowed successful application of his methodology to identify all challenged fees and fully calculate damages. When Olsen has faced significant limitations on transaction data and responded with untested generalities, like here, his opinions have been rejected and class certification has been denied. *See Taylor*, Minute Order at 2-3. In *Taylor*, the court concluded that "individual assessments from the bank records are necessary to determine the members of the class and liability" because those records did not include certain "absolutely necessary" data—including information linking reversals to fees—despite Olsen's assurances that he could identify challenged fees and calculate damages. *Id.* And *Taylor* is not alone in denying class certification because a bank's transaction data does not allow easy identification of allegedly improper fees. *See Shelley*, 2000 WL 1121778, at *9-11 ("the element of damages requires a series of individual determinations"); *Brooks*, 103 P.3d at 52-53 (describing need for manual review of records); *Compass Bank*, 823 So. 2d at 677 ("determining damages" required "individual inquiry"). The same conclusion applies here.

### 5. Different Evidence Regarding Affirmative Defenses.

Adjudicating class breach-of-contract claims also would require the Court to resolve Simmons's ratification and waiver defenses, which necessarily turn on individualized evidence. In Arkansas, "[s]ilence or acquiescence in the contract for any considerable length of time amounts to ratification." *Sims v. First Nat'l Bank, Harrison*, 590 S.W.2d 270, 274 (Ark. 1979). And waiver "occur[s] when one, with full knowledge of material facts, does something which is inconsistent with the right or [an] intention to rely upon the right," including "acquiescence." *Bethell v. Bethell*, 597 S.W.2d 576, 581–82 (Ark. 1980). Simmons would be able to assert those defenses against any putative class members who continued to incur fees on purported "retries" without complaint for "any considerable length of time" (*Sims*, 590 S.W.2d at 274), or after learning of the challenged

practice (*Bethell*, 597 S.W.2d at 582). But resolving those defenses would require analysis of each putative class member's unique knowledge, fee history, and course of dealing with Simmons.

That is why so many courts have pointed to individual ratification and waiver defenses in denying class certification. *See, e.g.*, *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 256–57 (5th Cir. 2020) (defenses that class members ratified or waived challenges to charges raised "risk of voluminous and individualized extrinsic proof defeating predominance"); *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1177–79 (11th Cir. 2010) (similar); *Gresser*, 2014 WL 1320092, at *6-8 (waiver); *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 95 F.R.D. 168, 178 (D. Del. 1982) (ratification). The same analysis applies here.

**B.      Plaintiffs' Unjust-Enrichment Claims Are Equally Individualized**.

Plaintiffs' unjust-enrichment claims are similarly beset by individualized questions that preclude class certification. Only individual inquiries into each putative class member's account history and other circumstances would allow the Court to determine which, if any, class members would have unjust-enrichment claims. Moreover, because Plaintiffs propose a multi-state class, further individual inquiries into the governing state law for each class member would be required.

Plaintiffs say nothing about why their unjust-enrichment claims supposedly warrant class certification. Doc. 91 at 23. Instead, they simply string-cite three bank-fee cases from outside the Eight Circuit that certified classes for unjust-enrichment claims based on the unsupported notion that a challenge to "uniform" policies and practices alone justifies certification. *TD Bank*, 325 F.R.D. at 160; *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 658 (S.D. Fla. 2012); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666, 680 (S.D. Fla. 2011). Cases from the Eighth Circuit and this District reject that notion. *See Avritt*, 615 F.3d at 1031, 1032 n.5 (denying class certification for unjust-enrichment claims in case involving form contract applicable to entire

class); *Johnson v. Ark. Convalescent Ctrs., Inc.*, 2013 WL 3874774, at *3 (E.D. Ark. July 25, 2013) (same despite common "lunch-deduction policy"); *Butcher v. Delta Mem'l Hosp.*, 2013 WL 1668998, at *8 (E.D. Ark. Apr. 17, 2013) (similar despite common overtime policy). In addition, the record here shows that predominating individual inquiries would be necessary to determine, under the laws of various states, whether Simmons received and unjustly retained any improper benefit and whether "clean hands" or voluntary-payment defenses apply to class members.

### 1.    Different Proof On The Elements Of The Claim.

Many decisions—including ones from this District and the Eighth Circuit—have recognized that unjust-enrichment claims are generally unsuitable for class treatment because they are inherently "fact-bound … turning case-by-case on individual circumstances." *Johnson*, 2013 WL 3874774, at *3; *see also, e.g.*, *Avritt*, 615 F.3d at 1032 n.5 (certification of unjust enrichment claim properly denied for lack of predominance); *Butcher*, 2013 WL 1668998, at *8 (unjust-enrichment claims "would require the consideration of individual evidence" making them unsuitable for class treatment). Indeed, "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).

This case is no exception. In Arkansas (where Watson resided and banked, Doc. 15 ¶ 7 (Am. Compl.)) and Tennessee (where Wilkins resided and banked, *id.* ¶ 5), an unjust-enrichment claim requires proof of some benefit to the defendant at the plaintiff's expense. *See, e.g.*, *Sparks Reg'l Med. Ctr. v. Blatt*, 935 S.W.2d 304, 307 (Ark. Ct. App. 1996); *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 480 (Tenn. Ct. App. 2016). But determining "whether accountholders actually were assessed and paid allegedly improper and unrefunded fees" would require "manual and individualized review of electronic data, documents, and testimony to piece together accountholder-specific data, account documentation, and other information from bank and non-

bank sources." Doc. 88-2 ¶ 15 (Kwon Rep.). Take Watson's challenged fee from January 11, 2016, for example. Watson did not pay that fee. Doc. 83 ¶¶ 20-22 (Hunter Decl.). But to reach that conclusion, the Court would have to analyze multiple months of bank statements, together with records relating to the Watsons' second Overdraft Repayment Plan and their account closure records. *See* Doc. 88-13 at 2-11 (Acct. Stmts.); Doc. 88-17 (Overdraft Repayment Plan); Doc. 88-28 at 2 (Deposit Inquiry).

Determining whether Simmons reversed a challenged fee also would require individual analysis. Doc. 88-2 ¶ 37 (Kwon Rep.). The Court would have to analyze account statements, written notices, online account activity, and internal communications for each putative class member "to determine the reason for the refund and which fee was subject to the refund." *Id.* ¶ 38. Again, Plaintiffs' own claims are illustrative—manual analysis of Watson's account history and deposition testimony was required to confirm that Simmons refunded one of Watson's challenged fees. *See* Doc. 83 ¶ 17 (Hunter Decl.); Doc. 88-2 ¶ 47 (Kwon Rep.).

Unjust enrichment also requires "some operative act, intent, or situation that makes the alleged enrichment … unjust and inequitable." *Ark. Dev. Fin. Auth. v. Wiley*, 611 S.W.3d 493, 499 (Ark. 2020). No claim for "recovery of money received can be based upon unjust enrichment when the recipient can show a legal or equitable ground for keeping it." *Whitley*, 465 S.W.2d at 911; *accord Lawyers Title*, 21 F. Supp. 2d at 805–06.

Again, this element "necess[arily]" requires "inquiry into the individualized equities attendant to each class member." *Vega*, 564 F.3d at 1274. Putative class members who (like Plaintiffs) owe Simmons more in charged-off negative account balances than the fees assessed on "retry" ACH Entries could not establish that Simmons's retention of any challenged fees is inequitable. *See* Doc. 80 at 37-39 (Def.'s MSJ Br.). But determining which class members owe

Simmons more than they paid in challenged fees requires individual analyses of bank statements, notices, and, in some cases, collection records and communications. *See, e.g.*, Doc. 83 ¶¶ 6–10, 28 (Hunter Decl.); Doc. 88-2 ¶ 39 (Kwon Rep.).

### 2.      Different Proof Of Affirmative Defenses.

Simmons's affirmative defenses add to the individualized questions. Simmons has "clean hands" defenses against Plaintiffs and any other putative class members "whose conduct in connection with [Simmons's overdraft privilege] has been unconscientious or unjust." *Poff*, 288 S.W.3d at 622; *Hogue*, 373 S.W.2d at 716; *see generally In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 96 (S.D.N.Y. 2017) (a plaintiff "may not complain that one hand is being overcharged while the other hand is robbing the store"); Doc. 80 at 39-40 (Def.'s MSJ Br.). The "voluntary payment doctrine" would also preclude claims by any putative class member who "voluntarily" paid the challenged fees "except for payments made as a result of duress, fraud, mistake or failure of consideration." *Chruby v. Glob. Tel\*Link Corp.*, 2017 WL 4320330, at *7 (W.D. Ark. Sept. 28, 2017); *see also Blair v. City of Hannibal*, 179 F. Supp. 3d 901, 912 (E.D. Mo. 2016) (recognizing defense); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (same).

The Eighth Circuit has repeatedly held that these kinds of "[i]ndividual affirmative defenses can defeat predominance." *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1038 (8th Cir. 2020). That includes the voluntary payment defense, which "would require an individualized inquiry into the subjective thinking of each [putative class member]." *Stuart v. Glob. Tel\*Link Corp.*, 956 F.3d 555, 561 (8th Cir. 2020); *see also Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 98 (S.D.N.Y. 2010) ("numerous courts have found that the predominance requirement is not satisfied where class claims are subject to a unique defense under the voluntary payment doctrine"). Indeed, in the banking context specifically, courts have found common-question predominance lacking because the defendant had affirmative defenses against "class members who repeatedly incurred

and voluntarily paid the fees at issue" and thus "implicitly consented to the fees through their conduct." *Endres v. Wells Fargo Bank*, 2008 WL 344204, at \*10, \*12 (N.D. Cal. Feb. 6, 2008); *see also Monaco*, 2012 WL 10006987, at \*10 ("The Court cannot simply certify a class and then hope that these defenses [including the voluntary payment doctrine] do not become relevant"). Courts likewise routinely rule that "clean hands" defenses preclude class certification. *See, e.g.*, *Digital Music*, 321 F.R.D. at 98; *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 157 (S.D.N.Y. 2008) (collecting cases).

To adjudicate Simmons's voluntary-payment defenses, the Court would have to analyze individual evidence regarding each class member's payment and banking history, communications with Simmons, and any other circumstances tending to show that the class member understood that Simmons assessed fees on purported "retries." Similarly, in addressing Simmons's unclean-hands defenses, the Court would have to resolve, for every class member, questions such as whether he or she abused Simmons's overdraft protection (like both Plaintiffs), breached the Customer Agreement (like Wilkins), failed to repay amounts advanced on his or her behalf (like both Plaintiffs), acted dishonestly or fraudulently in their dealings with Simmons (like Watson), or took any other action which, under the totality of the circumstances, would make restitution of fees unconscientious or unjust. *See* Doc. 80 at 39-40 (Def.'s MSJ Br.). These individual questions make it impossible for Plaintiffs to satisfy Rule 23's predominance requirement for their unjust-enrichment claims.

### 3.       **Choice-Of-Law Issues Further Preclude Predominance**.

Choice-of-law issues create additional individual questions. The Customer Agreement provides that "[t]his agreement is subject to" applicable federal and Arkansas law. Doc. 88-5 at 39. Courts routinely rule that unjust-enrichment claims fall outside of similar choice-of-law provisions. *See Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001); *Taxes*

*of P.R., Inc. v. Tax Works, Inc.*, 2014 WL 6604056, at *4 (W.D. Mo. June 16, 2014); *Flynn v. CTB, Inc.*, 2013 WL 28244, at *2-3 (E.D. Mo. Jan. 2, 2013); *Innovative BioDefense, Inc. v. VSP Techs., Inc.*, 2013 WL 3389008, at *5 (S.D.N.Y. July 3, 2013).

The Court thus must apply Arkansas conflict-of-laws principles to determine what law would govern the unjust-enrichment claims of class members. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1088 (E.D. Ark. 2013). Under those principles, the law of the state where a Simmons customer banked and initiated the transactions giving rise to challenged overdraft fees would typically govern. *See, e.g.*, *Jarrett*, 8 F. Supp. 3d at 1088; *Samuels v. Old Kent Bank*, 1997 WL 458434, at *13 (N.D. Ill. Aug. 1, 1997) (case against bank). As a result, adjudicating the class's unjust-enrichment claims would require the Court to apply the law of at least the eight states in which Simmons operated during the class period (Arkansas, Colorado, Illinois, Kansas, Missouri, Oklahoma, Tennessee, and Texas). Doc. 15 ¶ 8 (Am. Compl.).

Plaintiffs have made no effort to show that unjust-enrichment law is the same in all of those states. Nor could they. Decisions from this District have repeatedly held that there are "material conflicts between the unjust enrichment law of Arkansas and the other states." *Thompson v. Bayer Corp.*, 2009 WL 362982, at *4–6 (E.D. Ark. Feb. 12, 2009); *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 423 (E.D. Ark. 2010) (collecting cases). In addition to variations in the prima facie elements, "[m]any states, but not all, permit an equitable defense of unclean hands," and where permitted, the "requirements necessary to establish the defense" "vary significantly." *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999); *see also Grand Theft Auto*, 251 F.R.D. at 148 (same).

Citing these choice-of-law issues, courts in this District have repeatedly denied certification of multi-state classes asserting unjust-enrichment claims. *See, e.g.*, *Tyler*, 265 F.R.D.

at 428 ("outcome-determinative conflicts in states' … unjust enrichment laws" precluded certification); *Thompson*, 2009 WL 362982, at \*8 (same); *In re Prempro Prod. Liab. Litig.*, 230 F.R.D. 555, 566 (E.D. Ark. 2005) (same). This Court should do the same.

C.    **A Class Action Is Not Superior To Individual Actions**.

Plaintiffs cannot show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To begin with, "the likely difficulties in managing a class action" (Fed. R. Civ. P. 23(b)(3)(D)) would be enormous. The myriad individual questions raised by Plaintiffs' claims and Simmons's defenses (*see supra* Parts II.A., II.B.), as well as the individual inquiries needed just to identify class members (*see infra* Part IV), would make any class litigation an unmanageable morass.

When individual issues predominate in the way they do here—including in the identification of class members—courts find that the proposed class does not satisfy Rule 23's superiority requirement. *See, e.g.*, *Johannessohn*, 9 F.4th at 986 (affirming denial of class certification based on manageability concerns); *Halvorson*, 718 F.3d at 780 (reversing certification due to manageability concerns); *Ginardi v. Frontier Gas Servs., LLC*, 2012 WL 1377052, at \*6 (E.D. Ark. Apr. 19, 2012) ("Because of the individualized issues in this case, I find that a class action is not the most efficient way of settling this controversy."); *Prempro*, 230 F.R.D. at 568 (same). And that is no less true in bank-fee cases. *See Shelley*, 2000 WL 1121778, at \*11; *Taylor*, Minute Order at 5.

Though manageability concerns alone preclude superiority, the availability of arbitration "is another factor weighing against a finding that the class action is 'superior'" to individual actions. *Baum v. Great W. Cities, Inc. of N.M.*, 703 F.2d 1197, 1210 (10th Cir. 1983); *see also, e.g.*, *Drake v. Morgan Stanley & Co., Inc.*, 2010 WL 2175819, at \*9 (C.D. Cal. Apr. 30, 2010) (finding arbitration superior to class action); *Cardiovascular Care of Sarasota, P.A. v. Cardinal*

*Health, Inc.*, 2009 WL 928321, at *7 (M.D. Fla. Apr. 3, 2009) (same); *Telco Grp., Inc. v. Ameritrade, Inc.*, 2007 WL 203949, at *11 (D. Neb. Jan. 23, 2007) (same).

Although Simmons has not sought to compel arbitration here, its current Customer Agreement provides for no-cost arbitration of individual claims. Yount Ex. F at WILKINS-0003881 (10/12/21 Terms).[14] The arbitration provision states that Simmons will fully reimburse—or upon written request, directly pay—the arbitration filing fee, and also pay "all other AAA filing, administration, and arbitrator fees" for claims seeking up to $10,000. *Id.* The arbitration provision contains other consumer-friendly features as well, such as a guaranteed $500 minimum recovery if the arbitrator's award exceeds Simmons's last settlement offer before appointment of the arbitrator. And, of course, arbitration confers other, well-recognized benefits. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) (arbitration offers "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes").

In short, Plaintiffs' suggestion that "[t]here is no meaningful alternative for prosecution of individual Class members' claims" (Doc. 91 at 27) is incorrect. Any putative class member can take advantage of Simmons's arbitration provision at no cost to themselves. Indeed, if given the choice, no rational person would elect to have their claims brought by the uniquely unsuitable representatives proffered here (*see supra* Part I) over no-cost arbitration.

None of the cases cited by Plaintiffs (Doc. 91 at 26-27) counsels otherwise because none involved either the kind of individual inquiries required here or arbitration as an available alternative. And even on such a record, the only one of those cases from an Eighth Circuit court denied nationwide class certification with respect to fraud and unjust enrichment claims that

---

[14]   Simmons chose to not compel the Plaintiffs to arbitrate their individual claims because this case was filed before Simmons added the arbitration provision to the Customer Agreement.

"would have presented numerous management problems." *Murphy v. Gospel for Asia, Inc.*, 327 F.R.D. 227, 244 (W.D. Ark. 2018) (certifying narrower class).

### III.   No Class Can Be Certified Under Rule 23(b)(2).

Rule 23(b)(2) "allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Wal-Mart*, 564 U.S. at 360 (quoting Fed. R. Civ. P. 23(b)(2)). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* Plaintiffs' bid for class certification under Rule 23(b)(2) fails for three independent reasons: (a) they lack standing to seek injunctive or declaratory relief as former customers; (b) they primarily seek monetary relief; and (c) the putative class lacks the requisite cohesion.

Plaintiffs' conclusory arguments for certification under Rule 23(b)(2) address none of these fatal defects. The assertion that "Simmons is *still* assessing Retry Fees" (Doc. 91 at 28) gets Plaintiffs nowhere when ***Plaintiffs*** are ***not*** still subject to those fees because they are no longer Simmons customers. Nor does it do anything to diminish the centrality of monetary relief to this case or the enormous diversity of putative class member experiences. And neither of the cases cited by Plaintiffs involved the obstacles to (b)(2) certification present here. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1173-75 (8th Cir. 1995) (upholding (b)(2) settlement class for injunction requiring new refund policy and nominal rebates incidental to new policy where standing of class representatives was unchallenged); *Bond v. Liberty Ins. Corp.*, 2017 WL 1628956, at *6 (W.D. Mo. May 1, 2017) (involving "current policyholders" seeking declaratory relief).[15]

---

[15]   *DeBoer* also predates the Supreme Court's ruling that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360–61.

A.      **As Former Customers, Plaintiffs Cannot Represent An Injunctive Or Declaratory Relief Class**.

Most fundamentally, Plaintiffs cannot represent a Rule 23(b)(2) class because they lack standing to seek injunctive or declaratory relief. Doc. 80 at 46-47.

Plaintiffs ceased being Simmons customers years ago. Doc. 83 ¶¶ 9–11, 28–29 (Hunter Decl.). Former customers generally lack standing to obtain injunctive, declaratory, and other forms of prospective relief because they do not face "a real and immediate threat" that they would be injured "in the future." *Frost v. Sioux City, Iowa*, 920 F.3d 1158, 1161–62 (8th Cir. 2019); *see McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 224 (3d Cir. 2012) (former customers cannot show a "reasonable likelihood" of being "injured by [the defendant's challenged practices] in the future" and thus lack standing); *Milk Prods.*, 195 F.3d at 437 ("out of business" plaintiff "lacks standing to seek injunctive relief" against suppliers). That is certainly the case for Plaintiffs. Wilkins has agreed that she does "not have any interest in what Simmons's current or future policies are about charging overdraft or NSF fees when a merchant submits a previously declined transaction." Doc. 88-3 at 98 (Wilkins Dep.). And Watson has testified: "I don't know why I would want to know what Simmons is doing at this point." Doc. 88-4 at 117 (D. Watson Dep). Plaintiffs thus lack standing to seek injunctive or declaratory relief.

That fact precludes Plaintiffs from representing any Rule 23(b)(2) class. It is well established that a plaintiff who lacks standing to assert his or her claims cannot be a proper class representative. *Hall*, 140 F.3d at 1196. Innumerable cases from the Eighth Circuit, this District, and elsewhere have relied on that principle to deny class certification under Rule 23(b)(2) where plaintiffs lacked standing to seek injunctive or declaratory relief. *See, e.g.*, *Elizabeth M.*, 458 F.3d at 785 (vacating (b)(2) class represented by "former residents" of the defendant's facilities who were "not likely to suffer a future injury that will be remedied by" injunctive relief addressing

"future conditions *within* the facilities"); *Pipes*, 254 F.R.D. at 549 ("non-policyholder" could not represent "the proposed declaratory/injunctive relief class"); *McNair*, 672 F.3d at 227 (similar for former customer). The outcome should be the same here.

### B.    This Suit Primarily Seeks Monetary Relief.

Independently, no Rule 23(b)(2) class can be certified here because this suit primarily seeks monetary relief. That is antithetical to a Rule 23(b)(2) class, which "is proper only when the primary relief sought is declaratory or injunctive." *Avritt*, 615 F.3d at 1035. Indeed, Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360–61.

It is clear that "the primary and ultimate relief sought by Plaintiffs is monetary." *Pipes*, 254 F.R.D. at 551. The operative complaint is not limited to injunctive or declaratory relief, but also seeks "actual and/or compensatory damages," "disgorgement," and "restitution," plus fees, interest, and costs. Doc. 15 Prayer ¶¶ 4-8 (Am. Compl.). And Plaintiffs mentioned only damages when asked about the relief they seek in this case. Doc. 88-3 at 87 (S. Wilkins Dep.); Doc. 88-4 at 91 (D. Watson Dep.).

As courts in this District have consistently ruled, these facts "alone preclude[] certification under Rule 23(b)(2)." *Pipes*, 254 F.R.D. at 551 (denying (b)(2) certification for claims seeking primarily money damages); *accord Stearns v. Inmate Servs. Corp.*, 2020 WL 7138626, at *2 (E.D. Ark. Dec. 7, 2020); *Riedel*, 257 F.R.D. at 513. The same conclusion applies here.

### C.    Plaintiffs Cannot Meet the Stringent Cohesiveness Requirement.

Plaintiffs' bid for Rule 23(b)(2) certification independently fails for lack of cohesiveness. For all the same reasons that Plaintiffs flunk the Rule 23(b)(3) predominance requirement, they also cannot meet the "more stringent" cohesiveness requirement of Rule 23(b)(2). *Harris*, 953 F.3d at 1038; *see supra* Parts II.A., II.B. In particular, it is fatal that "resolution of the plaintiffs' claims

would require numerous individual determinations." *Harris*, 953 F.3d at 1038 (no (b)(2) class because liability would turn on individualized inquiries); *Avritt*, 615 F.3d at 1037 (same); *Ebert*, 823 F.3d at 481 (same). A class also "cannot be cohesive if the states' laws governing the class are notably different" (*Prempro*, 230 F.R.D. at 569), as is the case here for the unjust-enrichment claims. *See supra* Part II.B.3.

## IV. The Proposed Class Is Not Clearly Ascertainable.

"[A] class 'must be adequately defined and clearly ascertainable,' … by reference to objective criteria." *Hicks*, 330 F.R.D. at 189. And a class is "not ascertainable" where "the Court would have to consider the merits of each individual's case before determining membership in the class." *Rush v. Whirlpool Corp.*, 2008 WL 11337601, at *2 (W.D. Ark. Nov. 13, 2008) (denying certification on this basis); *see also Walls*, 2009 WL 890528, at *4 (denying certification because "membership in the class can not be ascertained by the Court without resorting to lengthy individualized inquiries").

As already described, identifying Simmons customers who incurred a challenged fee would be a highly individual and enormously time-consuming enterprise. Plaintiffs concede as much when they acknowledge that review of "customer account statements" (a necessarily manual process) may be required. Doc. 91 at 19. What is more, any such effort would require subjective judgments to identify "retry" ACH Entries and match overdraft fees to particular Entries. *See supra* pp. 39-40.

In arguing that the proposed class is ascertainable, Plaintiffs assert that "record evidence" shows that Simmons has data from which the class can be ascertained. Doc. 91 at 19. But the cited passage from Ms. Hunter's deposition is actually just an irrelevant question by Plaintiffs' counsel regarding whether Ms. Hunter had "a good understanding of [Simmons's] deposit … transaction system." Doc. 91-25 at 12 (8/18/21 Hunter Dep.). And the cited testimony from Ms. Kwon simply

states that she is "not always personally involved in the settlement portion of these cases," but that if Simmons asked her to "assist" with that phase, she "could" (Doc. 91-26 at 104 (Kwon Dep.)), which does nothing to undermine her clear testimony that Olsen's methodology would "inaccurately identify some people as being part of the class." *Id.* at 94; *accord* Doc. 88-2 ¶¶ 14–15 (Kwon Rep.) (opining that "Mr. Olsen cannot programmatically identify the class").

Plaintiffs gloss over all of this, assuring the Court that their expert can identify class members from transaction data, or account statements, or some other unspecified analysis. Doc. 91 at 18-19. Those vague and speculative promises are no more a basis for finding ascertainability than they are for finding predominance. As in other cases where the proposed class could not be readily identified through objective criteria—including at least two bank-fee cases (*Brooks*, 103 P.3d at 47; *Taylor*, Minute Order at 2-3)—class certification should be denied here on ascertainability grounds. *See Hicks*, 330 F.R.D. at 190–91 (denying class certification); *Martinez v. Triple S Props.*, 2019 WL 1646405, at *4 (W.D. Mo. Apr. 16, 2019) (same); *Durchardt v. Midland Nat'l Life Ins. Co.*, 265 F.R.D. 436, 443-44 (S.D. Iowa 2009) (same).[16]

## CONCLUSION

For the reasons set forth above, Simmons respectfully requests that the Court deny Plaintiffs' Motion for Class Certification.

---

[16]   The passing discussions of ascertainability in the cases cited by Plaintiffs (Doc. 91 at 18-19) are not to the contrary as they did not address circumstances requiring individual and subjective analyses.

DATED: January 24, 2022                      Respectfully submitted,

                                             /s/ *Debra Bogo-Ernst*

                                             E. B. Chiles IV (96179)
                                             R. Ryan Younger (2008209)
                                             QUATTLEBAUM, GROOMS & TULL PLLC
                                             111 Center Street, Suite 1900
                                             Little Rock, Arkansas 72201
                                             (501) 379-1700 Telephone
                                             (501) 379-1701 Facsimile
                                             ryounger@qgtlaw.com

                                             Debra Bogo-Ernst (IL No. 6271962) (*pro hac vice*)
                                             Joshua Yount (IL No. 6256900) (*pro hac vice*)
                                             Lucy Holifield (AR No. 2016165; IL No. 6329822)
                                             MAYER BROWN LLP
                                             71 South Wacker Drive
                                             Chicago, Illinois 60606
                                             (312) 782-0600 Telephone
                                             (312) 701-7711 Facsimile
                                             dernst@mayerbrown.com
                                             jyount@mayerbrown.com
                                             lholifield@mayerbrown.com

                                             *Attorneys for Simmons Bank*