IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

DAVID WATSON                                                                          PLAINTIFF

v.                                    No. 3:20-cv-116-DPM

SIMMONS BANK                                                                        DEFENDANT

## ORDER

**1.** The Court recently advised the parties that it was considering whether either side was entitled to judgment as a matter of law on Watson's remaining breach of contract claim. At the Court's invitation, Watson and Simmons submitted additional briefing on that issue. In a separate motion, Watson also asks the Court to reconsider its recent Order excluding his proposed data expert, Arthur Olsen, and denying class certification under Fed. R. Civ. P. 26(b)(2) & (b)(3). *Doc. 108*. He says that Eighth Circuit precedent does not require application of a proposed expert's methodology in bank overdraft charge cases. Alternatively, he submits that new evidence—a supplemental report that his expert prepared a month or so after the Court decided the *Daubert* issues—cures the defects in this expert's initial report and thus should be considered. Simmons Bank disagrees, maintaining that these circumstances do not warrant reconsideration.

**2.** Watson's argument that Eighth Circuit precedent does not require an expert to apply his proposed methodology to data is

mistaken. The governing law remains the same: Federal Rule of Evidence 702, as construed by *Daubert* and its progeny. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The plain language of Rule 702(d) requires that an expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(d). Watson argues that excluding Olsen runs afoul of the precedent calling for the liberal admissibility of expert testimony. He relies primarily on *In re: Bair Hugger Forced Air Warming Devices Products Liability Litigation*, which he says drastically changed the standard for admitting expert testimony in favor of admissibility and clarified that the factual basis of an expert's opinion goes solely toward credibility, not admissibility. 9 F.4th 768, 78 (8th Cir. 2021).

This precedent, which the Court cited in its earlier Order, does not bear the weight Watson puts on it. *Daubert* has long been understood as a pro-admissibility decision; and *Bair Hugger* simply confirmed this, while synthesizing various Eighth Circuit decisions about the reliability inquiry. 9 F.4th at 776–78. More importantly for this case, the foundational expert there had built a model patient-heating machine and tested it repeatedly. Those steps are the ones Olsen didn't take here. And the Court of Appeals affirmed the exclusion of the expert's proposed "trust me" testimony about the effect of people moving around in the operating room—because that opinion was untested. 9 F.4th at 782. There was, in the Rule 702's words, no reliable

application of the methodology to the case's facts. *Bair Hugger* supports this Court's earlier ruling. Olsen had neither created his proposed Simmons-specific algorithm at the time of the *Daubert* briefing nor tested it on Simmons's sample data. Rule 702's application requirement is a keystone of reliability. And it remains unchanged. Olsen's testimony is inadmissible.

Alternatively, Watson argues that the Court should consider Olsen's March 2023 supplemental expert report as new evidence sufficient to warrant reconsideration. Unlike his initial report, Olsen's additional work provides details about his proposed algorithm for identifying allegedly improper fees and applies that algorithm to Simmons's sample data. While Olsen's supplemental report cures many of the deficiencies that the Court identified earlier, it is not new evidence rightly understood—that is, it is not newly discovered evidence. *SPV-LS, LLC v. Transamerica Life Insurance Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019). All the information in Olsen's supplemental report could have been included in his initial report. Or it could have come in a supplemental report filed by the October 2021 deadline for rebuttal expert opinions. *Doc. 66*. Olsen acknowledges that he could have created the algorithm and tested it using Simmons's sample data that was available to him in the summer of 2021. He didn't.

Disputed issues must have a stop or there would never be any progress in a case. The deadline for Watson to submit a supplemental

–3–

expert report passed more than sixteen months before Olsen did the necessary work. Watson has offered no compelling reason for the Court to exercise its discretion and shift this case into reverse. *E.g., Petrone v. Werner Enterprises Inc.*, 940 F.3d 425, 433–36 (8th Cir. 2019). Watson's motion to reconsider is therefore denied. Only his individual breach of contract claim remains.

  **3.** The Court concluded that Simmons's assessment of retry fees violated the terms of its customer agreements. But that conclusion alone does not entitle Watson to recovery on his breach claim. Although Watson challenges $150 worth of retry fees, he acknowledges he left Simmons with a negative $735.59 account balance that he has never paid. *Doc. 95 at 52–54*.

  Simmons raised the affirmative defense of recoupment in its answer and preserved the defense in its summary judgment papers. *Doc. 42 at 16; Doc. 80 at 43–45.* "Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim." *FDIC v. Corning Savings & Loan Association*, 696 F. Supp. 1245, 1247 (E.D. Ark. 1988). When raised defensively, the claim is not barred by any statute of limitations so long as the main action is timely. *Little Rock Crate & Basket Co. v. Young*, 284 Ark. 295, 296–97, 681 S.W.2d 388, 389 (1984); ARK. CODE ANN. § 16-56-102. Watson's argument to the contrary is

mistaken. A successful recoupment claim that exceeds the amount of the plaintiff's demand extinguishes the plaintiff's claim and thus prevents judgment in the plaintiff's favor. *State ex rel. Attorney General v. Lovett-Carnahan Co.*, 179 Ark. 43, 14 S.W.2d 233, 235 (1929). Simmons says that's the right result here.

The undisputed material facts establish that, by early January 2016, Watson's bank account had a negative balance of $675.59. *Doc. 95 at 47*. He and his wife entered into a repayment plan, and Simmons issued a $675.59 credit to bring the account balance back to zero. *Doc. 95 at 47–48*. The Watsons never made a payment toward the repayment plan, and Simmons reversed the credit in late February 2016. *Doc. 95 at 48 & 54; Doc. 88–13 at 4*. The account was already $60 in the red (due to return-item fees), so the credit reversal brought the account to a negative balance of $735.59. *Doc. 88–13 at 4 & 6*. The Watsons did not make any further deposits. *Doc. 95 at 53; Doc. 88–28 at 2*. Simmons eventually closed the account and charged off the entire negative balance. *Doc. 95 at 53–54*.

Watson does not seriously dispute that he owes Simmons for his negative account balance (less $150 for the challenged fees). Watson's contract with Simmons—the same customer agreement giving rise to his own claim—subjects him to individual liability "for any account shortage resulting from charges or overdrafts, whether caused by [him] or another with access to [the] account." *Doc. 88–5 at 2*.

The contract explains: "This liability is due immediately, and can be deducted directly from the account balance whenever sufficient funds are available." *Ibid*. Watson agrees this document governs his banking relationship with Simmons. *Doc. 95 at 5*. And he acknowledges his liability for the debt: "It is undisputed that Ms. Wilkins and Mr. Watson have 'an obligation to repay' the amounts they have overdrawn their accounts." *Doc. 94 at 24*.

Because the amount of Simmons's recoupment claim exceeds the amount of Watson's breach claim against Simmons, Watson is not entitled to recover any sum of money against the Bank. (And he is not a prevailing party within the meaning of Arkansas's applicable law about attorney's fees.) ARK. CODE ANN. § 16–22–308; *Perry v. Baptist Health*, 368 Ark. 114, 116–17, 243 S.W.3d 310, 313 (2006). Simmons is therefore entitled to summary judgment on Watson's remaining individual claim.

4.     Simmons has also asked the Court to enter a final Judgment in the Bank's favor on its successful counterclaim against individual plaintiff Shunda Wilkins. The Court previously found that Simmons was entitled to judgment against her for $510.21 and granted the Bank's related motion for a reasonable attorney's fee and prejudgment interest. *Doc. 62 & 73*. Wilkins later made a payment to the Bank. *Doc. 106*. The parties now agree that a Judgment in the amount of $3,099.41 will

fully account for these rulings and Wilkins's payment.  *Doc. 114 at 2; Doc. 115 at 4–5.*

So Ordered.

*/s/ DPMarshall Jr.*

D.P. Marshall Jr.
United States District Judge

14 July 2023

-7-